UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re: )

FM AVIATION II, LLC, ) Case No: 3:10-bk-24832-CED

Debtor. ) Chapter 11

_____ )

### EMERGENCY MOTION OF VFS FINANCING, INC. FOR (I) RELIEF FROM THE AUTOMATIC STAY (II) ADEQUATE PROTECTION OF ITS INTERESTS IN CERTAIN COLLATERAL; AND (III) OTHER RELATED RELIEF

VFS Financing, Inc. ("**VFS**"), pursuant to Sections 362 and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), moves on an emergency basis for the entry of an order: (i) granting it relief from the automatic stay in order to pursue its rights and remedies as a secured creditor against certain property of the estate, (ii) immediately grounding the Aircraft, as that terms is defined below; (iii) confirming that FM Aviation II, LLC (the "**Debtor**") may not use any cash collateral of VFS without further order of this Court; (iv) requiring that the Debtor sequester any cash collateral of VFS; (v) requiring that the Debtor provide VFS with an accounting of VFS's cash collateral; and (iv) granting any other relief that may be appropriate under the circumstances, and in support says:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

3.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>**STATEMENT OF FACTS**</u>

**A.**     <u>**The Aircraft Security Agreements and VFS's Interests in the Collateral**</u>

4.     On November 23, 2009, the Debtor executed two Promissory Notes (the "**First Promissory Note**" and "**Second Promissory Note**", collectively at times, the "**Promissory Notes**") in favor of VFS, pursuant to which VFS agreed to extend financing to the Debtor in the principal amount of $17,500,000. *Affidavit of Beth Bonell*, a copy of which is attached hereto as <u>Exhibit 1</u> (the "**Bonell Affidavit**"), ¶¶ 7-10; *see also First Promissory Note*, a copy of which is attached to the Bonell Affidavit as Exhibit D; *Second Promissory Note*, a copy of which is attached to the Bonell Affidavit as Exhibit E.

5.     In order to secure the obligations due under the First Promissory Note, VFS entered into an Aircraft Security Agreement (as thereafter amended from time to time, the "**First Security Agreement**") with the Debtor. *See Bonell Affidavit*, ¶ 4; *see also First Security Agreement*, a copy of which is attached to the Bonell Affidavit as Exhibit A; *Amendment* dated January 6, 2010, a copy of which is attached to the Bonell Affidavit as Exhibit B.

6.     In order to secure the obligations under the Second Promissory Note, VFS entered into a second Aircraft Security Agreement with the Debtor (the "**Second Security Agreement**" and, together with the First Security Agreement, the "**Security Agreements**"), a copy of which is attached to the Bonell Affidavit as Exhibit C. *Bonell Affidavit*, ¶ 5.

7.     Pursuant to the express terms of the Security Agreements, VFS was granted a first priority security interest in, *inter alia*, (i) a certain Gulfstream Aerospace (Model G-IV, Serial No. 1104, Registration No. N2SA; and Engine Make: Rolls Royce, Model Tay-611-8, Serial Nos. 16136 & 16145, as more fully described in the First Security Agreement) (the "**First Aircraft**"), and (ii) a certain Gulfstream Aerospace (Model G-IV, Serial No. 1171, Registration No. N3SA; and Engine Make: Rolls Royce, Model Tay-MK611-8, Serial Nos. 16396 & 16270,

as more fully described in the Second Security Agreement) (the "**Second Aircraft**;" collectively at times with the First Aircraft, the "**Aircraft**").  *Bonell Affidavit*, ¶ 6.

8.      In addition, VFS was granted a first-priority security interest the Debtor's right, title and interest in and to any proceeds of the Aircraft (together with the Aircraft, the "**Collateral**").  *First Security Agreement*, § 1; *Second Security Agreement*, § 2.

9.      VFS perfected its interests in the Collateral by, *inter alia*, filing financing statements pursuant to the Uniform Commercial Code, copies of which are attached hereto as Exhibits 2 and 3.

10.     As of August 20, 2010, the balance remaining under the Promissory Notes and the Security Agreements (collectively, the "**Loan Documents**") was not less than $18,519,694.30. *Id.*, ¶ 29.

11.     The orderly liquidating value of the Aircraft is approximately $12,399.077.00. *Id.*, ¶ 40.

**B.      The Debtor's Defaults Under the Loan Documents and the New York State Court Action**

12.     Prior to October 14, 2010 (the "**Petition Date**"), the Debtor had defaulted on its obligations under the Loan Documents.  *Id.*, ¶ 21.

13.     As a result, VFS filed an action against the Debtor in the Supreme Court of the State of New York, County of New York (the "**New York State Court**"), seeking, *inter alia*, to recover the Aircraft (the "**New York State Court Action**").

14.     As of October 14, 2010 (the "**Petition Date**"), the New York State Court Action remains pending before the New York State Court as Index No. 651435/10.

15.     On or about September 7, 2010, the Honorable Barbara R. Kapnick entered a Decision/Order in the New York State Court Action (the "**Temporary Restraining Order**"), pursuant to which the Debtor was, among other things:  (i) enjoined and restrained from using

the Aircraft; (ii) required to immediately disclose the location of the Aircraft to VFS; (iii) enjoined from restricting access of VFS to the Aircraft; and (iv) ordered to immediately surrender the Aircraft to VFS. *See Temporary Restraining Order*, a copy of which is attached hereto as <u>Exhibit 4</u>.

16.     On September 7, 2010, VFS served a copy of the Temporary Restraining Order on Debtor via overnight mail. In addition, on September 8, 2010, counsel for VFS served counsel for Debtor with a copy of the Temporary Restraining Order via electronic mail and requested that the Debtor immediately disclose the location of the Aircraft. *Declaration of Beth Bonell*, a copy of which is attached hereto as <u>Exhibit 5</u> (the "**Supplemental Bonell Declaration**"), ¶ 7.

### C.     <u>The Debtor's Pre-Petition and Post-Petition Use of the Aircraft</u>

#### 1.     <u>The Debtor's Disregard of the Temporary Restraining Order</u>

17.     Notwithstanding the express terms of the Loan Documents and the Temporary Restraining Order, the Debtor has refused to return and surrender the Aircraft to VFS. *Bonell Affidavit*, ¶ 34.

18.     On September 9, 2010, because Mr. Lamont had failed to provide VFS or its counsel with the location of the Aircraft, counsel called Mr. Lamont and left him a voicemail demanding the immediate disclosure of the location of the Aircraft. *Supplemental Bonell Declaration*, ¶ 8. Neither Mr. Lamont nor the Debtor disclosed the location of the Aircraft that day. *Id.*, ¶ 8.

19.     On that same date, September 9, 2010, counsel for VFS sent correspondence by electronic mail to Mr. Lamont again demanding that the Debtor immediately disclose the location of the Aircrafts as required by Judge Kapnick's Order. *Id.*, ¶ 9.

20.     On September 10, 2010, counsel to VFS sent yet another email to Mr. Lamont demanding that his client comply with the Temporary Restraining Order and disclose the location of the Aircraft. *Id.*, ¶ 10.

21.     Finally, later that day, Mr. Lamont sent an email indicating that N2SA was located in Dallas, Texas and that N3SA was located in Ontario, California. *Id.*, ¶ 11.

### 2.     The Debtor's Efforts to Dispose of the Aircraft

22.     Following the issuance of the Temporary Restraining Order, VFS learned that the Debtor and its agents and/or affiliates were trying to sell or otherwise dispose of the Aircraft without the knowledge or consent of VFS. *Id.*, ¶ 12.

23.     Despite repeated requests to the Debtor, its counsel and even the counsel for the individuals who were intending to take title to the Aircraft -- and despite repeated promises by all of the above to provide the requested information -- VFS was never provided with any substantive information regarding the attempted sale or disposal of the Aircrafts. *Id.*, ¶ 13.

### 3.     The Preliminary Injunction

24.     On September 28, 2010, Judge Kapnick issued a preliminary injunction (the "**Injunction**") which, like the Temporary Restraining Order, prohibited the Debtor from use of the Aircraft and also granted VFS the sole and exclusive right to possess the Aircraft. *Id.*, ¶ 21.

25.     Although the Debtor and its counsel were served with, and had knowledge of, the Injunction, the Debtor violated the Injunction and began flying the Second Aircraft. *Id.*,     ¶ 22.

26.     When VFS learned of this, it immediately demanded to know the location of Second Aircraft. *Id.,* ¶ 23.  However, Debtor's counsel, and the Debtor's representative, pilot Dick Joyce, refused to disclose the location of Second Aircraft. *Id.*

27.     Thereafter, VFS learned that the Debtor had been chartering the Second Aircraft and that it was currently located in Mexico and may have even been leased to a Mexican national.  *Id.*, ¶ 24.

28.     Once VFS learned of the location of the Second Aircraft, in accordance with the Injunction, VFS assumed operational control of the Second Aircraft and made arrangements for its safe return to the United States.  *Id.*, ¶ 25.

29.     Several hours after VFS repossessed and assumed operational control of the Second Aircraft pursuant to the Injunction, and in a transparent effort to delay the sale of the Aircraft, the Debtor filed the above-captioned bankruptcy case.  *Id.*, 26.

30.     In addition, after VFS had repossessed and assumed operational control of the Second Aircraft pursuant to the Injunction, the Debtor and/or an agent acting on its behalf, improperly permitted the Second Aircraft to be flown from the airport in Mexico and took efforts to prevent VFS from flying the Second Aircraft back to the United States.  *Id.*, ¶ 27.

31.     VFS has been advised that the Second Aircraft is flying throughout Mexico and Brazil.  *Id.*, ¶ 28.

32.     Pursuant to the express terms of the Temporary Restraining Order and the Injunction, no other person or entity other than VFS has any right to use or possess the Aircraft.

**D.     The Debtor's Conduct Puts VFS's Secured Position at Risk**

33.     As a result of the Debtor's conduct detailed herein, in Bonell Affidavit, and in the Supplemental Bonell Declaration, the content of which is incorporated herein by reference, there is a substantial risk of concealment, transfer, and other damage to the Collateral.  *Bonell Affidavit*, ¶ 35.

34.     Among other things, the Debtor has requested that the Aircraft' flights not be listed on Flighttracker.com.  *Id.*, ¶ 36.  Accordingly, VFS has no way of knowing where or when the Aircraft are being used and flown.  *Id.*

35.     At the same time, the Aircraft continue to depreciate and deteriorate as a result of their continued use by the Debtor without commensurate value being transferred to VFS.  *Id.*, ¶ 37.

36.     The Aircraft require fuel, monitoring, and maintenance to operate safely and satisfactorily, and are easily subject to damage or accidents.  *Id.*, ¶ 38.

37.     The Debtor, however, has not sought authority to use cash collateral, and VFS fears that it is not paying its post-petition expenses as they come due.

## ARGUMENT

### A.     VFS is Entitled to Relief From Stay Under 11 U.S.C. § 362(d)

38.     In the instant case, VFS is entitled to stay relief pursuant to Sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code.  Section 362(d)(1) of the Bankruptcy Code provides that, on request of a party in interest, and after notice and a hearing, the court shall grant relief from the automatic stay for cause, including lack of adequate protection of an interest in property of such party.  *11 U.S.C. § 362(d)(1).*  Pursuant to 11 U.S.C. § 362(g), the Debtor bears the burden of establishing that the interests of VFS in the Collateral are adequately protected.  *11 U.S.C. § 362(g).*

39.     As detailed above, despite having actual knowledge of the Temporary Restraining Order, the Debtor continues to fly the Aircraft.  With each flight, the Debtor depreciates the value of the Aircraft and VFS's secured interest in the same.

40.     More importantly, however, because the Debtor has chosen to blatantly disregard the express directives of the New York State Court, VFS has reason to fear that the Debtor has

also disregarded other obligations it may have with respect to the Aircraft, including, but not limited to, the duty to insure the Aircraft.

41.     In addition, because the Debtor has not sought authority from this Court to use any cash collateral of VFS, VFS fears that the Debtor may not be paying its post-petition costs and expenses, including, but not limited to, fuel and maintenance costs.  To the extent that these amounts are not being paid, VFS's interests in the Aircraft may be further impaired by liens arising from unpaid costs and fees.  As such, VFS has an immediate need to secure the Aircraft and protect the Aircraft from further damage, encumbrances, and diminution of their value. VFS, therefore, is entitled to relief from stay pursuant to Section 362(d)(1) of the Bankruptcy Code.

42.     Further, VFS is entitled to relief from stay pursuant to Section 362(d)(2) of the Bankruptcy Code, which provides that a creditor is entitled to relief from the automatic stay if: (i) the debtor does not have any equity in the collateral, and (ii) the property is not necessary to an effective reorganization. *11 U.S.C. § 362(d)(1).*

43.     As detailed above, VFS has established that the value of the Aircraft is approximately $12,399,077.  *Bonell Affidavit*, ¶ 40.  At the same time, the amount due and owing to VFS under the Loan Documents is not less than $18,519,694.30.  *Id.*, ¶ 29.  As such, the Debtor has no equity in the Aircraft.

44.     Furthermore, VFS asserts that the Debtor cannot satisfy its burden of establishing that the Collateral is necessary for an effective reorganization.  *11 U.S.C. § 362(g).*  As such, relief from stay may also be premised on Section 362(d)(2).

### B.     VFS is Entitled to an Order Immediately Grounding the Aircraft

45.     In addition to relief from the automatic stay, VFS is entitled to the entry of an order immediately requiring the Debtors to ground the Aircraft.  Indeed, in the instant case,

VFS's rights to possess and control the Collateral have already been adjudicated by the New York State Court in the New York State Court Action. The New York State Court has, in that action: (i) recognized VFS's secured interests in the Collateral, (ii) recognized that VFS's interests in the Collateral are depreciating with the Debtor's possession and use of the Collateral; and (iii) ordered that the Debtor cease using the Aircraft.

46.     Nevertheless, the Debtor has blatantly disregarded the entry of the Temporary Restraining Order and has, instead, flown the Aircraft internationally, thereby subjecting VFS's secured position to substantial risk. In addition, the Debtor has concealed the location of the Aircraft from VFS and has made it virtually impossible for VFS to determine where the Aircraft are located, whether they are being subjected to further liens, and/or whether they are insured. Finally, because the Debtor has no known cash collateral that is not subject to secured liens, and because the Debtor has not sought authority to use this cash collateral, to the Debtor's continued use of the Aircraft makes it a virtual certainty that the Aircraft could be subjected to further liens and encumbrances as a result of, *inter alia*, fuel and maintenance charges related to this use.

47.     Despite the Debtor's post-petition conduct, the filing of the above-captioned bankruptcy case does not absolve the Debtor from its obligations under the Temporary Restraining Order. To hold otherwise would permit the Debtor to use the automatic stay as a sword, and not as the shield it is intended to be. Indeed, permitting the Debtor to continue to fly the Aircraft would render the Temporary Restraining Order – which was entered prior to the Petition Date by a court with competent jurisdiction over the Debtor and the Collateral – a nullity, and is contrary to the principles of comity and of the Bankruptcy Code.

48.     As a result, VFS requests that this court enter an order requiring the Debtor to immediately ground the Aircraft. Without such an order, VFS's interests in the Collateral are simply not being adequately protected.

## C. VFS is Entitled to the Entry of an Order Prohibiting the Debtor from Using Cash Collateral

49.     In addition to the foregoing, as and for further adequate protection of its interests in the Collateral, VFS requests that this Court enter an order: (a) confirming that the Debtor is unable to use any proceeds of the Aircraft – which proceeds are Collateral of VFS – without: (i) seeking prior approval of this Court, and (ii) showing that VFS's interests in that cash collateral are adequately protected; (b) segregating proceeds of the Aircraft; and (iii) requiring the Debtor to provide an accounting of such proceeds.  The Debtor has not yet sought authority to use VFS's cash collateral.  As such, this request is being made in an abundance of caution.

50.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor-in-possession may not use, sell or lease cash collateral unless each entity that has an interest in such cash collateral consents or unless the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of Section 363. *11 U.S.C. § 363(c)(2).*  In addition, except for the authorized use of cash collateral under Section 363(c)(2), a debtor must segregate and account for any cash collateral in its possession, custody or control. *11 U.S.C. § 363(c)(4).*

51.     As a result, pursuant to the express terms of the Bankruptcy Code, the Debtor does not presently have the authority to use VFS's cash collateral, and must, instead, segregate that cash collateral and provide an accounting to VFS for any such cash collateral in its possession and control as of the Petition Date.

52.     Pursuant to Section 363(e) of the Bankruptcy Code, upon request of an entity that has an interest in the cash collateral, "the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." *11 U.S.C. § 363(c)(4).*  As such, unless and until the Debtor seeks authority to use VFS's cash collateral, VFS is entitled to the entry of an order prohibiting the Debtor's use of the same.

WHEREFORE, for the reasons stated herein, VFS Financing, Inc. respectfully requests that this Court enter an Order: (i) granting relief from the automatic stay in order to permit it to recover possession and control of the Collateral and otherwise exercise its state law rights with respect to the same, (ii) ordering that the its interests in the Aircraft be adequately protected by requiring the Debtor to immediately ground the Aircraft and cease using the same; (iii) prohibiting the Debtor from using any portion of its cash collateral until such time as the Debtor demonstrates adequate protection of VFS's interests in the same; and (iv) granting any other relief as may be appropriate under the circumstances.

REED SMITH LLP
Joseph J. Tuso
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103-7301
(215) 851-8100
(215) 851-1420 (facsimile)

and

SMITH HULSEY & BUSEY

By:    */s/ Allan E. Wulbern*
        Stephen D. Busey
        Allan E. Wulbern

Florida Bar Number 175511
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
awulbern@smithhulsey.com

Attorneys for VFS Financing, Inc.

<u>Certificate of Service</u>

I certify that a copy of the foregoing has been furnished electronically through the Court's CM/ECF electronic notification system to Langfred W. White, Esq., Law Offices of Langfred W. White, P.A., 25400 U.S. Highway 19 North, Suite 160, Clearwater, FL 33763, this 18th day of October, 2010.

*s/ Allan E. Wulbern*
Attorney

EXHIBIT 4

EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------x

VFS FINANCING, INC.,

                Plaintiff,

        -against-

FM AVIATION II, LLC,
ABLE BODY TEMPORARY SERVICES, INC.,
FRANK MONGELLUZZI and
ANNE MONGELLUZZI,

                Defendants.

-----------------------------------------------------------x

Index No. 651435/10

## AFFIDAVIT OF BETH BONELL

STATE OF CONNECTICUT   )
                     ) ss.:
COUNTY OF FAIRFIELD    )

I, BETH BONELL, being duly sworn, depose and say:

1.    I am a resident of the State of Connecticut and maintain an office at General Electric Capital Corporation ("GE Capital"), located at 10 Riverview Drive Danbury, Connecticut 06810. I am employed by GE Capital as a Vice President for Global Restructuring Solutions. GE Capital administers the loan agreements and aircraft account of FM AVIATION II, LLC ("FM AVIATION") on behalf of VFS Financing, Inc. ("VFS").

2.    I make this affidavit of my own personal knowledge and could, if called as a witness, testify competently to each fact set forth herein.

3.    As a duty of my employment with GE Capital, I have personal charge of the loan agreements and aircraft account of FM AVIATION, and I am charged with the maintenance of contractual and other documentation maintained by GE Capital, on behalf of VFS, in the ordinary course of its business relating to this account, and can track the recordation of all payments and other ongoing transactions relating thereto.

4.    There exists an Aircraft Security Agreement, dated as of November 23, 2009, entered into by FM AVIATION with VFS (the "First Security Agreement") (attached hereto as Exhibit A), as amended by that certain Amendment dated January 2, 2010 (attached hereto as Exhibit B).

5.    There exists a second Aircraft Security Agreement, dated as of November 23, 2009, entered into by FM AVIATION with VFS (the "Second Security Agreement") (attached hereto as Exhibit C). The First Security Agreement and Second Security Agreement may at times be collectively referred to as the "Security Agreements."

6.    Pursuant to the Security Agreements, VFS extended financing to FM AVIATION for a certain Gulfstream Aerospace (Model G-IV, Serial No. 1104, Registration No. N2SA; and Engine Make: Rolls Royce, Model Tay-611-8, Serial Nos. 16136 & 16145, as more fully described in the First Security Agreement) (the "First Aircraft"); and for a certain Gulfstream Aerospace (Model G-IV, Serial No. 1171, Registration No. N3SA; and Engine Make: Rolls Royce, Model Tay-MK611-8, Serial Nos. 16396 & 16270, as more fully described in the Second Security Agreement) (the "Second Aircraft"; collectively at times with the First Aircraft, the "Aircrafts").

7.    There exists a Promissory Note, dated as of November 23, 2009, entered into by VFS and FM AVIATION (the "First Promissory Note"; together with the First Security Agreement, the "First Loan Documents") (attached hereto as Exhibit D).

8.    There also exists a second Promissory Note, dated as of November 23, 2009, entered into by VFS and FM AVIATION (the "Second Promissory Note"; together with the First Security Agreement, the "Second Loan Documents"; collectively with the First Loan Documents, the "Loan Documents") (attached hereto as Exhibit E).

9.     Pursuant to the First Promissory Note, VFS extended financing to FM AVIATION in the principal amount of Eight Million Two Hundred Thousand dollars ($8,200,000.00).

10.     Pursuant to the Second Promissory Note, VFS extended financing to FM AVIATION in the principal amount of Nine Million Three Hundred Thousand dollars ($9,300,000.00).

11.     Pursuant to the First Loan Documents, FM AVIATION agreed to make one hundred and twenty (120) consecutive monthly installment payments to VFS, beginning on January 1, 2010, with each successive Monthly Payment due on the same day of each succeeding month, as follows:  three (3) payments of $41,683.33 (interest only), followed by one hundred and seventeen (117) payments in the amount of $73,695.47 (each a "Monthly Payment"), followed by a final installment, which also includes a balloon payment of $3,100,000.00.  See Ex. D.

12.     Pursuant to the Second Loan Documents, FM AVIATION agreed to make one hundred and twenty (120) consecutive monthly installment payments to VFS, beginning on January 1, 2010, with each successive Monthly Payment due on the same day of each succeeding month, as follows:  three (3) payments of $47,285.00 (interest only), followed by one hundred and seventeen (117) payments in the amount of $83,680.96 (each a "Monthly Payment"), followed by a final installment, which also includes a balloon payment of $3,500,000.00.  See Ex. E.

13.     The failure to make any Monthly Payment when due constitutes an Event of Default under the Loan Documents.  See Exs. A and C, ¶ 8(a); Exs. D and E.

14.     The Loan Documents provide that if FM AVIATION is in default thereunder, VFS, among other things, may, at its option, without notice or demand, declare the unpaid principal balance of the First Promissory Note and Second Promissory Note to be immediately due and payable, together with accrued and unpaid interest thereon at the default rate. See Exs. A and C, ¶ 9(a); Exs. D and E.

15.     Additionally, upon the occurrence of any Event of Default by FM AVIATION, VFS has the express right to, among other things: (1) "take immediate and exclusive possession of the Aircraft[s], wherever it may be found be;" and (2) direct [FM AVIATION] to assemble all parts and components of the Aircraft[s] and deliver it to [VFS], at [FM AVIATION's] expense, at a place designated by [VFS] which is reasonably convenient to [VFS] and [FM AVIATION]." See Ex. A, ¶ 9(b)(iii) and (vi); Ex. C, ¶ 9(b)(iii) and (vi)..

16.     Under the Loan Documents, FM AVIATION agreed to pay all expenses incurred by VFS in connection with collection under the Loan Documents including, without limitation, actual attorneys' fees. See e.g., Ex. A, ¶ 9(c); Ex. C, ¶ 9(c).

17.     To induce VFS to enter into the First Loan Documents and Second Loan Documents with FM AVIATION, and as additional security for FM AVIATION's obligations thereunder, Defendants Frank Mongelluzzi and Anne Mongelluzzi ("Individual Guarantors") each executed a Joint Guaranty in favor of VFS agreeing to "primary, absolute, continuing and unconditional" liability for FM AVIATION's obligations to VFS under the Loan Documents ("Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit F.

18.     To induce VFS to enter into the First Loan Documents and Second Loan Documents with FM AVIATION, and as additional security for FM AVIATION's obligations thereunder, Defendant Able Body Temporary Services, Inc. ("Corporate Guarantor"; collectively

<u>Certificate of Service</u>

I certify that a copy of the foregoing has been furnished electronically through the Court's CM/ECF electronic notification system to Langfred W. White, Esq., Law Offices of Langfred W. White, P.A., 25400 U.S. Highway 19 North, Suite 160, Clearwater, FL 33763, this 18th day of October, 2010.

_s/ Allan E. Wulbern_
Attorney

EXHIBIT 4

with the Individual Guarantors, the "Guarantors") executed a Corporate Guaranty in favor of VFS agreeing to "primary, absolute, continuing and unconditional" liability for FM AVIATION's obligations to VFS under the Loan Documents ("Corporate Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit G.

19. The Guarantors also agreed "to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by [VFS] by reason of [FM AVIATION's] default or default of [the Guarantors]." See Exs. F and G.

20. Under the Individual Guaranty and Corporate Guaranty, the Guarantors waived any requirement that VFS first exercise or enforce its rights against FM AVIATION or any collateral. See Exs. F and G.

21. FM AVIATION is in default under the Loan Documents for, inter alia, failing to make the required Monthly Payments.

22. More specifically, FM AVIATION failed to make Monthly Payments as required since at June 3, 2010.

23. On August 5, 2010, FM AVIATION was sent a formal Notice of Default and VFS demanded payment of all past due amounts (the "Default Letter"). See Default Letter (attached hereto as Exhibit H)

24. On that same date, the Guarantors were also sent notices of FM AVIATION's default ("Notices to Guarantors"). See Notices to Guarantors (collectively attached hereto as Exhibit I).

25. Neither FM AVIATION nor the Guarantors responded to the Default Letter or the Notices to Guarantors, and FM AVIATION and the Guarantors failed to make payments as required under the Loan Documents, Individual Guaranty and Corporate Guaranty.

26.     Thereafter, based upon FM AVIATION's failure to cure the Events of Default, on August 20, 2010, GE Capital, on behalf of VFS, sent notice to FM AVIATION and the Guarantors that the obligations under the Loan Documents had been accelerated and demanding immediate payment of all obligations of FM AVIATION, including but not limited to, principal, interest, attorneys' fees, expenses, and all other amounts due under the Loan Documents (the "Acceleration Letters"). See Acceleration Letters (collectively attached hereto as Exhibit J).

27.     Notwithstanding due and proper demand, neither FM AVIATION nor the Guarantors have satisfied FM AVIATION's outstanding obligations to VFS.

28.     As a result of FM AVIATION's defaults and refusal to honor its contractual obligations, the full and outstanding amounts due under the Loan Documents remain due and owing, including but not limited to, all principal, interest, attorneys' fees, expenses, and all other amounts due under the Loan Documents. See Exs. A and C, ¶ 9(c); Exs. D and E.

29.     As of August 20, 2010, the balance remaining under the Loan Documents, including accrued interest and late charges, was no less than $18,519,694.30, together with interest continuing to accrue at the rate of 18 % per annum, as well as all expenses and costs, including, without limitation, attorneys' fees.

30.     Pursuant to the Individual Guaranty and Corporate Guaranty, the Guarantors are primarily liable for all amounts dues and owing to VFS, in addition and including, all costs and expenses, including attorneys' fees incurred by VFS in enforcing the Guarantees.

31.     Under the Loan Documents, the Aircrafts are required to be located at Henderson Executive Airport in Las Vegas, Clark County, in the State of Nevada. See Exs. A and C, ¶ 2.

32.     The Loan Documents require FM AVIATION to deliver the Aircrafts to VFS at a place designated by VFS. See Exs. A and C, ¶ 9(b)(vi).

33.     Pursuant to the Loan Documents and as a consequence of the defaults of FM AVIATION, the Aircrafts are being wrongfully detained by FM AVIATION and VFS is now entitled to immediate possession of the Aircrafts.

34.     Notwithstanding, FM Aviation has refused to return the Aircrafts and, indeed, has refused to even respond to the inquiries and communications from VFS in regard to the Aircrafts.

35.     The Aircrafts are in the possession of FM AVIATION and there is a substantial risk of concealment, transfer, and other disposition or damage to the property. There is a substantial likelihood that the Aircrafts will be, or already are, operated by FM AVIATION throughout the United States of America and perhaps beyond.

36.     FM Aviation has requested that its flights not be listed on Flighttracker.com. Accordingly, VFS has no way of knowing where or when the Aircrafts are being used and flown. However, on any given day the Aircrafts are located, or are capable of being located, in diverse places throughout the United States of America and beyond.

37.     The Aircrafts depreciate and deteriorate as a result of their continued use by FM AVIATION without commensurate value being transferred to VFS in the form of payments due and owing from FM AVIATION.

38.     The Aircrafts require fuel, monitoring, and maintenance to operate safely and satisfactorily and is easily subject to damage or accidents.

39.     VFS will suffer irreparable loss unless the Defendants and other persons and firms having knowledge of this injunction are: (a) enjoined from continuing to use the Aircrafts; (b) ordered to advise VFS of the location of the Aircrafts; and (c) ordered to surrender the Aircrafts to VFS.

40.    As of the date the Complaint was filed, the approximate orderly liquidation value of the Aircrafts, assuming they are airworthy and otherwise in a condition in full compliance with the Loan Documents, is $12,399,077.

41.    FM AVIATION has or should have in place "command and control" capabilities to identify, locate, and surrender the Aircrafts, which capabilities may now be breaking down.

42.    VFS has performed any and all conditions and obligations required of it under the Loan Documents, and is unaware of any defenses FM AVIATION may have (or even could have) to the relief requested by VFS.

43.    The action before this Court is the only action that Plaintiff has thus far commenced to recover the Aircrafts.

FURTHER AFFIANT SAYETH NOT.

_____
Beth Bonell

Subscribed and sworn to before me
this 31 day of August, 2010.

_____
Notary Public

**CARLA PENNY**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAR. 31, 2014

# EXHIBIT A

# AIRCRAFT SECURITY AGREEMENT

FAA Authorization Code: _____

International Registry File Numbers:

(Airframe): _____

(Engine No. 1): _____

(Engine No. 2): _____

**THIS AIRCRAFT SECURITY AGREEMENT** (as amended, supplemented or otherwise modified from time to time, this "**Agreement**") is made as of Hovember 23 , 2009 by FM Aviation, LLC a limited liability company organized and existing under the laws of the State of Florida and having its principal place of business at 3040 Gulf to Bay Blvd., Clearwater, FL 33759 (together with its successors and permitted assigns, if any, "**Debtor**") in favor of VFS Financing, Inc., a Delaware corporation having an office at 10 Riverview Drive, Danbury, CT 06810-6268 (together with its successors and assigns, if any, "**Secured Party**").

1.  **Grant of Security Interest.**  To secure payment and performance of any and all debts, obligations and liabilities of any kind, nature or description whatsoever (whether due or to become due) of Debtor and any of its affiliates, parent entities, or subsidiaries to Secured Party and any of its any of its affiliates, parent entities, or subsidiaries, including but not limited to those arising under the promissory note dated on or about the date hereof, as it may be amended from time to time (the "**Note**"), this Agreement, and/or any related documents, including without limitation, any additional promissory notes arising out of, or relating to, this Agreement which may be executed after the date hereof and any renewals, extensions, replacements and modifications thereto (the Note, this Agreement and all such related documents being hereinafter collectively referred to as the "**Debt Documents**"), and any renewals, extensions, replacements and modifications of such debts, obligations and liabilities including all costs of enforcing any rights or remedies of Secured Party hereunder (including all costs of repossession, refurbishment, re-sale, re-lease and/or remarketing) and all costs of collecting amounts due hereunder  (including all attorneys' fees) (all of the foregoing, the "**Obligations**"), Debtor grants to Secured Party a security interest and  an "international interest" (as such term is defined in the Convention on International Interests in Mobile Equipment (the "**Convention**") and Protocol thereto on Matters Specific to Aircraft Equipment (the "**Protocol**") concluded in Cape Town in November 2001 (the Convention and the Protocol, each, in the official English language text thereof, are collectively referred to herein as the "**Cape Town Convention**") in the aircraft and other property described below and in all additions and accessions thereto and substitutions therefor, now or hereafter owned, all unearned insurance premiums and insurance proceeds relating to such property, any "associated rights" (as defined by the Cape Town Convention) conferred by this Agreement or any of the Debt Documents and the proceeds of all of the foregoing (all of such property and proceeds are collectively referred to as the "**Aircraft**"):

Airframe: Gulfstream Aerospace model G-IV (shown on the IR as GULFSTREAM model Gulfstream G-IV (GIV) aircraft bearing manufacturer's serial number 1104 and U.S. Registration No. N2SA.  Engines: Rolls Royce model Tay-611-8 (shown on the IR as ROLLS ROYCE model TAY611) aircraft engines bearing manufacturer's serial numbers 16136 and 16145 (which engines are 550 or more rated takeoff horsepower or the equivalent thereof); together with all other property essential and appropriate to the operation of the Aircraft, including but not limited to all instruments, avionics, auxiliary power units, equipment and accessories attached to, connected with or related to the Aircraft, and all logs, manuals and other documents issued for, or reflecting use or maintenance of, the Aircraft, to the extent Debtor is permitted to grant a security interest therein, all manufacturer's and supplier's warranties with respect to the foregoing and all rights and remedies under any maintenance or servicing contracts with respect to the Aircraft (including rights under prepaid accounts or monies held in trust pursuant thereto).

2.  **Home Airport.**  The home airport of the Aircraft will be:

Henderson Executive Airport, Las Vegas, Clark County, NV
(Name of Airport, Township, County, State)

and will not be changed without the prior written consent of Secured Party.

3.  **Representations, Warranties and Covenants of Debtor.**  As of the date hereof, Debtor represents, warrants and covenants that:

ASA-N2SA

(a)   Debtor (i) is, and will remain, duly organized, validly existing and in good standing under the laws of the State set forth in the preamble of this Agreement, (ii) is, and will remain, duly qualified and licensed in every jurisdiction wherever necessary to carry on its business and operations and (iii) is and will continue to be a "citizen of the United States", within the meaning of 49 U.S.C. §40102, as amended, and the regulations thereunder so long as any Obligations are due to Secured Party under the Debt Documents or otherwise;

(b)   Debtor's exact legal name is as set forth in the first paragraph of this Agreement. Debtor's "location" for purposes of Section 9-307 of the Uniform Commercial Code is the State set forth in the preamble of this Agreement. Debtor is situated in the "Contracting State" (as defined in the Cape Town Convention) of the United States of America. There are no liens, security interests, mortgages, claims, charges, "international interests" "prospective international interests", "contract of sale" filings (other than a contract of sale filing made in favor of Debtor) or "prospective contract of sale filings" (as such terms are defined in the Cape Town Convention), any Irrevocable De-Registration and Export Request Authorization ("IDERA") or other encumbrances (including non-consensual liens filed at the International Registry or otherwise), in each case whether or not registered or filed at the FAA or the International Registry or elsewhere (collectively, "Liens") in or on the Aircraft, other than Liens in favor of Secured Party, VFS Financing, Inc. or any of its subsidiaries;

(c)   Debtor has adequate power and capacity to enter into, and to perform its obligations under, each of the Debt Documents and has full right and lawful authority to grant the security interests and "international interests" described in this Agreement (including within the meaning of Article 7(b) of the Convention). The Debt Documents have been duly authorized, executed and delivered by Debtor and constitute legal, valid and binding agreements enforceable under all applicable laws in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws;

(d)   No approval, consent or withholding of objections is required from and no notice is required to be given to any governmental authority or instrumentality or any other person or entity with respect to the entry into, or performance by, Debtor of any of the Debt Documents, except such as have already been obtained;

(e)   The entry into, and performance by, Debtor of the Debt Documents will not (i) violate any of Debtor's organizational documents or any judgment, order, law or regulation applicable to Debtor, or (ii) result in any breach of, constitute a default under, or result in the creation of, any Lien, on any of Debtor's property (except for Liens in favor of Secured Party) pursuant to, any indenture mortgage, deed of trust, bank loan, credit agreement, or other agreement or instrument to which Debtor is a party;

(f)   There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Debtor which could, in the aggregate, have a material adverse effect on Debtor, its business or operations, or its ability to perform its obligations under the Debt Documents;

(g)   All financial statements delivered to Secured Party in connection with the Obligations have been prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statement there has been no material adverse change in Debtor's financial condition or business prospects;

(h)   Debtor is (or, to the extent that the Aircraft is to be acquired hereafter, will be) and will remain the sole lawful owner, in sole, open and notorious possession of the Aircraft, free from any Lien whatsoever other than those in favor of Secured Party and/or General Electric Capital Corporation. Debtor shall warrant and defend title to the Aircraft against all claims and demands of all other persons claiming any interest therein and shall not create, incur or suffer to exist any Lien with respect to the Aircraft, other than those in favor of Secured Party, VFS Financing, Inc. or any of its subsidiaries;

(i)   Debtor shall promptly pay or cause to be paid all taxes, license fees, assessments and public and private charges, that are or may be levied or assessed on or against the Aircraft or the ownership or use thereof, or on this Agreement;

(j)   If at the time of Debtor's execution of this Agreement, Debtor is not the registered owner of the Aircraft, as shown in the records of the United States Federal Aviation Administration ("FAA"), Debtor at its own expense shall immediately register the Aircraft in its name with the FAA and, so long as any Obligation is due to Secured Party, Debtor shall not impair, suspend or cancel such registration or cause it to be impaired, suspended or cancelled, nor register the Aircraft under the laws of any country except the United States of America;

(k)   Debtor shall promptly notify Secured Party of any facts or occurrences, which do or, with the passage of time or giving of notice or both will, constitute a breach of any of the above warranties and covenants or an Event of Default hereunder;

(l)   Debtor is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, (i) ensuring that no person who owns a controlling interest in or otherwise controls Debtor is or shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations;

(m)   Debtor is a "transacting user entity" for purposes of the International Registry, has identified an "administrator", has appointed a "professional user entity" satisfactory to Secured Party and has paid all required fees and taken all other actions necessary to enable Secured Party to register any "international interest" (including the "contract of sale" interest in favor of Debtor as against seller, as applicable) or other filing necessary or advisable to perfect or protect the Secured Party's interests created hereby or by any Debt Document with the International Registry. The description of the Aircraft (including the make, model, serial number and registration number) set forth above is true, correct and complete;

(n)   Debtor has inspected the Aircraft, has completed all such testing as it deems necessary and has found such Aircraft to be satisfactory and to be fully operational for its intended use.

ASA-N2SA

(e)    If the Aircraft's engines are on a current manufacturer certified maintenance service plan ("Maintenance Program") as of the date hereof, Debtor shall (i) maintain the engines on such Maintenance Program, (ii) such Maintenance Program shall include coverage for all scheduled and unscheduled maintenance events up to and including engine overhauls and shall include payment by Debtor of an hourly usage rate for each operating hour, (iii) perform all of its obligations under such Maintenance Program contract, including keeping such Maintenance Program contract current and fully paid in accordance with the terms of such contract, and otherwise keep such Maintenance Program contract in full force and effect as against the Maintenance Program provider, free and clear of all Liens (other than Permitted Liens), and (iv) shall provide, upon demand, Secured Party with documentation evidencing the current Maintenance Program contract and an aircraft interest holder document evidencing such Maintenance Program provider's acknowledgement of Secured Party's security interest in and to the Aircraft and the Maintenance Program contract.

4.    Further Assurances.  Debtor will promptly, upon Secured Party's request and at Debtor's sole cost and expense, execute, or otherwise authenticate, any document, record or instrument necessary or reasonably advisable for filing, recording, protecting or perfecting the interest of Secured Party in the Aircraft or otherwise created hereby or by the other Debt Documents (including UCC, FAA, Cape Town Convention filings or other applicable filings and filings to evidence corrections, amendments, terminations and acknowledgments of assignment), and will take such other further action as Secured Party may reasonably request in order to carry out more effectively the intent and purposes of this Agreement and the other Debt Documents and to establish and protect Secured Party's rights and remedies under this Agreement, the other Debt Documents, or otherwise with respect to the Aircraft.  In addition, Debtor hereby expressly authorizes each of Secured Party, Secured Party's designated FAA escrow agent (which may be FAA counsel) and Debtor's "professional user entity" to file a UCC-1 financing statement, the FAA Bill of Sale, AC Form 8050-1 Aircraft Registration Form, the AC Form 8050-135 FAA Entry Point Filing Form and any other documents evidencing Debtor's ownership of the Aircraft (including the "contract of sale" interest (as applicable)) and the "international interests" (as defined under the Cape Town Convention) and any other interests created by this Agreement and the other Debt Documents in favor of Secured Party, in each case describing the Aircraft and containing any other information required by or reasonably advisable under the applicable Uniform Commercial Code, FARs, Cape Town Convention and any other applicable law, treaty or regulation.  At the request of Secured Party following any expiration or termination of this Agreement and the other Debt Documents, Debtor shall, at Debtor's sole cost and expense, execute and deliver to Secured Party, for filing with the FAA and/or the International Registry, as applicable, such documents as Secured Party shall require to evidence and confirm the expiration or termination of this Agreement and the release of the Aircraft from the terms and conditions hereof, and if Debtor fails for any reason to execute and deliver such documents to Secured Party, Debtor hereby irrevocably consents to and authorizes Secured Party to sign Debtor's name to such documents and to  file (and/or instruct Debtor's "professional user entity" to file) such documents with the FAA and/or the International Registry, as applicable.  Debtor hereby ratifies its prior authorization for Secured Party to make filings (including financing statements) and amendments thereto describing the Aircraft and containing any other information required by any applicable law (including without limitation the Uniform Commercial Code) if filed prior to the date hereof.  Other than as expressly provided herein, Debtor shall not file any filings (including any corrective, amendment or termination filings) or financing statements relating to the Aircraft or the interests created hereby, without Secured Party's prior written consent.

5.    Use, Operation, Maintenance, Repair, Storage and Registration.  Debtor shall use, operate, maintain, store and repair the Aircraft and retain actual and operational control and possession thereof in compliance with the following provisions:

(a)    Debtor shall use, operate, maintain and store the Aircraft, and every part thereof, properly, carefully and in compliance with all applicable statutes, ordinances and regulations of all jurisdictions in which the Aircraft is operated or used, as well as all applicable insurance policies, manufacturer's recommendations and operating and maintenance manuals.  Debtor shall use the Aircraft predominantly for business purposes and only for the purposes and in the manner set forth in the application for insurance executed at the time of negotiating the purchase of the Aircraft.  At all times during the term of this Agreement, Debtor shall not operate or locate the Aircraft, or suffer or permit the Aircraft to be operated, located, or otherwise permitted to go into or over (i) any country or jurisdiction that does not maintain full diplomatic relations with the United States, (ii) any geographic area which is not covered by the insurance policies required by this Agreement, or (iii) any jurisdiction or nation wherein the operation or location thereof would violate any applicable law, regulation, or restriction, including, but not limited to, the U.S. Export Administration Regulations and the U.S. International Traffic In Arms Regulation.  Notwithstanding the foregoing, in no event shall the Aircraft be located or operated outside of the continent of North America and the Caribbean.  The engines identified in Section 1 of this Agreement shall be used only on the airframe described in that Section and shall only be removed for maintenance in accordance with the provisions of this Agreement.  Debtor shall not, and shall not attempt to, sell all or any fractional interest in, assign, mortgage, grant a Lien in, transfer or encumber or dispose of the Aircraft, or any interest herein or therein, or any part thereof, without the prior written consent of Secured Party.  Debtor shall not, and shall not attempt to, lease, charter, enter into any pooling or interchange agreements, rent, or grant any time-shares with respect to or otherwise deliver possession of (except for maintenance purposes) the Aircraft, without Secured Party's prior written consent (such consent not to be unreasonably withheld) and without making all filings and registrations with the International Registry deemed necessary or advisable by Secured Party to protect its interest herein and in the Aircraft.

(b)    The Aircraft will be operated at all times by a currently certificated pilot having the minimum total pilot hours and minimum pilot-in-command hours required by FAA rules or regulations or as required by applicable insurance policies, whichever requirements are stricter.  Debtor shall be responsible for and pay for all expenses of owning and operating the Aircraft, including but not limited to storage, fuel, lubricants, service, inspections, overhauls, replacements, maintenance and repairs, all in compliance with the manufacturer's operating and maintenance manuals and with FAA rules and regulations.  Debtor shall properly maintain all records and other materials pertaining to the maintenance and operation of the Aircraft, including but not limited to those required by applicable law, rule or regulation and by the manufacturer for the enforcement of any warranty.

(c)    The Aircraft is and shall at all times be maintained by Debtor at its expense in good repair in the configuration and condition existing on the date hereof and in airworthy condition necessary for all aircraft licenses under the laws, ordinances, rules and regulations of all jurisdictions in which the Aircraft will at any time be operated. Debtor shall ensure timely compliance with all applicable mandatory Service Bulletins, Service Letters, Manufacturer's Directives and Airworthiness Directives. Debtor shall submit written evidence of such maintenance and condition to Secured Party upon its written request from time to time. Debtor shall use reasonable care to prevent the Aircraft from being damaged or injured, and shall promptly replace any part or component of the Aircraft which may be damaged, worn out, lost, destroyed, confiscated or otherwise rendered unsatisfactory or unavailable for use in or upon the Aircraft.

(d)    The Aircraft shall at all times have the same utility and quality as that which it originally had. Debtor shall at its expense timely make any alterations or modifications to the Aircraft that may at any time during the term of this Agreement be required to maintain the Aircraft in the condition required by this Agreement. Debtor shall in no way alter, attempt to alter or otherwise change the identity or appearance of the Aircraft, including but not limited to the "N" number, exterior paint and symbols, without the express prior written consent of Secured Party.

(e)    The international interest created by this Agreement in the Aircraft pursuant to the provisions of the Cape Town Convention shall be registered with the International Registry, and Debtor hereby consents to such registration and authorizes Secured Party to effect all such registrations with the International Registry. No international interest created in favor of Secured Party shall be discharged without the prior written consent of Secured Party.

6.    Indemnification and Insurance.

(a)    Debtor shall indemnify and save Secured Party and its affiliates and all of Secured Party's and such affiliates' respective directors, shareholders, officers, employees, agents, predecessors, attorneys-in-fact, lawyers, successors and assigns (each an "Indemnitee") on a net after-tax basis harmless from and against all claims, costs, expenses (including legal fees), demands, suits, damages and liabilities of any kind and nature whatsoever, including without limitation personal injury, death and property damage claims arising in tort or otherwise, under any legal theory including but not limited to strict liability (including Claims involving or alleging environmental damage, criminal acts, hijacking, acts of terrorism or similar acts, product liability or strict or absolute liability in tort, latent and other defects (whether or not discoverable), for patent, trademark or copyright infringement)(collectively, "Claims") that may be imposed on, incurred by or asserted against any Indemnitee whether or not such Indemnitee shall also be indemnified as to any such Claim by any other Person in any way relating to, arising out of or in connection with (a) the Debt Documents, including, without limitation, the execution, delivery, breach (including any Event of Default), enforcement, performance or administration of the Debt Documents and (b) the Aircraft, including, without limitation, the perfection, maintenance, protection, deregistration or realization upon the Aircraft or any other security for the Obligations, and the manufacture, inspection, construction, purchase, acceptance, rejection, ownership, management, pooling, interchange, chartering, tilting or re-tilting, delivery, lease, sublease, possession, use, operation, maintenance, condition, registration or re-registration, sale, removal, repossession, storage or other disposition of the Aircraft or any part thereof or any accident in connection therewith. Notwithstanding the foregoing, Debtor shall not be required to indemnify an Indemnitee for any Claim caused solely and directly by the gross negligence or willful misconduct of such Indemnitee.

(b)    Debtor shall at all times bear all risk of loss, damage, destruction or confiscation of or to the Aircraft. Debtor shall secure and maintain in effect, at its own expense and at all times, insurance against such hazards and for such risks as Secured Party may require. Without limiting the generality of the foregoing, Debtor shall secure and maintain: (i) all-risk aircraft hull and engine insurance (including, without limitation, with respect to engine or part thereof while removed from the Aircraft and foreign object damage insurance) in an amount which is not less than the principal amount of the Obligations evidenced by the Debt Documents; and (ii) confiscation, expropriation and war risk and allied perils (including, without limitation, terrorism) insurance and hijacking insurance in an amount which is, for physical damage, not less than the principal amount of the Obligations evidenced by the Debt Documents for any single occurrence. All such policies shall include standard loss payable clause and breach of warranty endorsement in favor of Secured Party and shall be under such forms and upon such terms, for such periods and with such companies or underwriters as Secured Party may approve, losses or refunds in all cases to be first payable to Secured Party or its assigns, as its interest may appear. Notwithstanding any provision of this Agreement to the contrary, failure to obtain Secured Party's approval of any insurer or policy shall not excuse Debtor from its obligation to maintain insurance coverage. All insurance policies shall provide for at least 30 days prior written notice to Secured Party of any cancellation or material modification, shall contain a severability of interest clause providing that such policy shall operate in the same manner as if a separate policy covered each insured, shall waive any right of set-off against Debtor or Secured Party, shall waive any right of subrogation against Secured Party and shall be primary and not subject to any offset by any other insurance carried by Debtor or Secured Party. Debtor shall pay any deductible portion of such insurance and any expense incurred in collecting insurance proceeds. Debtor shall furnish to Secured Party copies of all insurance policies required by this paragraph. Debtor hereby assigns to Secured Party the proceeds of all such insurance (including any refund of premium) to the extent of the Obligations secured hereby, directs the insurer to pay any losses or refunds due Debtor directly to Secured Party, and appoints Secured Party as attorney-in-fact to make proof of loss and claim for all insurance and refunds thereupon and to endorse all documents, contracts drafts, checks or forms of payment of insurance or premiums. Secured Party may at its option apply insurance proceeds, in whole or in part, to (i) repair or replace the Aircraft or any part thereof or (ii) satisfy any of Debtor's Obligations to Secured Party. Any surplus proceeds shall be paid to Debtor.

7.    Debtor's Possession. Until default, Debtor may possess the Aircraft and use it in any lawful manner not inconsistent with this Agreement. Debtor shall at all times keep the Aircraft and any proceeds therefrom separate and distinct from other property of Debtor and shall keep accurate and complete records of the Aircraft and all such proceeds. Secured Party may examine and inspect the Aircraft, wherever located, at any reasonable time, on land and in flight.

ASA-N2SA

8. **Default.** Debtor shall be in default under this Agreement and each of the other Debt Documents upon the occurrence of any of the following "Events of Default":

(a) Debtor fails to pay within 10 days after its due date any installment or other amount due under any of the Debt Documents;

(b) Debtor fails to maintain at all times insurance coverage as required by paragraph 6(b) of this Agreement;

(c) Debtor sells all or any fractional interest in, rents, leases, charters, mortgages, assigns, enters into any pooling or interchange agreements, grants a Lien in or grants any time-shares with respect to or otherwise delivers possession of, transfers or encumbers the Aircraft (or any part thereof) or attempts to do any of the foregoing in each case in violation of the terms hereof or Debtor's filing of any Lien with the International Registry or the FAA or any financing statement (including any amendment or termination of any of the foregoing) without the prior written consent of Secured Party or any failure by Debtor to remove any Lien as required by the terms hereof;

(d) Debtor or any guarantor or surety for the Obligations (any such person, a "Guarantor") breaches any of its Obligations under any Debt Document (other than those described by Section 8(a) through (c)) and fails to cure such breach within 30 days after Secured Party gives Debtor written notice thereof;

(e) Any warranty, representation or statement made by Debtor or any Guarantor in any of the Debt Documents or otherwise in connection with any of the Obligations is false or misleading in any material respect;

(f) Debtor or any Guarantor becomes insolvent or ceases to do business as a going concern or if Debtor or any Guarantor is a natural person, any death, incapacity or incompetency of Debtor or any Guarantor or any indictment of Debtor or Guarantor on felony charges;

(g) The Aircraft or any other property of Debtor or any Guarantor is confiscated, sequestered, seized or levied upon;

(h) The Aircraft or any engine is lost, damaged, stolen, secreted, abused, illegally used, misused, rendered inaccessible (geographically or otherwise) or destroyed, unless with respect to the engine Debtor replaces same with an engine of the same make, model and fair market value as confirmed by independent appraisal within 60 days of the date the engine is lost, damaged, stolen, secreted, abused, illegally used, misused, rendered inaccessible (geographically or otherwise) or destroyed;

(i) Any part of the Aircraft (which would cost more than the lesser of (i) ten percent (10%) of the original loan balance or (ii) $250,000 to repair or replace) is damaged, lost, stolen or destroyed, unless such part is replaced or repaired in a good, workmanlike manner within 60 days of the date that such part is damaged, lost, stolen or destroyed and the fair market value of the Aircraft (as confirmed by an independent appraisal) has been restored to the fair market value of the Aircraft prior to any such damage, loss, theft or destruction (assuming the Aircraft had been maintained in accordance with the provisions herein) ;

(j) Debtor or any Guarantor is declared in default under any contract or obligation (including, without limitation, any lease or loan) requiring the payment of money in an original principal amount greater than $50,000;

(k) The occurrence of any default under any other agreement (including, without limitation, any lease or loan) between Debtor, any Guarantor and/or any parent entities, subsidiaries or affiliates (on the one hand) and Secured Party (or any of its affiliates, subsidiaries or parent entities)(on the other hand);

(l) Debtor or any Guarantor makes an assignment for the benefit of creditors, applies to or petitions any tribunal for the appointment of a custodian, receiver or trustee for itself or for any substantial part of its property, or commences any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, or if any such petition or application is filed or any such proceeding is commenced against Debtor or any Guarantor, and such petition, application or proceeding is not dismissed within 30 days, or Debtor or any such Guarantor by any act or omission shall indicate its consent to, approval of or acquiescence in any such petition, application, proceeding, order for relief or such appointment of a custodian, receiver or trustee;

(m) Debtor or any Guarantor conceals or removes, or permits to be concealed or removed, any part of its assets, so as to hinder, delay or defraud any of its creditors, or makes or suffers a transfer of any of its assets which would be fraudulent under any bankruptcy, insolvency, fraudulent conveyance or similar law or makes any transfer of its assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or suffers or permits, while insolvent, any creditor to obtain a lien upon any of Debtor's or any Guarantor's property through legal proceedings or distraint, or if a tax lien is filed against Debtor or any Guarantor;

(n) Any Guarantor revokes or attempts to revoke its guaranty of any of the Obligations or fails to observe or perform any covenant, condition or agreement to be performed under any guaranty or other related document to which it is a party or the Guaranty ceases to be enforceable in accordance with its terms;

(o) The occurrence of any merger or consolidation involving Debtor or any Guarantor, any sale by Debtor or such Guarantor of all or substantially all of its assets or any change in control has occurred with respect to Debtor or any Guarantor.

(p) Debtor breaches any of its obligations in Section 3(o) hereof.

9. **Remedies of Secured Party:**

(a) Upon the occurrence of any Event of Default under this Agreement, Secured Party, at its option, may declare any or all of the Obligations, including but not limited to the Note, to be immediately due and payable, without demand or notice to Debtor or any Guarantor. The Obligations and liabilities accelerated thereby shall bear interest from the Event of Default (both before and after any judgment) until paid in full at a per annum rate equal to the lower of eighteen percent (18%) or the maximum rate not prohibited by applicable law (the "Per Diem Interest Rate"). The application of such Per Diem Interest Rate shall not be interpreted or deemed to extend any cure period set forth herein, cure any default or otherwise limit Secured Party's right or remedies hereunder. Notwithstanding anything to the contrary contained herein, in no event shall this Agreement require the payment or permit the collection of amounts in excess of the maximum permitted by applicable law.

ASA-N2SA

(b) Upon the occurrence of any Event of Default, Secured Party shall additionally have all of the rights and remedies of a secured party under the Uniform Commercial Code, the Cape Town Convention and under any other applicable law. Without limiting the foregoing and without notice or demand, Secured Party shall have the right at its option to immediately exercise one or more of the following remedies: (i) refuse to extend any further credit to Debtor, any Guarantor or any of their parent entities, subsidiaries and affiliates; (ii) terminate this Agreement immediately without notice; (iii) take immediate and exclusive possession of the Aircraft, wherever it may be found; (iv) enter any premises of Debtor, any Guarantor or any of their parent entities, subsidiaries and affiliates, with or without process of law, wherever the Aircraft may be or Secured Party reasonably believes it to be, and search for it, and if the Aircraft or any part of it is found, to take possession of and remove it; (v) sell, lease and otherwise dispose of the Aircraft or any part of it, at public auction or private sale, for cash or on credit, as Secured Party may elect at its option and Secured Party shall have the right to bid and become the purchaser at any such sale, or keep the Aircraft idle; (vi) direct Debtor to assemble all parts and components of the Aircraft and deliver it to Secured Party, at Debtor's expense, at a place designated by Secured Party which is reasonably convenient to Secured Party; (vii) hold, appropriate, apply or set-off any and all moneys, credits and indebtedness due from Secured Party, its affiliates, parents or subsidiaries, to Debtor, any Guarantor or any of their parent entities, subsidiaries and affiliates; (viii) exercise any rights it may have against any security deposit or other collateral pledged to it by Debtor, any Guarantor or any of their affiliates, subsidiaries or parent entities and/or (ix) exercise any rights or remedies it may have under applicable law, including any rights to procure export and physical transfer of the Aircraft from the territory in which it is situated or de-register the Aircraft (pursuant to an IDERA or otherwise) and any rights to obtain from any court speedy relief pending final determination available at law (including possession, control, custody, or immobilization of the Aircraft or requiring Debtor to preserve the Aircraft or its fair market value. Upon exercise of Secured Party's dispossessory remedies hereunder or under applicable law, Debtor hereby agrees that ownership of the Aircraft shall vest in Secured Party.

(c) Debtor shall pay all actual costs incurred by Secured Party in collecting any of the Obligations owed Secured Party by Debtor and enforcing any Obligations of Debtor to Secured Party, including but not limited to actual attorneys' fees and legal expenses.

(d) Notwithstanding the availability of any other remedy and in addition thereto, if Debtor fails to perform any of its Obligations hereunder or under any of the Debt Documents, Secured Party may perform the same, but shall not be obligated to do so, for the account of Debtor, and Debtor shall immediately repay to Secured Party on demand any amounts paid or incurred by Secured Party in such performance together with interest thereon accrued from the date paid or incurred by Secured Party until repaid in full by Debtor at the lesser of one and one half percent (1 1/2%) per month and the maximum interest rate permitted by applicable law to be charged Debtor by Secured Party.

(e) Notwithstanding any other provision hereof to the contrary, any notice required to be given by law or pursuant to this Agreement with respect to disposition of the Aircraft or any part of it shall be deemed reasonably and properly given if mailed by first class United States Mail, postage prepaid, by prepaid express mail service (private or government) or by hand delivery to Debtor at its last known address, at least ten (10) days before the disposition of the subject matter of such notification.

(f) Secured Party shall have the right to apply any amounts collected pursuant to this Section 9 or under the Guaranty in the following order of priorities: (i) to pay all of Secured Party's costs, charges and expenses incurred in enforcing its rights under this Agreement and any of the Debt Documents or in taking, removing, holding, repairing, refurbishing, selling, leasing or otherwise disposing of the Aircraft; then, (ii) to pay any and all late fees, per diem fees, other such charges due hereunder or under the Debt Documents, any and all interest due hereunder and all amounts owing pursuant to any indemnity claims; then (iii) to pay all principal due hereunder or under the Debt Documents; then (iv) to pay all other amounts due and owing to Secured Party (or any of its affiliates, subsidiaries or parent entities) under any of the Debt Documents or under any other agreement between Debtor, any Guarantor and/or any parent entities, subsidiaries or affiliates (on the one hand) and Secured Party (or any of its affiliates, subsidiaries or parent entities)(on the other hand). Secured Party shall have the right to any proceeds of sale, lease or other disposition of the Aircraft, if any, and shall have the right to apply same in the following order of priorities: (i) to pay all of Secured Party's costs, charges and expenses incurred in enforcing its rights under this Agreement and any of the Debt Documents or in taking, removing, holding, repairing, refurbishing, selling, leasing or otherwise disposing of the Aircraft; then, (ii) to pay any and all late fees, per diem fees, other such charges due hereunder or under the Debt Documents, any and all interest due hereunder and any amounts owing pursuant to any indemnity claims; then (iii) to pay all principal due hereunder or under the Debt Documents; then (iv) to pay all other amounts due and owing to Secured Party under any of the Debt Documents or under any other agreement between Debtor, any Guarantor and/or any parent entities, subsidiaries or affiliates (on the one hand); then (v) any surplus shall be refunded to Debtor. Debtor shall pay any deficiency in (i), (ii), (iii) and (iv) of each of the foregoing sentences immediately upon demand.

(g) The foregoing remedies shall not be exclusive or alternative but shall be cumulative and in addition to all other remedies in favor of Secured Party existing at law, in equity or under any applicable statute or international treaty, convention or protocol.

10. Principals and Waivers. All signers and endorsers hereof are to be regarded as principals, jointly and severally. Every maker, endorser and Guarantor hereof hereby waives presentment, notice, protest and impairment of collateral, and consents to all extensions, deferrals, partial payments and refinancings hereof before or after maturity. No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion.

11. Reports.

(a) Debtor shall promptly notify Secured Party (i) at least 30 days' prior to any change in Debtor's name or in the state of its incorporation or registration or its "contracting state" (for purposes of the Cape Town Convention), (ii) at least 30 days' prior to any change in the "location" of Debtor for purposes of the

Uniform Commercial Code; (iii) at least 30 days' prior to any permanent or indefinite relocation of the Aircraft or its home airport, (iv) immediately upon the Aircraft being lost, stolen, missing, confiscated, appropriated, seized, sequestered, destroyed or materially damaged, (v) immediately upon any accident involving the Aircraft or (vi) immediately upon Debtor becoming aware of any Lien attaching or being made against the Aircraft (other than Liens in favor of Secured Party). Such notice shall contain all pertinent details of the event being reported, and shall be supplemented promptly upon Secured Party's request.

(b)    Debtor agrees to furnish its annual financial statements and such interim statements as Secured Party may require in form satisfactory to Secured Party. Any and all financial statements submitted and to be submitted to Secured Party have and will have been prepared on a basis of generally accepted accounting principles consistently applied, and are and will be complete and correct and fairly present Debtor's financial condition as at the date thereof. Secured Party may at any reasonable time examine Debtor's books and records and make copies thereof.

12. **Conditions Precedent.** Secured Party shall have no obligation to make the loans contemplated by the Debt Documents unless and until Secured Party shall have received each of the following: (i) an original of this Agreement, the Note and any other Debt Documents duly executed and delivered by Debtor, (ii) evidence satisfactory to Secured Party that Debtor shall have received good and legal title to the Aircraft; (iii) copies of insurance policies or, at Secured Party's option, such other evidence of insurance which complies with the requirements of Section 6 above; (iv) evidence that the Aircraft has been properly registered at the Federal Aviation Administration ("FAA") and the FAA has assigned an N number to the Aircraft; (v) evidence that the Aircraft has been duly certified as to type and airworthiness by the FAA; (vi) evidence that Secured Party's designated FAA escrow agent (which may be Secured Party's FAA counsel) has received in escrow if the transaction contemplated hereby includes the acquisition of the Aircraft by Debtor, a bill of sale sufficient to transfer title to the Aircraft to Debtor and Debtor's AC Form 8050-1 Aircraft Registration Form (except for the pink copy which shall be available to be placed on the Aircraft upon acceptance thereof), and an executed duplicate original of this Agreement all in proper form for filing with the FAA; (vii) resolution of Debtor authorizing this Agreement and the Debt Documents in form acceptable to Secured Party; (viii) a completed inspection, appraisal and/or survey with respect to the Aircraft acceptable to Secured Party in its sole discretion; and (ix) such other documents, certificates or reports as Secured Party may reasonably request. Secured Party's obligation to make the loans contemplated by the Debt Documents is further conditioned upon filing of this Agreement and all other necessary documents with, and the acceptance thereof by, the FAA and receipt by Secured Party of: (a) an AC Form 8050-135 FAA Entry Point Filing Form International Registry for filing with the FAA and the International Registry and any other form or forms prescribed by the International Registry or the FAA; (b) evidence that Debtor and (if this transaction is an acquisition) Supplier are registered "transacting user entities" with the International Registry, have each appointed a "professional user entity" satisfactory to Secured Party, have filed all necessary documentation and paid all required user fees to enable Secured Party to register its "international interests" created hereby as against Debtor and Debtor to register its "contract of sale" interest against Supplier; (c) a "priority search certificate" (as such term is used in the procedures of the International Registry) from the International Registry indicating that no international interests with respect to the Aircraft are currently registered therein and indicating that no one other than Debtor (or if this transaction is an acquisition , Supplier) is the owner thereof; (d) evidence that  any and all filings required or advisable to protect or perfect Secured Party's "international interests" created by this Agreement and any other interests created pursuant to the other Debt Documents are filed with the International Registry and, if this transaction is an acquisition, evidence that  any and all filings required or advisable to protect or perfect Debtor's contract of sale interest created by any bill of sale in favor of Debtor are filed with the International Registry; and (e) confirmation satisfactory to Secured Party that each of Debtor and, if applicable, Supplier have consented to the registration of such interests at the International Registry.

13. **Miscellaneous:**

(a)    This Agreement, the Note and/or any of the other Debt Documents may be assigned, in whole or in part, by Secured Party without notice to Debtor and Debtor hereby consents to any and all such assignments (for all purposes, including for purposes of the Cape Town Convention). Debtor hereby waives and agrees not to assert against any assignee any defense, counterclaim, right of set-off or cross-complaint Debtor may have against Secured Party for any reason whatsoever, agreeing that Secured Party shall be solely responsible therefor and waives any and all right it might have under applicable law to any prior notice thereof. Debtor agrees that if Debtor receives written notice of an assignment from Secured Party, Debtor will pay all amounts payable under this Agreement or any Debt Document to such assignee or as instructed by Secured Party. Debtor also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee and shall cooperate with Secured Party and any such assignee in delivering to such assignee a certificate of insurance reflecting assignee as loss payee and additional insured and in issuing a new IDERA in favor of such assignee.

(b)    All notices to be given in connection with this Agreement and the Debt Documents shall be in writing in English, shall be addressed to the parties at their respective addresses set forth hereinabove (unless and until a different address may be specified in a written notice to the other party), and shall be deemed given (i) on the date of receipt if delivered in hand or by facsimile transmission, (ii) on the next business day after being sent by express mail (government or private), and (iii) on the fourth business day after being sent by regular, registered or certified mail.  As used herein, "business day" means any day other than a Saturday, a Sunday, or other day on which commercial banks in New York, New York are required or authorized to be closed.

(c)    Secured Party may correct patent errors herein and fill in all blanks herein or in the Debt Documents consistent with the agreement of the parties.

(d)    Time is of the essence hereof.  This Agreement and the Debt Documents shall be binding, jointly and severally, upon all parties described as the "Debtor" and their respective heirs, executors, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns.

(e)    The unenforceability of any provision hereof or of the Debt Documents shall not affect the validity of any other provision hereof or thereof.

(f)    Debtor hereby acknowledges and agrees that Secured Party reserves the right to impose fees or charges for returned checks and certain optional services that Secured Party may offer or provide to Debtor during the term of this Agreement.  Secured Party will notify Debtor the amount of the applicable fee

ASA-N2SA

or charge if Debtor requests such optional services. In addition, Secured Party may make available to Debtor a schedule of fees or charges for such optional services from time to time or upon demand, provided, however, that such fees and charges are subject to change in Secured Party's sole discretion without notice to Debtor.

(g)    This Agreement and the Debt Documents constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior understandings (whether written, oral or implied) with respect thereto, except representations made by Debtor to Secured Party. THIS AGREEMENT AND THE DEBT DOCUMENTS SHALL NOT BE CHANGED OR TERMINATED, NOR SHALL ANY WAIVER BE GIVEN, ORALLY OR BY COURSE OF CONDUCT, BUT ONLY BY A WRITING SIGNED BY BOTH PARTIES HERETO. Section headings in this Agreement are for convenience only, and shall not affect the construction or interpretation hereof.

(h)    DEBTOR HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE DEBT DOCUMENTS, ANY DEALINGS BETWEEN DEBTOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN DEBTOR AND SECURED PARTY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(i)    This Agreement shall continue in full force and effect until all of the Obligations have been indefeasibly paid in full to Secured Party. This Agreement shall automatically be reinstated in the event that Secured Party is ever required to return or restore the payment of all or any portion of the Obligations (all as though such payment had never been made).

(j)    THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE AIRCRAFT. DEBTOR IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH (COLLECTIVELY, THE "PROCEEDINGS"), AND DEBTOR FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). DEBTOR IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. DEBTOR ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO SECURED PARTY WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, DEBTOR AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH SECURED PARTY MAY BE ENTITLED AT LAW OR IN EQUITY, SECURED PARTY WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, each of Debtor and Secured Party shall have the right to apply to a court of competent jurisdiction in the United States or abroad for equitable relief as is necessary to preserve, protect and enforce their rights under this Agreement, including but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Debtor, any Guarantor or the Aircraft or to gain possession of the Aircraft.

(k)    This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and either of the parties hereto may execute this Agreement by signing any such counterpart.

(l)    Debtor hereby expressly waives the provisions of Articles 11(2) and 13(2) of the Convention and Article IX(6) of the Protocol.

(m)    Through its normal marketing and business development activities as is customary in the industry, Secured Party or its affiliates may provide brokers with business entertainment or other incentives or benefits. If Debtor is working with a broker in connection with the transactions contemplated by this Agreement, Debtor is encouraged to discuss this with Debtor's broker.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

ASA-N2SA

IN WITNESS WHEREOF, Debtor has executed and delivered this Agreement as of the date first above written.

DEBTOR:

VFM Aviation, LLC
By Its Manager

By: _____

Name: Frank Mangelluzzi

Title: Manager

# EXHIBIT B

# AMENDMENT

**THIS AMENDMENT** is made as of ___1/6/2010___, between VFS Financing, Inc., together with its successors and assigns, if any, and FM Aviation II, LLC in connection with the Aircraft Security Agreement dated November 23, 2009 ("Agreement"). The terms of this Amendment are hereby incorporated into the Agreement as though fully set forth therein. The Agreement is hereby amended as follows.

Debtor name currently reads FM Aviation, LLC, and is amended to read FM Aviation II, LLC.

DEBTOR:

FM Aviation II, LLC
By its Member

By: _____

Name: Frank Mongelluzzi

Title: Member

# EXHIBIT C

# AIRCRAFT SECURITY AGREEMENT

FAA Authorization Code: _____

International Registry File Numbers:

(Airframe): _____

(Engine No. 1): _____

(Engine No. 2): _____

**THIS AIRCRAFT SECURITY AGREEMENT** (as amended, supplemented or otherwise modified from time to time, this "Agreement") is made as of _November 23_, 2009 by FM Aviation II, LLC a limited liability company organized and existing under the laws of the State of South Carolina and having its principal place of business at 3040 Gulf to Bay Blvd., Clearwater, FL 33759 (together with its successors and permitted assigns, if any, "Debtor") in favor of VFS Financing, Inc., a Delaware corporation having an office at 10 Riverview Drive, Danbury, CT 06810-6268 (together with its successors and assigns, if any, "Secured Party").

1. **Grant of Security Interest.** To secure payment and performance of any and all debts, obligations and liabilities of any kind, nature or description whatsoever (whether due or to become due) of Debtor and any of its affiliates, parent entities, or subsidiaries to Secured Party and any of its any of its affiliates, parent entities or subsidiaries, including but not limited to those arising under the promissory note dated on or about the date hereof, as it may be amended from time to time (the "Note"), this Agreement, and/or any related documents, including without limitation, any additional promissory notes arising out of, or relating to, this Agreement which may be executed after the date hereof and any renewals, extensions, replacements and modifications thereto (the Note, this Agreement and all such related documents being hereinafter collectively referred to as the "Debt Documents"), and any renewals, extensions, replacements and modifications of such debts, obligations and liabilities including all costs of enforcing any rights or remedies of Secured Party hereunder (including all costs of repossession, refurbishment, re-sale, re-lease and/or remarketing) and all costs of collecting amounts due hereunder (including all attorneys' fees) (all of the foregoing, the "Obligations"), Debtor grants to Secured Party a security interest and an "international interest" (as such term is defined in the Convention on International Interests in Mobile Equipment (the "Convention") and Protocol thereto on Matters Specific to Aircraft Equipment (the "Protocol") concluded in Cape Town in November 2001 (the Convention and the Protocol, each, in the official English language text thereof, are collectively referred to herein as the "Cape Town Convention") in the aircraft and other property described below and in all additions and accessions thereto and substitutions therefor, now or hereafter owned, all unearned insurance premiums and insurance proceeds relating to such property, any "associated rights" (as defined by the Cape Town Convention) conferred by this Agreement or any of the Debt Documents and the proceeds of all of the foregoing (all of such property and proceeds are collectively referred to as the "Aircraft"):

Airframe: Gulfstream Aerospace model G-IV (shown on the IR as GULFSTREAM model Gulfstream G-IV (GIV) aircraft bearing manufacturer's serial number 1171 and U.S. Registration No. N3SA. Engines: Rolls Royce model Tay MX611-8 (shown on the IR as ROLLS ROYCE model TAY611) aircraft engines bearing manufacturer's serial numbers 16396 and 16270 (which engines are 550 or more rated takeoff horsepower or the equivalent thereof); together with all other property essential and appropriate to the operation of the Aircraft, including but not limited to all instruments, avionics, auxiliary power units, equipment and accessories attached to, connected with or related to the Aircraft, and all logs, manuals and other documents issued for, or reflecting use or maintenance of, the Aircraft and, to the extent Debtor is permitted to grant a security interest therein, all manufacturer's and supplier's warranties with respect to the foregoing and all rights and remedies under any maintenance or servicing contracts with respect to the Aircraft (including rights under prepaid accounts or monies held in trust pursuant thereto).

2. **Home Airport.** The home airport of the Aircraft will be:

   Henderson Executive Airport, Las Vegas, Clark County, NV
   (Name of Airport, Township, County, State)

   and will not be changed without the prior written consent of Secured Party.

3. **Representations, Warranties and Covenants of Debtor.** As of the date hereof, Debtor represents, warrants and covenants that:

ASA-N3SA

(a) Debtor (i) is, and will remain, duly organized, validly existing and in good standing under the laws of the State set forth in the preamble of this Agreement, (ii) is, and will remain, duly qualified and licensed in every jurisdiction wherever necessary to carry on its business and operations and (iii) is and will continue to be a "citizen of the United States", within the meaning of 49 U.S.C. §40102, as amended, and the regulations thereunder so long as any Obligations are due to Secured Party under the Debt Documents or otherwise;

(b) Debtor's exact legal name is as set forth in the first paragraph of this Agreement. Debtor's "location" for purposes of Section 9-307 of the Uniform Commercial Code is the State set forth in the preamble of this Agreement. Debtor is situated in the "Contracting State" (as defined in the Cape Town Convention) of the United States of America. There are no liens, security interests, mortgages, claims, charges, "international interests" "prospective international interests", "contract of sale" filings (other than a contract of sale filing made in favor of Debtor) or "prospective contract of sale filings" (as such terms are defined in the Cape Town Convention), any irrevocable De-Registration and Export Request Authorization ("IDERA") or other encumbrances (including non-consensual liens filed at the International Registry or otherwise), in each case whether or not registered or filed at the FAA or the International Registry or elsewhere,(collectively, "Liens") in or on the Aircraft, other than Liens in favor of Secured Party, VFS Financing, Inc. or any of its subsidiaries;

(c) Debtor has adequate power and capacity to enter into, and to perform its obligations under, each of the Debt Documents and has full right and lawful authority to grant the security interests and "international interests" described in this Agreement (including within the meaning of Article 7(b) of the Convention). The Debt Documents have been duly authorized, executed and delivered by Debtor and constitute legal, valid and binding agreements enforceable under all applicable laws in accordance with their terms; except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws;

(d) No approval, consent or withholding of objections is required from and no notice is required to be given to any governmental authority or instrumentality or any other person or entity with respect to the entry into, or performance by, Debtor of any of the Debt Documents, except such as have already been obtained;

(e) The entry into, and performance by, Debtor of the Debt Documents will not (i) violate any of Debtor's organizational documents or any judgment, order, law or regulation applicable to Debtor, or (ii) result in any breach of, constitute a default under, or result in the creation of, any Lien, on any of Debtor's property (except for Liens in favor of Secured Party) pursuant to, any indenture mortgage, deed of trust, bank loan, credit agreement, or other agreement or instrument to which Debtor is a party;

(f) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Debtor which could, in the aggregate, have a material adverse effect on Debtor, its business or operations, or its ability to perform its obligations under the Debt Documents;

(g) All financial statements delivered to Secured Party in connection with the Obligations have been prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statement there has been no material adverse change in Debtor's financial condition or business prospects;

(h) Debtor is (or, to the extent that the Aircraft is to be acquired hereafter, will be) and will remain the sole lawful owner, in sole, open and notorious possession of the Aircraft, free from any Lien whatsoever other than those in favor of Secured Party and/or General Electric Capital Corporation. Debtor shall warrant and defend title to the Aircraft against all claims and demands of all other persons claiming any interest therein and shall not create, incur or suffer to exist any Lien with respect to the Aircraft, other than those in favor of Secured Party, VFS Financing, Inc. or any of its subsidiaries;

(i) Debtor shall promptly pay or cause to be paid all taxes, license fees, assessments and public and private charges, that are or may be levied or assessed on or against the Aircraft or the ownership or use thereof, or on this Agreement;

(j) If at the time of Debtor's execution of this Agreement, Debtor is not the registered owner of the Aircraft, as shown in the records of the United States Federal Aviation Administration ("FAA"), Debtor at its own expense shall immediately register the Aircraft in its name with the FAA and, so long as any Obligation is due to Secured Party, Debtor shall not impair, suspend or cancel such registration or cause it to be impaired, suspended or cancelled, nor register the Aircraft under the laws of any country except the United States of America;

(k) Debtor shall promptly notify Secured Party of any facts or occurrences, which do or, with the passage of time or giving of notice or both will, constitute a breach of any of the above warranties and covenants or an Event of Default hereunder;

(l) Debtor is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, (i) ensuring that no person who owns a controlling interest in or otherwise controls Debtor is or shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations;

(m) Debtor is a "transacting user entity" for purposes of the International Registry, has identified an "administrator", has appointed a "professional user entity" satisfactory to Secured Party and has paid all required fees and taken all other actions necessary to enable Secured Party to register any "international interest" (including the "contract of sale" interest in favor of Debtor as against seller, as applicable) or other filing necessary or advisable to perfect or protect the Secured Party's interests created hereby or by any Debt Document under the International Registry. The description of the Aircraft (including the make, model, serial number and registration number) set forth above is true, correct and complete;

(n) Debtor has inspected the Aircraft, has completed all such testing as it deems necessary and has found such Aircraft to be satisfactory and to be fully operational for its intended use.

ASA-N3SA

(b) If the Aircraft's engines are on a current manufacturer certified maintenance service plan ("Maintenance Program") as of the date hereof, Debtor shall (i) maintain the engines on such Maintenance Program, (ii) such Maintenance Program shall include coverage for all scheduled and unscheduled maintenance events up to and including engine overhauls and shall include payment by Debtor of an hourly usage rate for each operating hour, (iii) perform all of its obligations under such Maintenance Program contract, including keeping such Maintenance Program contract current and fully paid in accordance with the terms of such contract, and otherwise keep such Maintenance Program contract in full force and effect as against the Maintenance Program provider, free and clear of all Liens (other than Permitted Liens), and (iv) shall provide, upon demand, Secured Party with documentation evidencing the current Maintenance Program contract and an aircraft interest holder document evidencing such Maintenance Program provider's acknowledgement of Secured Party's security interest in and to the Aircraft and the Maintenance Program contract.

4.  **Further Assurances.** Debtor will promptly, upon Secured Party's request and at Debtor's sole cost and expense, execute, or otherwise authenticate, any document, record or instrument necessary or reasonably advisable for filing, recording, protecting or perfecting the interest of Secured Party in the Aircraft or otherwise created hereby or by the other Debt Documents (including UCC, FAA, Cape Town Convention or other applicable filings and filings to evidence corrections, amendments, terminations and acknowledgments of assignment), and will take such other further action as Secured Party may reasonably request in order to carry out more effectively the intent and purposes of this Agreement and the other Debt Documents and to establish and protect Secured Party's rights and remedies under this Agreement, the other Debt Documents, or otherwise with respect to the Aircraft.  In addition, Debtor hereby expressly authorizes each of Secured Party, Secured Party's designated FAA escrow agent (which may be FAA counsel) and Debtor's "professional user entity" to file a UCC-1 financing statement, the FAA Bill of Sale, AC Form 8050-1 Aircraft Registration Form, the AC Form 8050-135 FAA Entry Point Filing Form and any other documents evidencing Debtor's ownership of the Aircraft (including the "contract of sale" interest (as applicable)) and the "international interests" (as defined under the Cape Town Convention) and any other interests created by this Agreement and the other Debt Documents in favor of Secured Party, in each case describing the Aircraft and containing any other information required by or reasonably advisable under the applicable Uniform Commercial Code, FARs, Cape Town Convention and any other applicable law, treaty or regulation.  At the request of Secured Party following any expiration or termination of this Agreement and the other Debt Documents, Debtor shall, at Debtor's sole cost and expense, execute and deliver to Secured Party, for filing with the FAA and/or the International Registry, as applicable, such documents as Secured Party shall require to evidence and confirm the expiration or termination of this Agreement and the release of the Aircraft from the terms and conditions hereof, and if Debtor fails for any reason to execute and deliver such documents to Secured Party, Debtor hereby irrevocably consents to and authorizes Secured Party to sign Debtor's name to such documents and to file (and/or instruct Debtor's "professional user entity" to file) such documents with the FAA and/or the International Registry, as applicable. Debtor hereby ratifies its prior authorization for Secured Party to make filings (including financing statements) and amendments thereto describing the Aircraft and containing any other information required by any applicable law (including without limitation the Uniform Commercial Code) if filed prior to the date hereof. Other than as expressly provided herein, Debtor shall not file any filings (including any corrective, amendment or termination filings) or financing statements relating to the Aircraft or the interests created hereby, without Secured Party's prior written consent.

5.  **Use, Operation, Maintenance, Repair, Storage and Registration.** Debtor shall use, operate, maintain, store and repair the Aircraft and retain actual and operational control and possession thereof in compliance with the following provisions:

(a)  Debtor shall use, operate, maintain and store the Aircraft, and every part thereof, properly, carefully and in compliance with all applicable statutes, ordinances and regulations of all jurisdictions in which the Aircraft is operated or used, as well as all applicable insurance policies, manufacturer's recommendations and operating and maintenance manuals. Debtor shall use the Aircraft predominantly for business purposes and only for the purposes and in the manner set forth in the application for insurance executed at the time of negotiating the purchase of the Aircraft.  At all times during the term of this Agreement, Debtor shall not operate or locate the Aircraft, or suffer or permit the Aircraft to be operated, located, or otherwise permitted to go into or over (i) any country or jurisdiction that does not maintain full diplomatic relations with the United States, (ii) any geographic area which is not covered by the insurance policies required by this Agreement, or (iii) any jurisdiction or nation wherein the operation or location thereof would violate any applicable law, regulation, or restriction, including, but not limited to, the U.S. Export Administration Regulations and the U.S. International Traffic in Arms Regulation. Notwithstanding the foregoing, in no event shall the Aircraft be located or operated outside of the continent of North America and the Caribbean. The engines identified in Section 1 of this Agreement shall be used only on the airframe described in that Section and shall only be removed for maintenance in accordance with the provisions of this Agreement. Debtor shall not, and shall not attempt to, sell all or any fractional interest in, assign, mortgage, grant a Lien in, transfer or encumber or dispose of the Aircraft, or any interest herein or therein, or any part thereof, without the prior written consent of Secured Party. Debtor shall not, and shall not attempt to, lease, charter, enter into any pooling or interchange agreements, rent, or grant any time-shares with respect to or otherwise deliver possession of (except for maintenance purposes) the Aircraft, without Secured Party's prior written consent (such consent not to be unreasonably withheld) and without making all filings and registrations with the International Registry deemed necessary or advisable by Secured Party to protect its interest herein and in the Aircraft.

(b)  The Aircraft will be operated at all times by a currently certificated pilot having the minimum total pilot hours and minimum pilot-in-command hours required by FAA rules or regulations or as required by applicable insurance policies, whichever requirements are stricter.  Debtor shall be responsible for and pay for all expenses of owning and operating the Aircraft, including but not limited to storage, fuel, lubricants, service, inspections, overhauls, replacements, maintenance and repairs, all in compliance with the manufacturer's operating and maintenance manuals and with FAA rules and regulations.  Debtor shall properly maintain all records and other materials pertaining to the maintenance and operation of the Aircraft, including but not limited to those required by applicable law, rule or regulation and by the manufacturer for the enforcement of any warranty.

(c)   The Aircraft is and shall at all times be maintained by Debtor at its expense in good repair in the configuration and condition existing on the date hereof, and in airworthy condition necessary for all aircraft licenses under the laws, ordinances, rules and regulations of all jurisdictions in which the Aircraft will at any time be operated.  Debtor shall ensure timely compliance with all applicable mandatory Service Bulletins, Service Letters, Manufacturer's Directives and Airworthiness Directives.  Debtor shall submit written evidence of such maintenance and condition to Secured Party upon its written request from time to time.  Debtor shall use reasonable care to prevent the Aircraft from being damaged or injured, and shall promptly replace any part or component of the Aircraft which may be damaged, worn out, lost, destroyed, confiscated or otherwise rendered unsatisfactory or unavailable for use in or upon the Aircraft.

(d)   The Aircraft shall at all times have the same utility and quality as that which it originally had.  Debtor shall at its expense timely make any alterations or modifications to the Aircraft that may at any time during the term of this Agreement be required to maintain the Aircraft in the condition required by this Agreement.  Debtor shall in no way alter, attempt to alter or otherwise change the identity or appearance of the Aircraft, including but not limited to the "N" number, exterior paint and symbols, without the express prior written consent of Secured Party.

(e)   The international interest created by this Agreement in the Aircraft pursuant to the provisions of the Cape Town Convention shall be registered with the International Registry, and Debtor hereby consents to such registration and authorizes Secured Party to effect all such registrations with the International Registry.  No international interest created in favor of Secured Party shall be discharged without the prior written consent of Secured Party.

6.   Indemnification and Insurance.

(a)   Debtor shall indemnify and save Secured Party and its affiliates and all of Secured Party's and such affiliates' respective directors, shareholders, officers, employees, agents, predecessors, attorneys-in-fact, lawyers, successors and assigns (each an "Indemnitee") on a net after-tax basis harmless from and against all claims, costs, expenses (including legal fees), demands, suits, damages and liabilities of any kind and nature whatsoever, including without limitation personal injury, death and property damage claims arising in tort or otherwise, under any legal theory including but not limited to strict liability (including Claims involving or alleging environmental damage, criminal acts, hijacking, acts of terrorism or similar acts, product liability or strict or absolute liability in tort, latent and other defects (whether or not discoverable), for patent, trademark or copyright infringement)(collectively, "Claims") that may be imposed on, incurred by or asserted against any Indemnitee whether or not such Indemnitee shall also be indemnified as to any such Claim by any other Person in any way relating to, arising out of or in connection with (a) the Debt Documents, including, without limitation, the execution, delivery, breach (including any Event of Default), enforcement, performance or administration of the Debt Documents and (b) the Aircraft, including, without limitation, the perfection, maintenance, protection, deregistration or realization upon the Aircraft or any other security for the Obligations, and the manufacture, inspection, construction, purchase, acceptance, rejection, ownership, management, pooling, interchange, chartering, titling or re-titling, delivery, lease, sublease, possession, use, operation, maintenance, condition, registration or re-registration, sale, removal, repossession, storage or other disposition of the Aircraft or any part thereof or any accident in connection therewith.  Notwithstanding the foregoing, Debtor shall not be required to indemnify an Indemnitee for any Claim caused solely and directly by the gross negligence or willful misconduct of such Indemnitee.

(b)   Debtor shall at all times bear all risk of loss, damage, destruction or confiscation of or to the Aircraft.  Debtor shall secure and maintain in effect, at its own expense and at all times, insurance against such hazards and for such risks as Secured Party may require.  Without limiting the generality of the foregoing, Debtor shall secure and maintain: (i) all-risk aircraft hull and engine insurance (including, without limitation, with respect to engine or part thereof while removed from the Aircraft and foreign object damage insurance) in an amount which is not less than the principal amount of the Obligations evidenced by the Debt Documents; and (ii) confiscation, expropriation and war risk and allied perils (including, without limitation, terrorism) insurance and hijacking insurance in an amount which is, for physical damage, not less than the principal amount of the Obligations evidenced by the Debt Documents for any single occurrence.  All such policies shall include standard loss payable clause and breach of warranty endorsement in favor of Secured Party and shall be under such forms and upon such terms, for such periods and with such companies or underwriters as Secured Party may approve, losses or refunds in all cases to be first payable to Secured Party or its assigns, as its interest may appear.  Notwithstanding any provision of this Agreement to the contrary, failure to obtain Secured Party's approval of any insurer or policy shall not excuse Debtor from its obligation to maintain insurance coverage.  All insurance policies shall provide for at least 30 days prior written notice to Secured Party of any cancellation or material modification, shall contain a severability of interest clause providing that such policy shall operate in the same manner as if a separate policy covered each Insured, shall waive any right of set-off against Debtor or Secured Party, shall waive any right of subrogation against Secured Party and shall be primary and not subject to any offset by any other insurance carried by Debtor or Secured Party.  Debtor shall pay any deductible portion of such insurance and any expense incurred in collecting insurance proceeds.  Debtor shall furnish to Secured Party copies of all insurance policies required by this paragraph.  Debtor hereby assigns to Secured Party the proceeds of all such insurance (including any refund of premium) to the extent of the Obligations secured hereby, directs the insurer to pay any losses or refunds due Debtor directly to Secured Party, and appoints Secured Party as attorney-in-fact to make proof of loss and claim for all insurance and refunds thereupon and to endorse all documents, contracts drafts, checks or forms of payment of insurance or premiums.  Secured Party may at its option apply insurance proceeds, in whole or in part, to (i) repair or replace the Aircraft or any part thereof or (ii) satisfy any of Debtor's Obligations to Secured Party.  Any surplus proceeds shall be paid to Debtor.

7.   Debtor's Possession.  Until default, Debtor may possess the Aircraft and use it in any lawful manner not inconsistent with this Agreement.  Debtor shall at all times keep the Aircraft and any proceeds therefrom separate and distinct from other property of Debtor and shall keep accurate and complete records of the Aircraft and all such proceeds.  Secured Party may examine and inspect the Aircraft, wherever located, at any reasonable time, on land and in flight.

ASA-N3SA

8. **Default.** Debtor shall be in default under this Agreement and each of the other Debt Documents upon the occurrence of any of the following "Events of Default":

(a). Debtor fails to pay within 10 days after its due date any installment or other amount due under any of the Debt Documents;

(b) Debtor fails to maintain at all times insurance coverage as required by paragraph 6(b) of this Agreement;

(c) Debtor sells all or any fractional interest in, rents, leases, charters, mortgages, assigns, enters into any pooling or interchange agreements, grants a Lien in or grants any time-shares with respect to or otherwise delivers possession of, transfers or encumbers the Aircraft (or any part thereof) or attempts to do any of the foregoing in each case in violation of the terms hereof or Debtor's filing of any Lien with the International Registry or the FAA or any financing statement (including any amendment or termination of any of the foregoing) without the prior written consent of Secured Party or any failure by Debtor to remove any Lien as required by the terms hereof;

(d) Debtor or any guarantor or surety for the Obligations (any such person, a "Guarantor") breaches any of its Obligations under any Debt Document (other than those described by Section 8(a) through (c)) and fails to cure such breach within 30 days after Secured Party written notice thereof;

(e) Any warranty, representation or statement made by Debtor or any Guarantor in any of the Debt Documents or otherwise in connection with any of the Obligations is false or misleading in any material respect;

(f) Debtor or any Guarantor becomes insolvent or ceases to do business as a going concern or if Debtor or any Guarantor is a natural person, any death, incapacity or incompetency of Debtor or any Guarantor or any indictment of Debtor or Guarantor on felony charges;

(g) The Aircraft or any other property of Debtor or any Guarantor is confiscated, sequestered, seized or levied upon;

(h) The Aircraft or any engine is lost, damaged, stolen, secreted, abused, illegally used, misused, rendered inaccessible (geographically or otherwise) or destroyed, unless with respect to the engine Debtor replaces same with an engine of the same make, model and fair market value as confirmed by independent appraisal within 60 days of the date the engine is lost, damaged, stolen, secreted, abused, illegally used, misused, rendered inaccessible (geographically or otherwise) or destroyed;

(i) Any part of the Aircraft (which would cost more than the lesser of (i) ten percent (10%) of the original loan balance or (ii) $250,000 to repair or replace) is damaged, lost, stolen or destroyed, unless such part is replaced or repaired in a good, workmanlike manner within 60 days of the date that such part is damaged, lost, stolen or destroyed and the fair market value of the Aircraft (as confirmed by an independent appraisal) has been restored to the fair market value of the Aircraft prior to such damage, loss, theft or destruction (assuming the Aircraft had been maintained in accordance with the provisions herein) ;

(j) Debtor or any Guarantor is declared in default under any contract or obligation (including, without limitation, any lease or loan) requiring the payment of money in an original principal amount greater than $50,000;

(k) The occurrence of any default under any other agreement (including, without limitation, any lease or loan) between Debtor, any Guarantor and/or any parent entities, subsidiaries or affiliates (on the one hand) and Secured Party (or any of its affiliates, subsidiaries or parent entities)(on the other hand);

(l) Debtor or any Guarantor makes an assignment for the benefit of creditors, applies to or petitions any tribunal for the appointment of a custodian, receiver or trustee for itself or for any substantial part of its property, or commences any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, or if any such petition or application is filed or any such proceeding is commenced against Debtor or any Guarantor, and such petition, application or proceeding is not dismissed within 30 days, or Debtor or any such Guarantor by any act or omission shall indicate its consent to, approval of or acquiescence in any such petition, application, proceeding, order for relief or such appointment of a custodian, receiver or trustee;

(m) Debtor or any Guarantor conceals or removes, or permits to be concealed or removed, any part of its assets, so as to hinder, delay or defraud any of its creditors, or makes or suffers a transfer of any of its assets which would be fraudulent under any bankruptcy, insolvency, fraudulent conveyance or similar law or makes any transfer of its assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or suffers or permits, while insolvent, any creditor to obtain a lien upon any of Debtor's or any Guarantor's property through legal proceedings or distraint, or if a tax lien is filed against Debtor or any Guarantor;

(n) Any Guarantor revokes or attempts to revoke its guaranty of any of the Obligations or fails to observe or perform any covenant, condition or agreement to be performed under any guaranty or other related document to which it is a party or the Guaranty ceases to be enforceable in accordance with its terms;

(o) The occurrence of any merger or consolidation involving Debtor or any Guarantor, any sale by Debtor or such Guarantor of all or substantially all of its assets or any change in control has occurred with respect to Debtor or any Guarantor.

(p) Debtor breaches any of its obligations in Section 3(a) hereof.

9. **Remedies of Secured Party:**

(a) Upon the occurrence of any Event of Default under this Agreement, Secured Party, at its option, may declare any or all of the Obligations, including but not limited to the Note, to be immediately due and payable, without demand or notice to Debtor or any Guarantor. The Obligations and liabilities accelerated thereby shall bear interest from the Event of Default (both before and after any judgment) until paid in full at a per annum rate equal to the lower of eighteen percent (18%) or the maximum rate not prohibited by applicable law (the "Per Diem Interest Rate"). The application of such Per Diem Interest Rate shall not be interpreted or deemed to extend any cure period set forth herein, cure any default or otherwise limit Secured Party's right or remedies hereunder. Notwithstanding anything to the contrary contained herein, in no event shall this Agreement require the payment or permit the collection of amounts in excess of the maximum permitted by applicable law.

(b) Upon the occurrence of any Event of Default, Secured Party shall additionally have all of the rights and remedies of a secured party under the Uniform Commercial Code, the Cape Town Convention and under any other applicable law. Without limiting the foregoing and without notice or demand, Secured Party shall have the right at its option to immediately exercise one or more of the following remedies: (i) refuse to extend any further credit to Debtor, any Guarantor or any of their parent entities, subsidiaries and affiliates; (ii) terminate this Agreement immediately without notice; (iii) take immediate and exclusive possession of the Aircraft, wherever it may be found; (iv) enter any premises of Debtor, any Guarantor or any of their parent entities, subsidiaries and affiliates, with or without process of law, wherever the Aircraft may be or Secured Party reasonably believes it to be, and search for it, and if the Aircraft or any part of it is found, to take possession of and remove it; (v) sell, lease and otherwise dispose of the Aircraft or any part of it, at public auction or private sale, for cash or on credit, as Secured Party may elect at its option and Secured Party shall have the right to bid and become the purchaser at any such sale, or keep the Aircraft idle; (vi) direct Debtor to assemble all parts and components of the Aircraft and deliver it to Secured Party, at Debtor's expense, at a place designated by Secured Party which is reasonably convenient to Secured Party; (vii) hold, appropriate, apply or set-off any and all moneys, credits and indebtedness due from Secured Party, its affiliates, parents or subsidiaries, to Debtor, any Guarantor or any of their parent entities, subsidiaries and affiliates; (viii) exercise any rights it may have against any security deposit or other collateral pledged to it by Debtor, any Guarantor or any of their affiliates, subsidiaries or parent entities and/or (ix) exercise any rights or remedies it may have under applicable law, including any rights to procure export and physical transfer of the Aircraft from the territory in which it is situated or de-register the Aircraft (pursuant to an IDERA or otherwise) and any rights to obtain from any court speedy relief pending final determination available at law (including possession, control, custody, or immobilization of the Aircraft or requiring Debtor to preserve the Aircraft or its fair market value. Upon exercise of Secured Party's dispossessory remedies hereunder or under applicable law, Debtor hereby agrees that ownership of the Aircraft shall vest in Secured Party.

(c) Debtor shall pay all actual costs incurred by Secured Party in collecting any of the Obligations owed Secured Party by Debtor and enforcing any Obligations of Debtor to Secured Party, including but not limited to actual attorneys' fees and legal expenses.

(d) Notwithstanding the availability of any other remedy and in addition thereto, if Debtor fails to perform any of its Obligations hereunder or under any of the Debt Documents, Secured Party may perform the same, but shall not be obligated to do so, for the account of Debtor, and Debtor shall immediately repay to Secured Party on demand any amounts paid or incurred by Secured Party in such performance together with interest thereon accrued from the date paid or incurred by Secured Party until repaid in full by Debtor at the lesser of one and one half percent (1 1/2%) per month and the maximum interest rate permitted by applicable law to be charged Debtor by Secured Party.

(e) Notwithstanding any other provision hereof to the contrary, any notice required to be given by law or pursuant to this Agreement with respect to disposition of the Aircraft or any part of it shall be deemed reasonably and properly given if mailed by first class United States Mail, postage prepaid, by prepaid express mail service (private or government) or by hand delivery to Debtor at its last known address, at least ten (10) days before the disposition of the subject matter of such notification.

(f) Secured Party shall have the right to apply any amounts collected pursuant to this Section 9 or under the Guaranty in the following order of priorities: (i) to pay all of Secured Party's costs, charges and expenses incurred in enforcing its rights under this Agreement and any of the Debt Documents or in taking, removing, holding, repairing, refurbishing, selling, leasing or otherwise disposing of the Aircraft; then, (ii) to pay any and all late fees, per diem fees, other such charges due hereunder or under the Debt Documents, any and all interest due hereunder and all amounts owing pursuant to any indemnity claims; then (iii) to pay all principal due hereunder or under the Debt Documents; then (iv) to pay all other amounts due and owing to Secured Party (or any of its affiliates, subsidiaries or parent entities) under any of the Debt Documents or under any other agreement between Debtor, any Guarantor and/or any parent entities, subsidiaries or affiliates (on the one hand) and Secured Party (or any of its affiliates, subsidiaries or parent entities)(on the other hand). Secured Party shall have the right to any proceeds of sale, lease or other disposition of the Aircraft, if any, and shall have the right to apply same in the following order of priorities: (i) to pay all of Secured Party's costs, charges and expenses incurred in enforcing its rights under this Agreement and any of the Debt Documents or in taking, removing, holding, repairing, refurbishing, selling, leasing or otherwise disposing of the Aircraft; then, (ii) to pay any and all late fees, per diem fees, other such charges due hereunder or under the Debt Documents, any and all interest due hereunder and any amounts owing pursuant to any indemnity claims; then (iii) to pay all principal due hereunder or under the Debt Documents; then (iv) to pay all other amounts due and owing to Secured Party under any of the Debt Documents or under any other agreement between Debtor, any Guarantor and/or any parent entities, subsidiaries or affiliates (on the one hand) and Secured Party (or any of its affiliates, subsidiaries or parent entities)(on the other hand); then (v) any surplus shall be refunded to Debtor. Debtor shall pay any deficiency in (i), (ii), (iii) and (iv) of each of the foregoing sentences immediately upon demand.

(g) The foregoing remedies shall not be exclusive or alternative but shall be cumulative and in addition to all other remedies in favor of Secured Party existing at law, in equity or under any applicable statute or international treaty, convention or protocol.

10. Principals and Waivers. All signers and endorsers hereof are to be regarded as principals, jointly and severally. Every maker, endorser and Guarantor hereof hereby waives presentment, notice, protest and impairment of collateral, and consents to all extensions, deferrals, partial payments and refinancings hereof before or after maturity. No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion.

11. Reports.

(a) Debtor shall promptly notify Secured Party (i) at least 30 days' prior to any change in Debtor's name or in the state of its incorporation or registration or its "contracting state" (for purposes of the Cape Town Convention), (ii) at least 30 days' prior to any change in the "location" of Debtor for purposes of the

Uniform Commercial Code, (iii) at least 30 days' prior to any permanent or indefinite relocation of the Aircraft or its home airport, (iv) immediately upon the Aircraft being lost, stolen, missing, confiscated, appropriated, seized, sequestered, destroyed or materially damaged, (v) immediately upon any accident involving the Aircraft or (vi) immediately upon Debtor becoming aware of any Lien attaching or being made against the Aircraft (other than Liens in favor of Secured Party). Such notice shall contain all pertinent details of the event being reported, and shall be supplemented promptly upon Secured Party's request.

(b) Debtor agrees to furnish its annual financial statements and such interim statements as Secured Party may require in form satisfactory to Secured Party. Any and all financial statements submitted and to be submitted to Secured Party have and will have been prepared on a basis of generally accepted accounting principles consistently applied, and are and will be complete and correct and fairly present Debtor's financial condition as at the date thereof. Secured Party may at any reasonable time examine Debtor's books and records and make copies thereof.

12. **Conditions Precedent.** Secured Party shall have no obligation to make the loans contemplated by the Debt Documents unless and until Secured Party shall have received each of the following: (i) an original of this Agreement, the Note and any other Debt Documents duly executed and delivered by Debtor, (ii) evidence satisfactory to Secured Party that Debtor shall have received good and legal title to the Aircraft; (iii) copies of insurance policies or, at Secured Party's option, such other evidence of insurance which complies with the requirements of Section 6 above, (iv) evidence that the Aircraft has been properly registered at the Federal Aviation Administration ("FAA") and the FAA has assigned an N number to the Aircraft; (v) evidence that the Aircraft has been duly certified as to type and airworthiness by the FAA; (vi) evidence that Secured Party's designated FAA escrow agent (which may be Secured Party's FAA counsel) has received in escrow if the transaction contemplated hereby includes the acquisition of the Aircraft by Debtor, a bill of sale sufficient to transfer title to the Aircraft to Debtor and Debtor's AC Form 8050-1 Aircraft Registration Form (except for the pink copy which shall be available to be placed on the Aircraft upon acceptance thereof), and an executed 'duplicate original of this Agreement all in proper form for filing with the FAA; (vii) resolution of Debtor authorizing this Agreement and the Debt Documents in form acceptable to Secured Party; (viii) a completed inspection, appraisal and/or survey with respect to the Aircraft acceptable to Secured Party in its sole discretion; and (ix) such other documents, certificates or reports as Secured Party may reasonably request. Secured Party's obligation to make the loans contemplated by the Debt Documents is further conditioned upon filing of this Agreement and all other necessary documents with, and the acceptance thereof by, the FAA and receipt by Secured Party of: (a) an AC Form 8050-135 FAA Entry Point Filing Form International Registry for filing with the FAA and the International Registry and any other form or forms prescribed by the International Registry or the FAA; (b) evidence that Debtor and (if this transaction is an acquisition) Supplier are registered "transacting user entities" with the International Registry, have each appointed a "professional user entity" satisfactory to Secured Party, have filed all necessary documentation and paid all required user fees to enable Secured Party to register its "International Interests" created hereby as against Debtor and Debtor to register its "contract of sale" interest against Supplier; (c) a "priority search certificate" (as such term is used in the procedures of the International Registry) from the International Registry indicating that no international interests with respect to the Aircraft are currently registered therein and indicating that no one other than Debtor (or if this transaction is an acquisition, Supplier) is the owner thereof; (d) evidence that any and all filings required or advisable to protect or perfect Secured Party's "international interests" created by this Agreement and any other interests created pursuant to the other Debt Documents are filed with the International Registry and, if this transaction is an acquisition, evidence that any and all filings required or advisable to protect or perfect Debtor's contract of sale interest created by any bill of sale in favor of Debtor are filed with the International Registry; and (e) confirmation satisfactory to Secured Party that each of Debtor and, if applicable, Supplier have consented to the registration of such interests at the International Registry.

13. **Miscellaneous:**

(a) This Agreement, the Note and/or any of the other Debt Documents may be assigned, in whole or in part, by Secured Party without notice to Debtor and Debtor hereby consents to any and all such assignments (for all purposes, including for purposes of the Cape Town Convention). Debtor hereby waives and agrees not to assert against any assignee any defense, counterclaim, right of set-off or cross-complaint Debtor may have against Secured Party for any reason whatsoever, agreeing that Secured Party shall be solely responsible therefor and waives any and all right it might have under applicable law to any prior notice thereof. Debtor agrees that if Debtor receives written notice of an assignment from Secured Party, Debtor will pay all amounts payable under this Agreement or any Debt Document to such assignee or as instructed by Secured Party. Debtor also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee and shall cooperate with Secured Party and any such assignee in delivering to such assignee a certificate of insurance reflecting assignee as loss payee and additional insured and in issuing a new IDERA in favor of such assignee.

(b) All notices to be given in connection with this Agreement and the Debt Documents shall be in writing in English, shall be addressed to the parties at their respective addresses set forth hereinabove (unless and until a different address may be specified in a written notice to the other party), and shall be deemed given (i) on the date of receipt if delivered in hand or by facsimile transmission, (ii) on the next business day after being sent by express mail (government or private), and (iii) on the fourth business day after being sent by regular, registered or certified mail. As used herein, "business day" means any day other than a Saturday, a Sunday, or other day on which commercial banks in New York, New York are required or authorized to be closed.

(c) Secured Party may correct patent errors herein and fill in all blanks herein or in the Debt Documents consistent with the agreement of the parties.

(d) Time is of the essence hereof. This Agreement and the Debt Documents shall be binding, jointly and severally, upon all parties described as the "Debtor" and their respective heirs, executors, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns.

(e) The unenforceability of any provision hereof or of the Debt Documents shall not affect the validity of any other provision hereof or thereof.

(f) Debtor hereby acknowledges and agrees that Secured Party reserves the right to impose fees or charges for returned checks and certain optional services that Secured Party may offer or provide to Debtor during the term of this Agreement. Secured Party will notify Debtor the amount of the applicable fee

ASA-N3SA

or charge if Debtor requests such optional services. In addition, Secured Party may make available to Debtor a schedule of fees or charges for such optional services from time to time or upon demand, provided, however, that such fees and charges are subject to change in Secured Party's sole discretion without notice to Debtor.

(g)    This Agreement and the Debt Documents constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior understandings (whether written, oral or implied) with respect thereto, except representations made by Debtor to Secured Party.  THIS AGREEMENT AND THE DEBT DOCUMENTS SHALL NOT BE CHANGED OR TERMINATED, NOR SHALL ANY WAIVER BE GIVEN, ORALLY OR BY COURSE OF CONDUCT, BUT ONLY BY A WRITING SIGNED BY BOTH PARTIES HERETO.  Section headings in this Agreement are for convenience only, and shall not affect the construction or interpretation hereof.

(h)    DEBTOR HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE DEBT DOCUMENTS, ANY DEALINGS BETWEEN DEBTOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN DEBTOR AND SECURED PARTY.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS).  THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(i)    This Agreement shall continue in full force and effect until all of the Obligations have been indefeasibly paid in full to Secured Party.  This Agreement shall automatically be reinstated in the event that Secured Party is ever required to return or restore the payment of all or any portion of the Obligations (all as though such payment had never been made).

(j)    THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE AIRCRAFT.  DEBTOR IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH (COLLECTIVELY, THE "PROCEEDINGS"), AND DEBTOR FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS).  DEBTOR IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE.  DEBTOR ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO SECURED PARTY WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, DEBTOR AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH SECURED PARTY MAY BE ENTITLED AT LAW OR IN EQUITY, SECURED PARTY WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT.  Notwithstanding the foregoing, each of Debtor and Secured Party shall have the right to apply to a court of competent jurisdiction in the United States or abroad for equitable relief as is necessary to preserve, protect and enforce their rights under this Agreement, including but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Debtor, any Guarantor or the Aircraft or to gain possession of the Aircraft.

(k)    This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and either of the parties hereto may execute this Agreement by signing any such counterpart.

(l)    Debtor hereby expressly waives the provisions of Articles 11(2) and 13(2) of the Convention and Article IX(6) of the Protocol.

(m)    Through its normal marketing and business development activities as is customary in the industry, Secured Party or its affiliates may provide brokers with business entertainment or other incentives or benefits.  If Debtor is working with a broker in connection with the transactions contemplated by this Agreement, Debtor is encouraged to discuss this with Debtor's broker.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Debtor has executed and delivered this Agreement as of the date first above written.

DEBTOR:

FM Aviation II, LLC
By its Member

By _____

Name: Frank Mongelluzzi

Title: Member

# EXHIBIT D

# PROMISSORY NOTE

## November 23, 2009
### (Date)

FOR VALUE RECEIVED, FM Aviation II, LLC, a limited liability company located at the address stated below ("Maker") promises, jointly and severally if more than one, to pay to the order of VFS Financing, Inc. or any subsequent holder hereof (each, a "Payee") at its office located at 10 Riverview Drive, Danbury, CT 06810-6268 or at such other place as Payee may designate as follows:

(a) the principal sum of Nine Million Three Hundred Thousand and 00/100 Dollars ($9,300,000.00), and

(b) interest on the unpaid principal balance from the date hereof through and including the dates of payment, at a fixed, simple interest rate of Six and 10/100 percent (6.10%) per annum (the "Contract Rate") in One Hundred and Twenty (120) consecutive monthly installments of principal and interest as follows:

| Periodic Installment | Amount |
| --- | --- |
| 1 through 3 | $47,275.00 (Interest Only) |
| 117 | $83,680.96 (Principal and Interest) |

*final installment includes a balloon payment of $3,500,000.00

(each, a "Periodic Installment") and a final installment which shall be in the amount of the total outstanding and unpaid principal, accrued interest and any and all amounts due hereunder and under the other Debt Documents (as defined below). The first Periodic Installment shall be due and payable at the Contract Rate on the unpaid principal balance from the date hereof through and including November 30, 2009 shall be due and payable on January 1, 2010 and the following Periodic Installments and the final installment shall be due and payable on the same day of each succeeding period (each, a "Payment Date"). All payments shall be applied: first, to interest due and unpaid hereunder and under the other Debt Documents; second, to all other amounts due and unpaid hereunder and under the other Debt Documents, and then to principal due hereunder and under the other Debt Documents. The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time. Interest shall be calculated on the basis of a 365-day year (or a 366-day leap year, as applicable) and will be charged at the Contract Rate for each calendar day on which any principal is outstanding. The payment of any Periodic Installment after its due date shall result in a corresponding decrease in the portion of the Periodic Installment credited to the remaining unpaid principal balance.

All amounts due hereunder and under the other Debt Documents are payable in the lawful currency of the United States of America. Maker hereby expressly authorizes Payee to insert the date value is actually given in the blank space on the face hereof and on all related documents pertaining hereto.

This Note may be secured by a security agreement, chattel mortgage, pledge agreement or like instrument (each of which is hereinafter called a "Security Agreement", and collectively with any other document or agreement related thereto or to this Note, the "Debt Documents").

Time is of the essence hereof. If Payee does not receive from Maker payment in full of any Periodic Installment or any other sum due under this Note or any other Debt Document is not received within ten (10) days after its due date, Maker agrees to pay a late fee equal to five percent (5%) on such late Periodic Installment or other sum, but not exceeding any lawful maximum. Such late fee will be immediately due and payable, and is in addition to any other costs, fees and expenses that Maker may owe as a result of such late payment. Additionally, if an Event of Default or default (as such terms are defined and/or used in the Security Agreement) has occurred, then the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sum payable under this Note or any other Debt Document, at the election of Payee, shall immediately become due and payable, with interest thereon at the lesser of eighteen percent (18%) per annum or the highest rate not prohibited by applicable law from the date of such accelerated maturity until paid (both before and after any judgment). The application of such 18% interest rate shall not be interpreted or deemed to extend any cure period set forth in this Note or any other Debt Document, cure any default or otherwise limit Payee's right or remedies hereunder or under any Debt Document.

Maker may prepay in full, but not in part, all outstanding amounts hereunder before they are due on any scheduled Payment Date upon at least thirty (30) days prior written notice to Payee. Payee is authorized and entitled to apply any amounts paid by Maker as a prepayment of indebtedness to delinquent interest or other amounts due and owing from Maker to Payee hereunder and any other Debt Documents before application of such funds to principal outstanding hereunder.

If Maker makes a prepayment of this Note for any reason, Maker shall pay irrevocably and in full to Payee (i) all outstanding principal amounts, (ii) all accrued interest, (iii) the Make Whole Amount (as defined below), (iv) the Prepayment Fee (as defined below) and (v) any and all other amounts due hereunder or under the other Debt Documents. Maker specifically acknowledges that, to the fullest extent allowed by applicable law, it shall be liable for the Make Whole Amount and the Prepayment Fee on any acceleration hereof or under the other Debt Documents. In the event of an acceleration hereof or under the other Debt Documents, the Make Whole Amount and the Prepayment Fee shall be determined as if (a) Maker prepaid this Note in full immediately before such acceleration and (b) the prepayment notice referred to above was received by Payee thirty (30) days prior to such date.

For purposes hereof, the term "Prepayment Fee" means an amount equal to an additional sum equal to the following percentage of original principal balance for prepayments occurring in the indicated period: 2% (for prepayments occurring prior to the first anniversary of the date hereof), 1% (for prepayments occurring after the first anniversary of the date hereof but prior to the second anniversary of the date hereof) and 0% (for prepayments occurring any time after the second anniversary of the date hereof). For the purposes hereof, the term "Make Whole Amount" means (i) the net present value of the remaining scheduled principal and interest payments (including any balloon or other amount of principal payable that but for the prepayment of this Note would be payable on or prior to the scheduled maturity date hereof), discounted to the prepayment date at a per annum interest rate equal to the then Reinvestment Rate (as defined below) minus (ii) the principal balance outstanding as of the prepayment date (immediately prior to any such prepayment); provided, that the Make Whole Amount shall be deemed zero if the calculation results in a negative number. For purposes hereof, the term "Reinvestment Rate" means the per annum interest rate that is equal to the sum of (a) Three and 54/100 percent (3.54%) plus (b) an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the remaining term of this Note as published by the Federal Reserve Board in the Federal Reserve Statistical Release H.15 entitled "Selected Interest Rates" available at http://www.federalreserve.gov/releases/h15/update/ on the day Payee receives the prepayment notice. If the remaining term of this Note is not in full years, then the Swap Rate to be adopted from Federal Reserve Statistical Release H.15 shall correspond to a full number-of-years period, excluding partial years of such remaining term.

It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Note or any other Debt Document, in no event shall this Note or any other Debt Document require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under this Note or any other Debt Document, or if all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Note or any other Debt Document on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event: (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof. It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Note or any Debt Document which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for Payee to receive a greater interest per annum rate than is presently allowed, Maker agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum hereunder shall be increased to the maximum interest per annum rate allowed by the amended state law or the law of the United States of America.

Maker hereby consents to any and all extensions of time, renewals, waivers or modifications of, and all substitutions or releases of, security or of any party primarily or secondarily liable on this Note or any other Debt Document or any term and provision of either, which may be made, granted or consented to by Payee, and agrees that suit may be brought and maintained against Maker and/or any and all sureties, endorsers, guarantors or any others who may at any time become liable for payments and performance under this Note and any other Debt Documents (each such person, other than Maker, an "Obligor"), at the election of Payee without joinder of any other as a party thereto, and that Payee shall not be required first to foreclose, proceed against, or exhaust any security hereof in order to enforce payment of this Note. Maker hereby waives presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, and all other notices in connection herewith, as well as filing of suit (if permitted by law) and diligence in collecting this Note or enforcing any of the security hereof, and agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual attorneys' fees.

THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

MAKER IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH

MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE DEBT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND MAKER FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). MAKER IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. MAKER ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO PAYEE WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, MAKER AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH PAYEE MAY BE ENTITLED AT LAW OR IN EQUITY, PAYEE WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, each of Maker and Payee shall have the right to apply to a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce its respective rights under this Note and any other Debt Document, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Maker, any Obligor or the collateral pledged to Payee pursuant to any Debt Document or to gain possession of such collateral. MAKER HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS NOTE, ANY DEBT DOCUMENTS, ANY DEALINGS BETWEEN MAKER AND PAYEE RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN MAKER AND PAYEE. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.) THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE, ANY DEBT DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS NOTE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

This Note and the other Debt Documents constitute the entire agreement of Maker and Payee with respect to the subject matter hereof and supersede all prior understandings, agreements and representations, express or implied.

No variation or modification of this Note, or any waiver of any of its provisions or conditions, shall be valid unless in writing and signed by an authorized representative of Maker and Payee. Any such waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.

Any provision in this Note or any of the other Debt Documents which is in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

FM Aviation II, LLC
By its Member

By: _____

Name: Frank Mongelluzzo

Title: Member


3040 Gulf to Bay Blvd, Clearwater, FL 33759

Federal Tax ID #: 27-1337633

# EXHIBIT E

# PROMISSORY NOTE

## November 23, 2009
### (Date)

FOR VALUE RECEIVED, FM Aviation II, LLC, a limited liability company located at the address stated below ("Maker") promises, jointly and severally if more than one, to pay to the order of VFS Financing, Inc. or any subsequent holder hereof (each, a "Payee") at its office located at 10 Riverview Drive, Danbury, CT 06810-6268 or at such other place as Payee may designate as follows:

(a) the principal sum of Eight Million Two Hundred Thousand and 00/100 Dollars ($8,200,000.00), and

(b) interest on the unpaid principal balance from the date hereof through and including the dates of payment, at a fixed, simple interest rate of Six and 10/100 percent (6.10%) per annum (the "Contract Rate") in One Hundred and Twenty (120) consecutive monthly installments of principal and interest as follows:

| Periodic Installment | Amount |
|---|---|
| 1 through 3 | $41,683.33 (Interest Only) |
| 117 | $73,695.47 (Principal and Interest) |

*final installment includes a balloon payment of $3,100,000.00

(each, a "Periodic Installment") and a final installment which shall be in the amount of the total outstanding and unpaid principal, accrued interest and any and all amounts due hereunder and under the other Debt Documents (as defined below). The first Periodic Installment plus interest at the Contract Rate on the unpaid principal balance from the date hereof through and including November 30, 2009 shall be due and payable on January 1, 2010 and the following Periodic Installments and the final installment shall be due and payable on the same day of each succeeding period (each, a "Payment Date"). All payments shall be applied: first, to interest due and unpaid hereunder and under the other Debt Documents; second, to all other amounts due and unpaid hereunder and under the other Debt Documents, and then to principal due hereunder and under the other Debt Documents. The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time. Interest shall be calculated on the basis of a 365-day year (or a 366-day leap year, as applicable) and will be charged at the Contract Rate for each calendar day on which any principal is outstanding. The payment of any Periodic Installment after its due date shall result in a corresponding decrease in the portion of the Periodic Installment credited to the remaining unpaid principal balance.

All amounts due hereunder and under the other Debt Documents are payable in the lawful currency of the United States of America. Maker hereby expressly authorizes Payee to insert the date value is actually given in the blank space on the face hereof and on all related documents pertaining hereto.

This Note may be secured by a security agreement, chattel mortgage, pledge agreement or like instrument (each of which is hereinafter called a "Security Agreement", and collectively with any other document or agreement related thereto or to this Note, the "Debt Documents").

Time is of the essence hereof. If Payee does not receive from Maker payment in full of any Periodic Installment or any other sum due under this Note or any other Debt Document is not received within ten (10) days after its due date, Maker agrees to pay a late fee equal to five percent (5%) on such late Periodic Installment or other sum, but not exceeding any lawful maximum. Such late fee will be immediately due and payable, and is in addition to any other costs, fees and expenses that Maker may owe as a result of such late payment. Additionally, if an Event of Default or default (as such terms are defined and/or used in the Security Agreement) has occurred, then the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sums payable under this Note or any other Debt Document, shall at the election of Payee, immediately become due and payable, with interest thereon at the lesser of eighteen percent (18%) per annum or the highest rate not prohibited by applicable law from the date of such accelerated maturity until paid (both before and after any judgment). The application of such 18% interest rate shall not be interpreted or deemed to extend any cure period set forth in this Note or any other Debt Document, cure any default or otherwise limit Payee's right or remedies hereunder or under any Debt Document.

Maker may prepay in full, but not in part, all outstanding amounts hereunder before they are due on any scheduled Payment Date upon at least thirty (30) days prior written notice to Payee. Payee is authorized and entitled to apply any amounts paid by Maker as a prepayment of indebtedness to delinquent interest or other amounts due and owing from Maker to Payee hereunder and any other Debt Documents before application of such funds to principal outstanding hereunder.

Promissory Note

If Maker makes a prepayment of this Note for any reason, Maker shall pay irrevocably and in full to Payee (i) all outstanding principal amounts, (ii) all accrued interest, (iii) the Make Whole Amount (as defined below), (iv) the Prepayment Fee (as defined below) and (v) any and all other amounts due hereunder or under the other Debt Documents. Maker specifically acknowledges that, to the fullest extent allowed by applicable law, it shall be liable for the Make Whole Amount and the Prepayment Fee on any acceleration hereof or under the other Debt Documents. In the event of an acceleration hereof or under the other Debt Documents, the Make Whole Amount and the Prepayment Fee shall be determined as if (a) Maker prepaid this Note in full immediately before such acceleration and (b) the prepayment notice referred to above was received by Payee thirty (30) days prior to such date.

For purposes hereof, the term "Prepayment Fee" means an amount equal to an additional sum equal to the following percentage of original principal balance for prepayments occurring in the indicated period: 2% (for prepayments occurring prior to the first anniversary of the date hereof), 1% (for prepayments occurring after the first anniversary of the date hereof but prior to the second anniversary of the date hereof) and 0% (for prepayments occurring any time after the second anniversary of the date hereof). For the purposes hereof, the term "Make Whole Amount" means (i) the net present value of the remaining scheduled principal and interest payments (including any balloon or other amount of principal payable that but for the prepayment of this Note would be payable on or prior to the scheduled maturity date hereof), discounted to the prepayment date at a per annum interest rate equal to the then Reinvestment Rate (as defined below) minus (ii) the principal balance outstanding as of the prepayment date (immediately prior to any such prepayment); provided, that the Make Whole Amount shall be deemed zero if the calculation results in a negative number. For purposes hereof, the term "Reinvestment Rate" means the per annum interest rate that is equal to the sum of (a) Three and 54/100 percent (3.54%) plus (b) an interest rate based on the interest rate for swaps (the "Swap Rate") that most closely approximates the remaining term of this Note as published by the Federal Reserve Board in the Federal Reserve Statistical Release H.15 entitled "Selected Interest Rates" available at http://www.federalreserve.gov/releases/h15/update/ on the day Payee receives the prepayment notice. If the remaining term of this Note is not in full years, then the Swap Rate to be adopted from Federal Reserve Statistical Release H.15 shall correspond to a full number-of-years period, excluding partial years of such remaining term.

It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Note or any other Debt Document, in no event shall this Note or any other Debt Document require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under this Note or any other Debt Document, or if all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Note or any other Debt Document on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event: (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof. It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Note or any Debt Document which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for Payee to receive a greater interest per annum rate than is presently allowed, Maker agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum hereunder shall be increased to the maximum interest per annum rate allowed by the amended state law or the law of the United States of America.

Maker hereby consents to any and all extensions of time, renewals, waivers or modifications of, and all substitutions or releases of, security or of any party primarily or secondarily liable on this Note or any other Debt Document or any term and provision of either, which may be made, granted or consented to by Payee, and agrees that suit may be brought and maintained against Maker and/or any and all sureties, endorsers, guarantors or any others who may at any time become liable for payments and performance under this Note and any other Debt Documents (each such person, other than Maker, an "Obligor"), at the election of Payee without joinder of any other as a party thereto, and that Payee shall not be required first to foreclose, proceed against, or exhaust any security hereof in order to enforce payment of this Note. Maker hereby waives presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, and all other notices in connection herewith, as well as filing of suit (if permitted by law) and diligence in collecting this Note or enforcing any of the security hereof, and agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual attorneys' fees.

THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

MAKER IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH

MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE DEBT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND MAKER FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). MAKER IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. MAKER ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO PAYEE WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, MAKER AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH PAYEE MAY BE ENTITLED AT LAW OR IN EQUITY, PAYEE WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, each of Maker and Payee shall have the right to apply to a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce its respective rights under this Note and any other Debt Document, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Maker, any Obligor or the collateral pledged to Payee pursuant to any Debt Document or to gain possession of such collateral. MAKER HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS NOTE, ANY DEBT DOCUMENTS, ANY DEALINGS BETWEEN MAKER AND PAYEE RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN MAKER AND PAYEE. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.) THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE, ANY DEBT DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS NOTE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

This Note and the other Debt Documents constitute the entire agreement of Maker and Payee with respect to the subject matter hereof and supersede all prior understandings, agreements and representations, express or implied.

No variation or modification of this Note, or any waiver of any of its provisions or conditions, shall be valid unless in writing and signed by an authorized representative of Maker and Payee. Any such waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.

Any provision in this Note or any of the other Debt Documents which is in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

FM Aviation II, LLC
By its Member

By: _____

Name: Frank Mongelluzzi

Title: Member


3040 Gulf to Bay Blvd, Clearwater, FL 33759

Federal Tax ID #: 27-1337633


Promissory Note

# EXHIBIT F

# JOINT GUARANTY

Date: November 23, 2009

VFS Financing, Inc.
10 Riverview Drive
Danbury, CT 06810-6268

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to FM Aviation II, LLC, a limited liability company organized and existing under the laws of the State of South Carolina ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, jointly and severally do hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, an open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and jointly and severally do hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). The undersigned jointly and severally do hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. As used in this Guaranty, "you" shall mean VFS Financing, Inc. and all its subsidiaries, parent entities, successors and assigns.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto.

The obligations of each signatory to the Guaranty, and each other guarantor of the Obligations, shall be joint and several. Each of the undersigned hereby irrevocably and unconditionally agrees that each reference to the term "undersigned" herein shall refer to each undersigned listed on the signature page hereof on a joint and several basis, and that each such undersigned shall be jointly and severally liable with respect to the payment and performance of all of the Obligations (without preferences or distinction among them). Each undersigned hereby further acknowledges that in the event Customer defaults under any Account Document or any other undersigned defaults hereunder (regardless of fault of any undersigned or Customer), you shall have the right to exercise any and all of the rights and remedies described hereunder. You shall, in your sole discretion, have the right to separately enforce this Guaranty and each other Account Document against any of Customer and any of the undersigned (including, in your sole discretion, without any requirement for enforcement against the other of such undersigned or any other person, and each undersigned hereby waives any right to require you to so enforce this Guaranty against (or otherwise demand payment or performance from) such other undersigned or any other person. Each of the undersigned hereby waives notice of acceptance of its joint and several liability, notice of the creation or existence of any Obligations of any of Customer and/or any other undersigned, and, generally, to the extent permitted by applicable law, all demands, notices and other formalities of every kind with respect to the other of Customer and/or any undersigned (or any other person) in connection with this Guaranty.

The undersigned agree that their obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the

undersigned) and the undersigned hereby affirmatively and irrevocably waive as a defense to the payment or performance of their obligations hereunder each and every one of the following defenses: (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release, of extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; (h) any merger or consolidation of Customer, any change in control of Customer or any sale of all or substantially all of the assets of Customer; or (i) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of an obligor, surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the undersigned. The undersigned agree that if they receive written notice of an assignment from you, the undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The undersigned also agree to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. The undersigned hereby waive and agree not to assert against any such assignee any of the defenses set forth in the immediate preceding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agree that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrant that they have adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and are not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waive and relinquish all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waive and relinquish any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

The undersigned hereby represent and warrant to you as of the date hereof that (i) the undersigned's execution, delivery and performance hereof does not and will not violate any judgment, order or law applicable to the undersigned, or constitute a breach of

or default under any indenture, mortgage, deed of trust, or other agreement entered into by the undersigned with the undersigned's creditors or any other party; (ii) no approval, consent or withholding of objections is required from any governmental authority or any other entity with respect to the execution, delivery and performance by the undersigned of this Guaranty; (iii) this Guaranty constitutes a valid, legal and binding obligation, enforceable in accordance with its terms; (iv) there are no proceedings presently pending or threatened against the undersigned which will impair their ability to perform under this Guaranty; (v) since the date of the most recent financial statement, there has been no material adverse change in the financial condition of the undersigned; and (vi) the undersigned are and will remain in full compliance with all laws and regulations applicable to them including, without limitation, they neither are nor shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) persons designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, limited liability company, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall be governed by, or construed in accordance with, the laws of the State of New York. This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and include your successors and assigns. The undersigned will deliver to you the undersigned's complete financial statements, reflecting the undersigned's assets, liabilities, net worth and income and expenses in reasonable detail, along with copies of the undersigned's most current tax returns, within ninety (90) days of the close of each calendar year. In addition, in the event of default hereunder, you may at any time inspect undersigned's records. The undersigned represents, warrants and covenants that since the date of the most recent financial statements or other financial information delivered to you, there has been no material adverse change in the undersigned's financial condition.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THE UNDERSIGNED IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE ACCOUNT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND THE UNDERSIGNED FURTHER IRREVOCABLY WAIVE ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). THE UNDERSIGNED IRREVOCABLY WAIVE ANY OBJECTION WHICH THEY MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH

PROCEEDINGS AND AGREES NOT TO CLAIM THAT THEY ARE NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT THEY OR THEIR PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. THE UNDERSIGNED ACKNOWLEDGE THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO YOU WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, THE UNDERSIGNED AGREE THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH YOU MAY BE ENTITLED AT LAW OR IN EQUITY, YOU WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, you and the undersigned shall have the right to apply to a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce our respective rights under this Guaranty and the Account Documents, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against the undersigned, the Customer or the collateral pledged to you pursuant to any Account Document or to gain possession of such collateral.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUALS IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION. THE UNDERSIGNED REPRESENT AND WARRANT THAT IT IS TO THE BENEFIT OF THE UNDERSIGNED TO EXECUTE THIS GUARANTY AND THE BENEFIT TO BE RECEIVED BY THE UNDERSIGNED FROM THIS GUARANTY IS REASONABLY WORTH THE OBLIGATIONS THEREBY GUARANTEED.

IN WITNESS WHEREOF, the undersigned hereby execute this Guaranty as of the date first above written.

Print Name: Frank Mongelluzzi

Address: 1978 Lynnwood Court
Dunedin, FL 34698

Telephone No.:

Print Name: Anne Mongelluzi

Address: 1978 Lynnwood Court
Dunedin, FL 34698

Telephone No.: _____

(Sign and print your name only. DO NOT add any title or corporate office).

Guaranty

## JOINT GUARANTY

Date: November 23, 2009

VFS Financing, Inc.
10 Riverview Drive
Danbury, CT 06810-6268

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "**Account Documents**" and each an "**Account Document**") to **FM Aviation II, LLC**, a limited liability company organized and existing under the laws of the State of South Carolina ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, jointly and severally do hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, an open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and jointly and severally do hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "**Obligations**"). The undersigned jointly and severally do hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. As used in this Guaranty, "you" shall mean VFS Financing, Inc. and all its subsidiaries, parent entities, successors and assigns.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto.

The obligations of each signatory to the Guaranty, and each other guarantor of the Obligations, shall be joint and several. Each of the undersigned hereby irrevocably and unconditionally agrees that each reference to the term "undersigned" herein shall refer to each undersigned listed on the signature page hereof on a joint and several basis, and that each such undersigned shall be jointly and severally liable with respect to the payment and performance of all of the Obligations (without preferences or distinction among them). Each undersigned hereby further acknowledges that in the event Customer defaults under any Account Document or any other undersigned defaults hereunder (regardless of fault of any undersigned or Customer), you shall have the right to exercise any and all of the rights and remedies described hereunder. You shall, in your sole discretion, have the right to separately enforce this Guaranty and each other Account Document against any of Customer and any of the undersigned (including, in your sole discretion, without any requirement for enforcement against the other of such undersigned or any other person, and each undersigned hereby waives any right to require you to so enforce this Guaranty against (or otherwise demand payment or performance from) such other undersigned or any other person. Each of the undersigned hereby waives notice of acceptance of its joint and several liability, notice of the creation or existence of any Obligations of any of Customer and/or any other undersigned, and, generally, to the extent permitted by applicable law, all demands, notices and other formalities of every kind with respect to the other of Customer and/or any undersigned (or any other person) in connection with this Guaranty.

The undersigned agree that their obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the

undersigned) and the undersigned hereby affirmatively and irrevocably waive as a defense to the payment or performance of their obligations hereunder each and every one of the following defenses: (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; (h) any merger or consolidation of Customer, any change in control of Customer or any sale of all or substantially all of the assets of Customer; or (i) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of an obligor, surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the undersigned. The undersigned agree that if they receive written notice of an assignment from you, the undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The undersigned also agree to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. The undersigned hereby waive and agree not to assert against any such assignee any of the defenses set forth in the immediate preceding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agree that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrant that they have adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and are not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waive and relinquish all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waive and relinquish any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

The undersigned hereby represent and warrant to you as of the date hereof that (i) the undersigned's execution, delivery and performance hereof does not and will not violate any judgment, order or law applicable to the undersigned, or constitute a breach of

Guaranty

or default under any indenture, mortgage, deed of trust, or other agreement entered into by the undersigned with the undersigned's creditors or any other party; (ii) no approval, consent or withholding of objections is required from any governmental authority or any other entity with respect to the execution, delivery and performance by the undersigned of this Guaranty; (iii) this Guaranty constitutes a valid, legal and binding obligation, enforceable in accordance with its terms; (iv) there are no proceedings presently pending or threatened against the undersigned which will impair their ability to perform under this Guaranty; (v) since the date of the most recent financial statement, there has been no material adverse change in the financial condition of the undersigned; and (vi) the undersigned are and will remain in full compliance with all laws and regulations applicable to them including, without limitation, they neither are nor shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) persons designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, limited liability company, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall be governed by, or construed in accordance with, the laws of the State of New York. This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and include your successors and assigns. The undersigned will deliver to you the undersigned's complete financial statements, reflecting the undersigned's assets, liabilities, net worth and income and expenses in reasonable detail, along with copies of the undersigned's most current tax returns, within ninety (90) days of the close of each calendar year. In addition, in the event of default hereunder, you may at any time inspect undersigned's records. The undersigned represents, warrants and covenants that since the date of the most recent financial statements or other financial information delivered to you, there has been no material adverse change in the undersigned's financial condition.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THE UNDERSIGNED IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE ACCOUNT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND THE UNDERSIGNED FURTHER IRREVOCABLY WAIVE ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). THE UNDERSIGNED IRREVOCABLY WAIVE ANY OBJECTION WHICH THEY MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH

PROCEEDINGS AND AGREES NOT TO CLAIM THAT THEY ARE NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT THEY OR THEIR PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. THE UNDERSIGNED ACKNOWLEDGE THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO YOU WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, THE UNDERSIGNED AGREE THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH YOU MAY BE ENTITLED AT LAW OR IN EQUITY, YOU WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, you and the undersigned shall have the right to apply to a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce our respective rights under this Guaranty and the Account Documents, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against the undersigned, the Customer or the collateral pledged to you pursuant to any Account Document or to gain possession of such collateral.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUALS IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION. THE UNDERSIGNED REPRESENT AND WARRANT THAT IT IS TO THE BENEFIT OF THE UNDERSIGNED TO EXECUTE THIS GUARANTY AND THE BENEFIT TO BE RECEIVED BY THE UNDERSIGNED FROM THIS GUARANTY IS REASONABLY WORTH THE OBLIGATIONS THEREBY GUARANTEED.

IN WITNESS WHEREOF, the undersigned hereby execute this Guaranty as of the day first above written.

Print Name: Frank Mongelluzzi

Address: 1978 Lynnwood Court
Dunedin, FL 34698

Telephone No.:

Print Name: Anne Mongelluzzi

Address: 1978 Lynnwood Court
Dunedin, FL 34698

Telephone No.: _____

(Sign and print your name only. DO NOT add any title or corporate office).

Guaranty

# EXHIBIT G

# CORPORATE GUARANTY

Date: __November 23__, 2009

VFS Financing, Inc.
10 Riverview Drive
Danbury, CT 06810-6268

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to FM Aviation II, LLC, a limited liability company organized and existing under the laws of the State of South Carolina ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). The undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. As used in this Guaranty, "you" shall mean VFS Financing, Inc. and all its subsidiaries, parent entities, successors and assigns.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to the Guaranty, and each other guarantor of the Obligations, shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned) and the undersigned hereby affirmatively and irrevocably waives as a defense to the payment or performance of its obligations hereunder each and every one of the following defenses: (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; (h) any merger or consolidation of Customer, any change in control of Customer or any sale of all or substantially all of the assets of Customer; or (i) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of an obligor, surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the undersigned. The undersigned agrees that if it receives written notice of an assignment from you, the undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The undersigned also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. The undersigned hereby waives and agrees not to assert against any such assignee any of the defenses set forth in the immediate preceding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, limited liability company, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall be governed by, or construed in accordance with, the laws of the State of New York. This Guaranty shall bind the undersigned's successors and assigns and the benefits thereof shall extend to and include your successors and assigns. The undersigned will deliver to you its complete financial statements, certified by a recognized firm of certified public accountants, within ninety (90) days of the close of each fiscal year of the undersigned. If you request, the undersigned will deliver to you copies of its quarterly financial reports certified by its chief financial officer, within ninety (90) days after the close of each fiscal quarter of the undersigned and copies of its most current tax returns. The undersigned will deliver to you copies of all Forms 10-K and 10-Q, if any, within 30 days after the dates on which they are filed with the Securities and Exchange Commission. In addition, in the event of default hereunder, you may at any time inspect undersigned's records. The undersigned represents, warrants and covenants that all financial statements delivered to you in connection with this Guaranty have been (and will be) prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statements or other financial information delivered to you, there has been no material adverse change in the undersigned's financial condition.

The undersigned hereby represents and warrants to you as of the date hereof that (i) the undersigned's execution, delivery and performance hereof does not and will not violate any judgment, order or law applicable to the undersigned, or constitute a breach of or default under any indenture, mortgage, deed of trust, or other agreement entered into by the undersigned with the undersigned's creditors or any other party; (ii) no approval, consent or withholding of objections is required from any governmental authority or any other entity with respect to the execution, delivery and performance by the undersigned of this Guaranty; (iii) this Guaranty constitutes a valid, legal and binding obligation of the undersigned, enforceable in accordance with its terms; (iv) there are no proceedings presently pending or threatened against the undersigned which will impair its ability to perform under this Guaranty; (v) since the date of the undersigned's most recent financial statement, there has been no material adverse change in the financial condition of the undersigned; and (vi) the undersigned is and will remain in full compliance with all laws and

regulations applicable to it including, without limitation, it neither is nor shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THE UNDERSIGNED IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE ACCOUNT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND THE UNDERSIGNED FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). THE UNDERSIGNED IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. THE UNDERSIGNED ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO YOU WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, THE UNDERSIGNED AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH YOU MAY BE ENTITLED AT LAW OR IN EQUITY, YOU WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, you and the undersigned shall have the right to apply to a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce its respective rights under this Guaranty and the Account Documents, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against the undersigned, the Customer or the collateral pledged to you pursuant to any Account Document or to gain possession of such collateral.

Each person signing this Guaranty on behalf of the undersigned company warrants that (i) it is to the benefit of the undersigned company to execute this Guaranty, (ii) the benefit to be received by the undersigned company from this Guaranty is reasonably worth the obligations thereby guaranteed, and (iii) he/she/it has authority to sign on behalf of such undersigned and by so signing, to bind said company hereunder.

**IN WITNESS WHEREOF**, this Guaranty is executed the day and year above written.

Able Body Temporary Services, Inc.

By:
(Signature)

Title: PRES
(Officer's Title)

Federal Tax ID: 59-3060343

ATTEST:
Secretary/Assistant Secretary

# Certified Resolution

The undersigned hereby certifies as follows: that the undersigned is Secretary of Able Body Temporary Services, Inc.; that the following resolution was passed by unanimous written consent in lieu of a meeting of the Board of Directors of said corporation or at a meeting of the Board of Directors of said corporation duly called with a quorum being present, as applicable; that said resolution has not since been revoked or amended; and that the form of guaranty referred to therein is the form shown attached hereto:

**"RESOLVED** that it is to the benefit of this corporation that it execute a guaranty of the obligations of FM Aviation II, LLC ("Customer") to VFS Financing, Inc. (together with its successors and assigns, if any) and that the benefit to be received by this corporation from such guaranty is reasonably worth the obligations thereby guaranteed, and further that such guaranty shall be substantially in the form annexed to these minutes, and further that the _PRESIDENT_____ and _____ (Title of Officers) of this corporation are authorized to execute such guaranty on the behalf of this corporation."

WITNESS my hand and the seal of this corporation on this _____19th_____ day of _November_____ , 2009.

NO SEAL

[Seal]

Secretary

Corporate Guaranty

# CORPORATE GUARANTY

Date: November 23, 2009

VFS Financing, Inc.
10 Riverview Drive
Danbury, CT 06810-6268

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to FM Aviation II, LLC, a limited liability company organized and existing under the laws of the State of South Carolina ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). The undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. As used in this Guaranty, "you" shall mean VFS Financing, Inc. and all its subsidiaries, parent entities, successors and assigns.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty, and each other guarantor of the Obligations, shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned) and the undersigned hereby affirmatively and irrevocably waives as a defense to the payment or performance of its obligations hereunder each and every one of the following defenses: (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; (h) any merger or consolidation of Customer, any change in control of Customer or any sale of all or substantially all of the assets of Customer; or (i) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of an obligor, surety or guarantor.

This Guaranty, the Account Documents and the Obligations may be assigned by you, without the consent of the undersigned. The undersigned agrees that if it receives written notice of an assignment from you, the undersigned will pay all amounts due hereunder to such assignee or as instructed by you. The undersigned also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. The undersigned hereby waives and agrees not to assert against any such assignee any of the defenses set forth in the immediate preceding paragraph.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, limited liability company, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall be governed by, or construed in accordance with, the laws of the State of New York. This Guaranty shall bind the undersigned's successors and assigns and the benefits thereof shall extend to and include your successors and assigns. The undersigned will deliver to you its complete financial statements, certified by a recognized firm of certified public accountants, within ninety (90) days of the close of each fiscal year of the undersigned. If you request, the undersigned will deliver to you copies of its quarterly financial reports certified by its chief financial officer, within ninety (90) days after the close of each fiscal quarter of the undersigned and copies of its most current tax returns. The undersigned will deliver to you copies of all Forms 10-K and 10-Q, if any, within 30 days after the dates on which they are filed with the Securities and Exchange Commission. In addition, in the event of default hereunder, you may at any time inspect undersigned's records. The undersigned represents, warrants and covenants that all financial statements delivered to you in connection with this Guaranty have been (and will be) prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statements or other financial information delivered to you, there has been no material adverse change in the undersigned's financial condition.

The undersigned hereby represents and warrants to you as of the date hereof that (i) the undersigned's execution, delivery and performance hereof does not and will not violate any judgment, order or law applicable to the undersigned, or constitute a breach of or default under any indenture, mortgage, deed of trust, or other agreement entered into by the undersigned with the undersigned's creditors or any other party; (ii) no approval, consent or withholding of objections is required from any governmental authority or any other entity with respect to the execution, delivery and performance by the undersigned of this Guaranty; (iii) this Guaranty constitutes a valid, legal and binding obligation of the undersigned, enforceable in accordance with its terms; (iv) there are no proceedings presently pending or threatened against the undersigned which will impair its ability to perform under this Guaranty; (v) since the date of the undersigned's most recent financial statement, there has been no material adverse change in the financial condition of the undersigned; and (vi) the undersigned is and will remain in full compliance with all laws and

regulations applicable to it including, without limitation, it neither is nor shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling regulation or any other similar Executive Orders.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THE UNDERSIGNED IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH AND WITH THE ACCOUNT DOCUMENTS (COLLECTIVELY, THE "PROCEEDINGS"), AND THE UNDERSIGNED FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). THE UNDERSIGNED IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. THE UNDERSIGNED ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO YOU WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, THE UNDERSIGNED AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH YOU MAY BE ENTITLED AT LAW OR IN EQUITY, YOU WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, you and the undersigned shall have the right to apply to a court of competent jurisdiction in the United States of America or abroad for equitable relief as is necessary to preserve, protect and enforce its respective rights under this Guaranty and the Account Documents, including, but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against the undersigned, the Customer or the collateral pledged to you pursuant to any Account Document or to gain possession of such collateral.

Each person signing this Guaranty on behalf of the undersigned company warrants that (i) it is to the benefit of the undersigned company to execute this Guaranty, (ii) the benefit to be received by the undersigned company from this Guaranty is reasonably worth the obligations thereby guaranteed, and (iii) he/she/it has authority to sign on behalf of such undersigned and by so signing, to bind said company hereunder.

**IN WITNESS WHEREOF**, this Guaranty is executed the day and year above written.

Able Body Temporary Services, Inc.

By: _____
     (Signature)

Title: PRES
     (Officer's Title)

Federal Tax ID: 59 - 3060343

ATTEST: _____
     Secretary/Assistant Secretary

Corporate Guaranty

## Certified Resolution

The undersigned hereby certifies as follows: that the undersigned is Secretary of Able Body Temporary Services, Inc.; that the following resolution was passed by unanimous written consent in lieu of a meeting of the Board of Directors of said corporation or at a meeting of the Board of Directors of said corporation duly called with a quorum being present, as applicable; that said resolution has not since been revoked or amended; and that the form of guaranty referred to therein is the form shown attached hereto:

"**RESOLVED** that it is to the benefit of this corporation that it execute a guaranty of the obligations of FM Aviation II, LLC ("Customer") to VFS Financing, Inc. (together with its successors and assigns, if any) and that the benefit to be received by this corporation from such guaranty is reasonably worth the obligations thereby guaranteed, and further that such guaranty shall be substantially in the form annexed to these minutes, and further that the PRESIDENT _____ and _____ (Title of Officers) of this corporation are authorized to execute such guaranty on the behalf of this corporation."

**WITNESS** my hand and the seal of this corporation on this _____ 19th _____ day of __Naveмber__ , 2009.

NO SEAL

[Seal]

Secretary _____

Corporate Guaranty

# EXHIBIT H



GE
Capital Americas

Beth I. Bonell
Vice President
Global Restructuring Solutions

10 Riverview Drive
Danbury, Connecticut 06810
USA

T 203-749-2314
F 866-345-3127

Beth.Bonell@ge.com

FM Aviation II, LLC
Frank Mongelluzzi
3040 Gulf to Bay Blvd.
Clearwater, FL 33759
Federal Express

August 5, 2010

Re:    Promissory Notes between VFS Financing, Inc. By its Manager ("GE Capital") General Electric Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009. (the "Notes");

Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General Electric Capital Corporation and FM Aviation II., LLC ("Debtor") dated as of November 23, 2009 together with and any all amendments, modifications, attachments, and related documents (the "Security Agreements") (The Note together with the Security Agreement, and any related documents, the "Loan Documents")

Dear Mr. Mongelluzzi:

As you know, Debtor has defaulted under the Loan Documents having failed, among other things, to make the required payments thereunder. According to our records your accounts are past due in the amount of $165,245.25 (the "Past Due Amount").

Accordingly, demand is hereby made that by no later than 12:00 p.m. EST Monday, August 16, 2010 (the "Deadline"), a wire transfer in immediately available funds in the full amount of the Past Due Amount.

General Electric Capital Corporation

Re:     Promissory Notes between VFS Financing, Inc. By its Manager ("GE Capital") General Electric
        Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009. (the "Notes");

        Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General
        Electric Capital Corporation and FM Aviation II., LLC ("Debtor") dated as of November 23, 2009
        together with and any all amendments, modifications, attachments, and related documents
        (the "Security Agreements") (The Note together with the Security Agreement, and any related
        documents, the "Loan Documents")

In the event payment in full is not received by the Deadline, GE Capital may, at its discretion, exercise
any and all rights and remedies under the Loan Documents related documents and/or applicable law,
including, but not limited to, the commencement of an action to recover the Past Due Amount, other
amounts due and owing under the Loan Documents, and/or the equipment subject to the Loan
Documents.

GE Capital reserves all rights and remedies under the Loan Documents and applicable law, and any
elections or enforcement of its rights under the Loan Documents herein does not in any way limit any
other rights or remedies of GE Capital thereunder or constitute a waiver thereof, all of which rights and
remedies are hereby expressly preserved.

If you have any questions contact me at 203-749-2314.

Sincerely,

General Electric Capital Corporation

Beth I. Bonell
Vice President

# EXHIBIT I



GE
Capital Americas

Beth I. Bonell
Vice President

10 Riverview Road
Danbury, CT 06810

T 203-749-2314
F 866-345-3127
Beth.bonell@ge.com

Mr. Frank Mongelluzzi
Mrs. Anne Mongelluzzi
1978 Lynnwood Court
Dunedin, FL 34698
Federal Express

August 5, 2010

Re: Promissory Notes between VFS Financing, Inc. By its Manager ("GE Capital") General Electric Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009. (the "Notes");

Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General Electric Capital Corporation and FM Aviation II., LLC ("Debtor") dated as of November 23, 2009 together with and any all amendments, modifications, attachments, and related documents (the "Security Agreements") (The Note together with the Security Agreement, and any related documents, the "Loan Documents")

Dear Mr. & Mrs. Mongelluzzi:

Please be advised that on or about GE Capital delivered a Notice of Default (the "Notice") to FM Aviation II, LLC ("Debtor"), detailing the default under the terms and conditions of the Loan Documents. A true, accurate and correct copy of the Notice, inclusive of the Loan Documents, is enclosed herewith and is incorporated herein by this reference as though fully set forth herein.

As is more specifically set forth in the Notice, GE Capital has defaulted the ("Debtor") and under the terms and conditions of the Loan Documents. According to our records your account is past due in the amount of $165,245.25 (the "Past Due Amount").

Pursuant to the terms of the Guaranty, of which a true, accurate and correct copy is attached hereto and is which incorporated herein by this reference as though fully set forth herein, you guaranteed to pay GE Capital, on demand, all sums due and to become due as a result of the Individual Debtor and Debtor's default under, among other things, the Loan Documents. As a result of the Individual Debtor and Debtor's default under the terms and conditions of the Loan Documents, and pursuant to your obligations under the Guaranty, demand is hereby made that by no later than 12:00 p.m. EST, Monday, August 16, 2010 (the "Deadline"), a wire transfer in immediately available funds in the full amount of the Past Due Amount.

General Electric Capital Corporation

Re:    Promissory Notes between VFS Financing, Inc. By its Manager ("GE Capital") General Electric
Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009. (the "Notes");

Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General
Electric Capital Corporation and FM Aviation II., LLC ("Debtor") dated as of November 23, 2009
together with and any all amendments, modifications, attachments, and related documents
(the "Security Agreements") (The Note together with the Security Agreement, and any related
documents, the "Loan Documents")

In the event that payment is not received by the Deadline, GE Capital may, at its discretion,
exercise any and all rights and remedies under the Guaranty, the Loan Documents, related documents
and/or applicable law, including, but not limited to, the commencement of an action against you to,
among other things, recover all amounts due under the Guaranty.

GE Capital reserves all rights and remedies under the relevant agreements, any related
documents, and applicable law, and any elections or enforcements of its rights herein does not in any
way limit any other rights or remedies of GE Capital thereunder or constitute a waiver thereof, all of
which rights and remedies are hereby expressly preserved.

Sincerely,

General Electric Capital Corporation

Beth I. Bonell
Vice President



GE
**Capital Americas**

Beth I. Bonell
Vice President

10 Riverview Road
Danbury, CT 06810

T 203-749-2314
F 866-345-3127
Beth.bonell@ge.com

Able Body Temporary Services, Inc.
Frank Mongelluzzi
Bob Pierce
3040 Gulf to Bay Blvd.
Clearwater, FL 33759
Federal Express
Email bob.pierce@ablebody.net

August 5, 2010

Re:   Promissory Notes between VFS Financing, Inc. By its Manager ("GE Capital") General Electric
      Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009, (the "Notes");

      Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General
      Electric Capital Corporation and FM Aviation II., LLC ("Debtor") dated as of November 23, 2009
      together with and any all amendments, modifications, attachments, and related documents
      (the "Security Agreements") (The Note together with the Security Agreement, and any related
      documents, the "Loan Documents")

Dear Mr. Mongelluzzi:

        Please be advised that on or about GE Capital delivered a Notice of Default (the "Notice") to FM
Aviation II, LLC ("Debtor"), detailing the default under the terms and conditions of the Loan Documents.
A true, accurate and correct copy of the Notice, inclusive of the Loan Documents, is enclosed herewith
and is incorporated herein by this reference as though fully set forth herein.

As is more specifically set forth in the Notice, GE Capital has defaulted the ("Debtor") and under the
terms and conditions of the Loan Documents.  According to our records your account is past due in
the amount of $165,245.25 (the "Past Due Amount").

        Pursuant to the terms of the Guaranty, of which a true, accurate and correct copy is attached
hereto and is which incorporated herein by this reference as though fully set forth herein, you
guaranteed to pay GE Capital, on demand, all sums due and to become due as a result of the
Individual Debtor and Debtor's default under, among other things, the Loan Documents.  As a result of
the Individual Debtor and Debtor's default under the terms and conditions of the Loan Documents,
and pursuant to your obligations under the Guaranty, demand is hereby made that by no later than
12:00 p.m. EST, Monday, August 16, 2010 (the "Deadline"), a wire transfer in immediately available
funds in the full amount of the Past Due Amount.

Re:     Promissory Notes between VFS Financing, Inc. By its Manager ("GE Capital") General Electric
        Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009. (the "Notes");

        Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General
        Electric Capital Corporation and FM Aviation II., LLC ("Debtor") dated as of November 23, 2009
        together with and any all amendments, modifications, attachments, and related documents
        (the "Security Agreements") (The Note together with the Security Agreement, and any related
        documents, the "Loan Documents")

        In the event that payment is not received by the Deadline, GE Capital may, at its discretion,
exercise any and all rights and remedies under the Guaranty, the Loan Documents, related documents
and/or applicable law, including, but not limited to, the commencement of an action against you to,
among other things, recover all amounts due under the Guaranty.

        GE Capital reserves all rights and remedies under the relevant agreements, any related
documents, and applicable law, and any elections or enforcements of its rights herein does not in any
way limit any other rights or remedies of GE Capital thereunder or constitute a waiver thereof, all of
which rights and remedies are hereby expressly preserved.

Sincerely,

General Electric Capital Corporation

Beth I. Bonell
Vice President

# EXHIBIT J



Capital Americas

Beth L. Bonell
Vice President
Global Restructuring Solutions

10 Riverview Drive
Danbury, Connecticut 06810
USA

T 203-749-2314
F 866-345-3127

Beth.Bonell@ge.com

Federal Express
FM Aviation II, LLC
3040 Gulf To Bay Blvd.
Clearwater, FL 33759

August 20, 2010

Re:     Account Schedule 5886855001
        Promissory Note between VFS Financing, Inc. By its Manager ("GE Capital") General Electric
        Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009. (the "Notes");

        Master Aircraft Security Agreement between VFS Financing, Inc. by its Manager ("GE Capital")
        General Electric Capital Corporation and FM Aviation II, LLC ("Debtor") dated as of November
        23, 2009 together with and any all amendments, modifications, attachments, and related
        documents (the "Security Agreement") (The Note together with the Security Agreement, and
        any related documents, the "Loan Documents")

Dear Mr. Mongelluzzi:

As you know, Debtor has defaulted under the Loan Documents having failed, among other things, to
make the required payments thereunder. In accordance with the terms of the Loan Documents, GE
Capital has elected to and hereby does accelerate the obligations under the Loan Documents and
declares the entire balance to be immediately due and payable, plus accruing interest at the default
rate, costs, expenses, attorney's fees, and all other amounts owing to GE Capital under the Loan
Documents (the "Accelerated Obligations").

Accordingly, demand is hereby made that by no later than 12:00 p.m. EST Monday, August 30, 2010
(the "Deadline"), a wire transfer in an amount of the Accelerated Obligations, which are no less than
$8,678,079.47 to be delivered to the undersigned.

Page 2 -    Re: Master Aircraft Security Agreements between VFS Financing, Inc. by its Manager
            ("GE Capital") General Electric Capital Corporation and FM Aviation II, LLC ("Debtor") dated as of
            November 23, 2009 together with and any all amendments, modifications, attachments, and
            related documents (the "Security Agreement") (The Note together with the Security Agreement,
            and any related documents, the "Loan Documents")

The wire transfer should be made payable to "General Electric Capital Corporation" and sent to the
remittance address below:
Deutsche Trust Company Americas
60 Wall Street
New York, NY 10005
A/C No. 502 02 962
ABA No. 021-001-033
GE CEF Main Depository Account
Wire comment: FM Aviation II, LLC 588685001

In the event payment in full is not received by the Deadline, GE Capital may, at its discretion, exercise
any and all rights and remedies under the Loan Documents, related documents and/or applicable law,
including, but not limited to, the commencement of an action to recover the Accelerated Obligations
and/or the equipment subject to the Loan Documents.

GE Capital reserves all rights and remedies under the Loan Documents and applicable law, and any
elections or enforcement of its rights under the Loan Documents herein does not in any way limit any
other rights or remedies of GE Capital thereunder or constitute a waiver thereof, all of which rights and
remedies are hereby expressly preserved.

If you have any questions, please contact me at 203-749-2314.

Sincerely,
General Electric Capital Corporation

Beth I. Bonell



**Capital Americas**

**Beth I. Bonell**
Vice President
Global Restructuring Solutions

10 Riverview Drive
Danbury, Connecticut 06810
USA

T 203-749-2314
F 866-345-3127

Beth.Bonell@ge.com

Federal Express
FM Aviation II, LLC
3040 Gulf To Bay Blvd.
Clearwater, FL 33759

August 20, 2010

Re:     Account Schedule 5886855002
        Promissory Note between VFS Financing, Inc. By its Manager ("GE Capital") General Electric
        Capital Corporation and FM Aviation II, LLC dated as of November 23, 2009, (the "Notes");

        Master Aircraft Security Agreement between VFS Financing, Inc. by its Manager ("GE Capital")
        General Electric Capital Corporation and FM Aviation II, LLC ("Debtor") dated as of November
        23, 2009 together with and any all amendments, modifications, attachments, and related
        documents (the "Security Agreement") (The Note together with the Security Agreement, and
        any related documents, the "Loan Documents")

Dear Mr. Mongelluzzi:

As you know, Debtor has defaulted under the Loan Documents having failed, among other things, to
make the required payments thereunder. In accordance with the terms of the Loan Documents, GE
Capital has elected to and hereby does accelerate the obligations under the Loan Documents and
declares the entire balance to be immediately due and payable, plus accruing interest at the default
rate, costs, expenses, attorney's fees, and all other amounts owing to GE Capital under the Loan
Documents (the "Accelerated Obligations").

Accordingly, demand is hereby made that by no later than 12:00 p.m. EST Monday, August 30, 2010
(the "Deadline"), a wire transfer in an amount of the Accelerated Obligations, which are no less than
$9,841,614.93 be delivered to the undersigned.

RE: Master Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General Electric Capital Corporation and FM Aviation II, LLC ("Debtor") dated as of November 23, 2009 together with and any all amendments, modifications, attachments, and related documents (the "Security Agreement") (The Note together with the Security Agreement, and any related documents, the "Loan Documents")

The wire transfer should be made payable to "General Electric Capital Corporation" and sent to the remittance address below:
Deutsche Trust Company Americas
60 Wall Street
New York, NY 10005
A/C No. 502 02 962
ABA No. 021-001-033
GE CEF Main Depository Account
Wire comment: FM Aviation II, LLC 588685002

In the event payment in full is not received by the Deadline, GE Capital may, at its discretion, exercise any and all rights and remedies under the Loan Documents, related documents and/or applicable law, including, but not limited to, the commencement of an action to recover the Accelerated Obligations and/or the equipment subject to the Loan Documents.

GE Capital reserves all rights and remedies under the Loan Documents and applicable law, and any elections or enforcement of its rights under the Loan Documents herein does not in any way limit any other rights or remedies of GE Capital thereunder or constitute a waiver thereof, all of which rights and remedies are hereby expressly preserved.

If you have any questions, please contact me at 203-749-2314.

Sincerely,
General Electric Capital Corporation

Beth I. Bonell



Capital Americas

**Beth I. Bonell**
Vice President
Global Restructuring Solutions

10 Riverview Drive
Danbury, Connecticut 06810
USA

T 203-749-2314
F 866-345-3127

Beth.Bonell@ge.com

Federal Express

Mr. Frank Mongelluzzi
Mrs. Anne Mongelluzzi
1978 Lynnwood Court
Dunedin, FL 34698

August 20, 2010

Re:     Two (2) Master Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE
Capital") General Electric Capital Corporation and FM Aviation II, LLC ("Debtor") dated as of
November 23, 2009 together with and any all amendments, modifications, attachments, and
related documents (the "Security Agreement") (The Note together with the Security Agreement,
and any related documents, the "Loan Documents")

Dear Mr. Mongelluzzi:

Please be advised that on or about August 5, 2010 GE Capital delivered a Notice of Default and
Acceleration of Obligations (the "Notice") to FM Aviation II, LLC ("Debtor"), detailing the Debtor's default
under the terms and conditions of the Loan Documents.   A true, accurate and correct copy of the
Notice, inclusive of the Loan Documents, is enclosed herewith and is incorporated herein by this
reference as though fully set forth herein.

As is more specifically set forth in the Notice, GE Capital has defaulted the Debtor and
accelerated the payment and performance obligations remaining under the terms and conditions of
the Loan Documents.  As of this date, FM Aviation II, LLC owes GE Capital an amount of no less than
$18,519,694.30 pursuant to its obligations under the Loan Documents (the "Accelerated Obligations").

Pursuant to the terms of the Guaranty, of which a true, accurate and correct copy is attached
hereto and is which incorporated herein by this reference as though fully set forth herein, you
guaranteed to pay GE Capital, on demand, all sums due and to become due as a result of the Debtor's
default under, among other things, the Loan Documents.  As a result of the Debtor's default under the
terms and conditions of the Loan Documents, and pursuant to your obligations under the Guaranty,
demand is hereby made that by no later than 12:00 p.m. EST, August, 30  2010 (the "Deadline"), you
deliver to this office, to the attention of the undersigned, a wire transfer in immediately available funds
in the full amount of the Accelerated Obligations.

General Electric Capital Corporation

Re:    Two (2) Master Aircraft Security Agreements between VFS Financing, Inc. by its Manager ("GE Capital") General Electric Capital Corporation and FM Aviation II, LLC ("Debtor") dated as of November 23, 2009 together with and any all amendments, modifications, attachments, and related documents (the "Security Agreement") (The Note together with the Security Agreement, and any related documents, the "Loan Documents")

The wire transfer should be made payable to "General Electric Capital Corporation" and sent to the remittance address below:

Deutsche Trust Company Americas
60 Wall Street
New York, NY 10005
A/C No. 502 02 962
ABA No. 021-001-033
GE CEF Main Depository Account
Wire comment: FM Aviation II, LLC 588625001 and 588625002

In the event that payment is not received by the Deadline, GE Capital may, at its discretion, exercise any and all rights and remedies under the Guaranty, the Loan Documents, related documents and/or applicable law, including, but not limited to, the commencement of an action against you to, among other things, recover all amounts due under the Guaranty.

GE Capital reserves all rights and remedies under the relevant agreements, any related documents, and applicable law, and any elections or enforcements of its rights herein does not in any way limit any other rights or remedies of GE Capital thereunder or constitute a waiver thereof, all of which rights and remedies are hereby expressly preserved.

If you have any questions concerning your account, please contact me at 203-749-2314.

Sincerely,
General Electric Capital Corporation

Beth I. Bonell



## Capital Americas

**Beth I. Bonell**
Vice President
Global Restructuring Solutions

10 Riverview Drive
Danbury, Connecticut 06810
USA

T 203-749-2314
F 866-345-3127

Beth.Bonell@ge.com

Federal Express
Able Body Temporary Services, Inc.
Frank Mongelluzzi
3040 Gulf To Bay Blvd.
Clearwater, Florida 33759
Federal Express
Email: bob.pierce@ablebody.net

August 20, 2010

Re:     Master Aircraft Security Agreement between VFS Financing, Inc. by its Manager ("GE Capital")
General Electric Capital Corporation and Insurance Services Corporation ("Debtor") dated as of
November 23, 2009 together with and any all amendments, modifications, attachments, and
related documents (the "Security Agreement") (The Note together with the Security Agreement,
and any related documents, the "Loan Documents")

Dear Mr. Mongelluzzi:

Please be advised that on or about August 5, 2010 GE Capital delivered a Notice of Default and
Acceleration of Obligations (the "Notice") to FM Aviation II, LLC ("Debtor"), detailing the Debtor's default
under the terms and conditions of the Loan Documents .  A true, accurate and correct copy of the
Notice, inclusive of the Loan Documents, is enclosed herewith and is incorporated herein by this
reference as though fully set forth herein.

As is more specifically set forth in the Notice, GE Capital has defaulted the Debtor and
accelerated the payment and performance obligations remaining under the terms and conditions of
the Loan Documents.  As of this date, FM Aviation II, LLC owes GE Capital an amount of no less than
**$18,519,694.30** pursuant to its obligations under the Loan Documents (the "Accelerated Obligations").

Pursuant to the terms of the Guaranty, of which a true, accurate and correct copy is attached
hereto and is which incorporated herein by this reference as though fully set forth herein, you
guaranteed to pay GE Capital, on demand, all sums due and to become due as a result of the Debtor's
default under, among other things, the Loan Documents. As a result of the Debtor's default under the
terms and conditions of the Loan Documents, and pursuant to your obligations under the Guaranty,
demand is hereby made that by no later than 12:00 p.m. EST, August 30, 2010 (the "Deadline"), you
deliver to this office, to the attention of the undersigned, a wire transfer in immediately available funds
in the full amount of the Accelerated Obligations.

Re:  Master Aircraft Security Agreement between VFS Financing, Inc. by its Manager ("GE Capital") General Electric Capital Corporation and Insurance Services Corporation ("Debtor") dated as of November 23, 2009 together with and any all amendments, modifications, attachments, and related documents (the "Security Agreement") (The Note together with the Security Agreement, and any related documents, the "Loan Documents")

The wire transfer should be made payable to "General Electric Capital Corporation" and sent to the remittance address below:
Deutsche Trust Company Americas
60 Wall Street
New York, NY 10005
A/C No. 502 02 962
ABA No. 021-001-033
GE CEF Main Depository Account
Wire comment: FM Aviation II, LLC 5886855001 and 5886855002

In the event that payment is not received by the Deadline, GE Capital may, at its discretion, exercise any and all rights and remedies under the Guaranty, the Loan Documents, related documents and/or applicable law, including, but not limited to, the commencement of an action against you to, among other things, recover all amounts due under the Guaranty.

GE Capital reserves all rights and remedies under the relevant agreements, any related documents, and applicable law, and any elections or enforcements of its rights herein does not in any way limit any other rights or remedies of GE Capital thereunder or constitute a waiver thereof, all of which rights and remedies are hereby expressly preserved.

If you have any questions concerning your account, please contact me at 203-749-2314.

Sincerely,
General Electric Capital Corporation

Beth I. Bonell

EXHIBIT 2

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Corporation Service Company    1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

46507758

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: South Carolina (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FM Aviation II, LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3040 Gulf to Bay Blvd. | Clearwater | FL | 33759 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | LLC | SC | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| VFS Financing, Inc. | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10 Riverview Drive | Danbury | CT | 06810-6268 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All of Debtor's right, title and interest in and to: the aircraft and other property described below and in all additions and accessions thereto and substitutions thereof, now or hereafter owned, all unearned insurance premiums and insurance proceeds relating to such property, any "associated rights" (as defined by the Cape Town Convention) conferred by the Aircraft Security Agreement, dated as of November 23, 2009, between Debtor and Secured Party (the "Agreement") or any of the Debt Documents (as defined in the Agreement) and the proceeds of all of the foregoing (all of such property and proceeds are collectively referred to as the "Aircraft"):

Airframe: Gulfstream Aerospace model G-IV (shown on the IR as GULFSTREAM model Gulfstream G-IV (GIV) aircraft bearing manufacturer's serial number 1104 and U.S. Registration No. N2SA. Engines: Rolls Royce model Tay-611-8 (shown on the IR as ROLLS ROYCE model TAY611) aircraft engines bearing manufacturer's serial numbers 16136 and 16145 (which engines are 550 or more rated takeoff horsepower or the equivalent thereof); together with all other property essential and appropriate to the operation of the Aircraft, including but not limited to all instruments, avionics, auxiliary power units, equipment and accessories attached to, connected with or related to the Aircraft, and all logs, manuals and other documents issued for, or reflecting use or maintenance of, the Aircraft and, to the extent Debtor is permitted to grant a security interest therein, all manufacturer's and supplier's warranties with respect to the foregoing and all rights and remedies under any maintenance or servicing contracts with respect to the Aircraft(including rights under prepaid accounts or held in trust pursuant thereto).

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**
EFS - Direct - East - 5886855-001

46507758

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1)

EXHIBIT 3

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Corporation Service Company    1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

46507933

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: South Carolina (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FM Aviation II, LLC | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3040 Gulf to Bay Blvd. | Clearwater | FL | 33759 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | LLC | SC | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names    ☒ NONE

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)    ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| VFS Financing, Inc. | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10 Riverview Drive | Danbury | CT | 06810-6268 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All of Debtor's right, title and interest in and to: the aircraft and other property described below and in all additions and accessions thereto and substitutions thereof, now or hereafter owned, all unearned insurance premiums and insurance proceeds relating to such property, any "associated rights" (as defined by the Cape Town Convention) conferred by the Aircraft Security Agreement, dated as of November 23, 2009, between Debtor and Secured Party (the "Agreement") or any of the Debt Documents (as defined in the Agreement) and the proceeds of all of the foregoing (all of such property and proceeds are collectively referred to as the "Aircraft"):

Airframe: Gulfstream Aerospace model G-IV (shown on the IR as GULFSTREAM model Gulfstream G-IV (GIV) aircraft bearing manufacturer's serial number 1171 and U.S. Registration No. N3SA. Engines: Rolls Royce model Tay MK611-8 (shown on the IR as ROLLS ROYCE model TAY611) aircraft engines bearing manufacturer's serial numbers 16396 and 16270 (which engines are 550 or more rated takeoff horsepower or the equivalent thereof); together with all other property essential and appropriate to the operation of the Aircraft, including but not limited to all instruments, avionics, auxiliary power units, equipment and accessories attached to, connected with or related to the Aircraft, and all logs, manuals and other documents issued for, or reflecting use or maintenance of the Aircraft and, to the extent Debtor is permitted to grant a security interest therein, all manufacturer's and supplier's warranties with respect to the foregoing and all rights and remedies under any maintenance or servicing contracts with respect to the Aircraft (including rights under prepaid accounts or held in trust pursuant thereto).

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
EFS - Direct - East - 5886855-002

46507933

EXHIBIT 4

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **BARBARA R. KAPNICK**
_____ PART _Sim_
              *Justice*

VFS Financing

- v -

FM Aviation

| | INDEX NO. | 651435/10 |
|---|---|---|
| | MOTION DATE | |
| | MOTION SEQ. NO. | 001 |
| | MOTION CAL. NO. | |

The following papers, numbered 1 to _____ were read on this motion to/for

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion: ☐ Yes ☒ No

Upon the foregoing papers, it is ordered that this motion

**MOTION IS DECIDED IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION**

NYS SUPREME COURT
RECEIVED

OCT 0 4 2010

MOTION SUPPORT OFFICE

Dated: 10/1/10

_____
BARBARA R. KAPNICK J.S.C.

Check one: ☐ FINAL DISPOSITION  ☒ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST  ☐ REFERENCE

☐ SUBMIT ORDER/ JUDG.  ☐ SETTLE ORDER/ JUDG.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

VFS FINANCING, INC.,

                    Plaintiff,

          - against -

FM AVIATION II, LLC, ABLE BODY
TEMPORARY SERVICES, INC., FRANK
MONGELLUZZI and ANNE MONGELLUZZI,

                    Defendants.
---------------------------------------X

**DECISION/ORDER**
Index No. 651435/10
Motion Seq. No. 001

**BARBARA R. KAPNICK, J.:**

     This Order to Show Cause by plaintiff VFS Financing, Inc.

("VFS") for an order pursuant to CPLR §§ 6313 and 7102

granting (i) an order of seizure of a certain Gulfstream Aerospace

(Model G-IV, Serial No. 1104, Registration No. N2SA; and Engine

Make: Rolls Royce, Medel Tay-611-8, Serial Nos. 16136 and 16145, as

more fully described in the First Security Agreement)(the "First

Aircraft"); and a certain Gulfstream Aerospace (Model G-IV, Serial

No. 1171, Registration No. N3SA; and Engine Make: Rolls Royce,

Model Tay-MK611-8, Serial Nos. 16396 and 16270) (the "Second

Aircraft"; collectively with the First Aircraft, the "Aircrafts");

and (ii) a preliminary injunction, is granted on default, and it is

hereby

     ORDERED that defendants and any of their responsible managing

agents, officers, directors, or employees (acting within the scope

of his or her office or employment) and any other person or firm

having actual notice of this Order, including but not limited to the Domestic agents of defendants, together with their respective officers, directors, or employees (acting within the scope of his or her office or employment), are hereby enjoined and restrained from using the Aircrafts; and it is further

ORDERED that defendants and any of their responsible managing agents, officers, directors, or employees (acting within the scope of his or her office or employment) and any other person or firm having actual notice of this Order, including but not limited to the domestic agents of defendants together with their respective officers, directors or employees (acting within the scope of his or her office or employment), are hereby ordered to immediately disclose the precise location of the Aircrafts to VFS or to agents designated by VFS (if the Aircrafts have been moved from the facilities in Texas and California); and it is further

ORDERED that defendants and any of their responsible managing agents, officers, directors, or employees (acting within the scope of his or her office or employment) and any other person or firm having actual notice of this Order, including but not limited to the domestic agents of defendants, together with their respective officers, directors, or employees (acting within the scope of his

or her office or employment), are hereby enjoined from restricting the access of VFS to the Aircrafts; and it is further

ORDERED that defendants and any of their responsible managing agents, officers, directors, or employees (acting within the scope of his or her office or employment) and any other person or firm having actual notice of this Order, including but not limited to the domestic agents of defendants, together with their respective officers, directors, or employees (acting within the scope of his or her office or employment), are hereby ordered to immediately surrender the Aircrafts in their possession to VFS, and forthwith take all actions necessary to allow VFS to obtain access to and possession of the Aircrafts; and it is further

ORDERED that defendants shall immediately notify all of its respective responsible managing agents, officers, directors, and employees of the entry of this Order.

This constitutes the decision and order of this Court.

Dated: October   /  , 2010

BARBARA R. KAPNICK
J.S.C.

BARBARA R. KAPNICK
J.S.C.

3

EXHIBIT 4

-

| | | |
|---|---|---|
| In re: | ) | Case No.: 10-BK-24832-CED |
| | ) | Chapter 11 |
| FM AVIATION II, LLC | ) | |
| | ) | Honorable Caryl E. Delano |
| Debtor. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF BETH BONELL

| | |
|---|---|
| STATE OF CONNECTICUT | ) |
| | ) ss.: |
| COUNTY OF FAIRFIELD | ) |

I, BETH BONELL, being duly declare, depose and say:

1.    I am a resident of the State of Connecticut and maintain an office at General Electric Capital Corporation ("GE Capital"), located at 10 Riverview Drive Danbury, Connecticut 06810. I am employed by GE Capital as a Vice President for Global Restructuring Solutions. GE Capital administers the loan agreements and aircraft account of FM Aviation II, LLC ("FM Aviation") on behalf of VFS Financing, Inc. ("VFS").

2.    This Declaration of my own personal knowledge and could, if called as a witness, testify competently to each fact set forth herein.

3.    Since my August 31, 2010 Affidavit was executed, several significant events have occurred and are continuing to occur.

4.    On September 7, 2010, the Honorable Barbara R. Kapnick of the New York Supreme Court issued a temporary restraining order ("TRO") which, among other things, required that the Aircrafts[1] which are the subject of VFS' motion be grounded, requiring the

---

1    The Aircrafts are more particularly described as that certain Gulfstream Aerospace (Model G-IV, Serial No. 1104, Registration No. N2SA; and Engine Make: Rolls Royce, Model Tay-611-8, Serial Nos. 16136 & 16145 ("N2SA"), and that certain Gulfstream Aerospace (Model G-IV, Serial No. 1171, Registration No. N3SA; and Engine Make: Rolls Royce, Model Tay-MK611-8, Serial Nos. 16396 & 16270 ("N3SA"; collectively at times with the N2SA, the "Aircrafts").

immediate disclosure to VFS of their location, and required that VFS be granted immediate access to those Aircrafts. A true and correct copy of the September 7, 2010 TRO is attached hereto as Exhibit "A".

5.     The September 7, 2010 TRO also ordered the Defendants (FM Aviation II, LLC, Able Body Temporary Services, Inc., Frank Mongelluzzi and Anne Mongelluzzi) to show cause on September 28, 2010 why an order should (a) granting an order of seizure, and (b) granting a preliminary injunction seizing the Aircrafts. See Ex. A.

6.     Additionally, the TRO ordered that, pending a Hearing, the Defendants and any of their agents or employees and anyone who had knowledge of the TRO, were (a) enjoined and restrained from using the Aircrafts; (b) ordered to immediately disclose the precise location of the Aircrafts to VFS or to agents designated by VFS in order to reclaim the same; and (c) enjoined from restricting the access of VFS to the Aircrafts (the "TRO"). See Ex. A at 2.

### Defendants' Delayed Compliance With the Order to Show Cause

7.     On September 8, 2010, counsel for VFS sent a copy of the TRO to counsel for Defendants, David A. Lamont, Esquire, and requested that the Defendants immediately disclose the location of the Aircrafts.

8.     On September 9, 2010, and because Mr. Lamont had failed to provide VFS or its counsel with the location of the Aircrafts, counsel called Mr. Lamont and left him a voicemail demanding the immediate disclosure of the location of the Aircrafts. Neither Mr. Lamont nor the Defendants disclosed the location of the Aircrafts that day.

9.     On that same date, September 9, 2010, counsel for VFS sent correspondence by electronic mail to Mr. Lamont again demanding that Defendants immediately disclose the location of the Aircrafts as required by Judge Kapnick's Order.

10.     On September 10, 2010, our counsel sent yet another email to Mr. Lamont demanding that his client comply with the TRO and disclose the location of the Aircrafts.

11.    Finally, later that day, Mr. Lamont sent an email indicating that N2SA was located in Dallas, Texas and that N3SA was located in Ontario, California.

### Defendants' Efforts to Dispose of the Aircrafts

12.    Following the issuance of the TRO, we learned that Defendants were trying to sell or otherwise dispose of the Aircrafts without the knowledge or consent of VFS.

13.    Despite repeated requests from Defendants, their counsel and even the counsel for the individuals who were intending to take title to the Aircrafts -- and despite repeated promises by all of the above to provide the requested information -- VFS was never provided with any substantive information regarding the attempted sale or disposal of the Aircrafts.

### Able Body's Transfer of Substantially All its Assets

14.    Following the TRO, VFS learned that Able Body, a defendant in the New York action and a corporate Guarantor of FM Aviation's debts to VFS, purported to sell or otherwise transfer its assets to an entity named MDT Personnel (the "MDT Transaction"). VFS learned of this as a result of a news article. See article titled: "MDT Personnel Acquires Able Body Labor" (attached hereto as Exhibit "B").

15.    As set forth in my original Affidavit, Able Body is a corporate guarantor, having executed a Corporate Guaranty in favor of VFS agreeing to "primary, absolute, continuing and unconditional" liability for Defendant FM Aviations obligations to VFS under the Loan Documents. See First Bonell. Aff. at ¶18, Ex. G.

16.    Defendant Able Body is owned and controlled by Defendants Frank Mongelluzzi and Anne Mongelluzzi (the "Mongelluzzi Defendants"), both of whom are the Individual Guarantors under the Loan Documents and who both also contractually agreed to "primary, absolute, continuing and unconditional" liability for Defendant FM Aviations obligations to VFS under the Loan Documents. See First Bonell. Aff. at ¶17, Ex. F.

17. Through independent investigation, and as confirmed Able Body's and Mr. Mongelluzzi's counsel, David Lamont, Esquire, MDT Personnel was created solely for the purpose of accepting transfer of Able Body's assets.

18. VFS immediately demanded information regarding the purported sale or transfer of Able Body's assets and the consideration paid or still due therefore.

19. Our counsel advised Mr. Lamont that he must provide such information and make arrangements to secure the assets of Able Body or consideration therefore or VFS would have no choice but to seek a court order securing those funds and assets.

20. However, although Mr. Lamont promised to provide the information, he failed to do so.

### The Preliminary Injunction

21. On September 28, 2010, Judge Kapnick issued a preliminary injunction (the "Injunction") which, like the TRO, prohibited the Defendants from use of the Aircrafts but also granted VFS the sole and exclusive right to possess the Aircrafts.

22. Although the Defendants, including FM Aviation and its counsel, Mr. Lamont, were served with and had knowledge of this Injunction, Mr. Mongelluzzi and his entity, FM Aviation, violated the Injunction and began flying N3SA.

23. When VFS learned of this, it immediately demanded to know the location of N3SA. However, Mr. Lamont, and FM Aviation's representative, pilot Dick Joyce, refused to disclose the location of N3SA.

24. Thereafter, VFS learned that FM Aviation had been chartering N3SA and that it was currently located in Mexico and may have even been leased to a Mexican national.

25.     Once VFS learned of the location of N3SA, in accordance with the Injunction, VFS assumed operational control of N3SA and made arrangements for its safe return to the United States.

26.     Several hours after VFS repossessed and assumed operational control of N3SA pursuant to the Injunction, FM Aviation II, LLC file a Petition pursuant to Chapter 11 of the Bankruptcy Code in a transparent effort to delay the sale of the Aircrafts.

27.     In addition, when the flight crew arrived to fly N3SA back to the United States after VFS had repossessed and assumed operational control of N3SA pursuant to the Injunction, FM Aviation and/or Mr. Mongelluzzi improperly permitted N3SA to be flown from the airport in Mexico and took efforts to prevent VFS from flying N3SA back to the United States.

28.     VFS has been advised that N3SA is flying throughout Mexico and Brazil.

29.     No other person or entity other than VFS has any right to use or possess the Aircrafts.

### Prejudgment Lien Order

30.     As a result of Able Body's transfer or purported transfer of all of its assets to MDT Personnel, on September 28, 2010, VFS filed Motion for Prejudgment Lien against (FM Aviation II, LLC, Able Body Temporary Services, Inc., and the Mongelluzzi Defendants).

31.     By Order dated September 28, 2010, Judge Kapnick issued an Order (the "Prejudgment Lien") which directed the levy upon any property which the Defendants have any interest in the amount of not less than $18,519,694.30, and enjoined payment of any monies to Able Body and/or Frank Mongelluzzi and/or Anne Mongelluzzi from MDT Personnel or, if any money had been paid, restraining those amounts wherever they may be found in order to satisfy the amounts owed to VFS.  A true and correct copy of the Prejudgment Lien is attached hereto as Exhibit "C".

32.     The Prejudgment Lien also enjoined Able Body and/or Frank Mongelluzzi and/or Anne Mongelluzzi from transferring any assets to any person or entity without the consent of VFS or further order of Judge Kapnick. See Ex. C.

33.     The Prejudgment Lien also enjoined FM Aviation, Able Body, Frank Mongelluzzi, and Anne Mongelluzzi from transferring or otherwise encumbering any of their assets or real property. See Ex. C.

34.     Finally, the Prejudgment Lien mandated that FM Aviation, Able Body, Frank Mongelluzzi and Anne Mongelluzzi produce a detailed list of all assets and debts, including without limitation a description and the location of each asset and debt owed and owned by any of them, no later than ten (10) business days. See Ex. C.

35.     FM Aviation, Able Body, Frank Mongelluzzi and Anne Mongelluzzi all violated the Prejudgment Lien order as well.

36.     On October 18, 2010, VFS learned that by an Agreement purportedly dated as of October 4, 2010, Anne Mongelluzzi sold or attempted to sell/transfer her interests in an entity that she has an ownership interest in. See Membership Interest Purchase Agreement (attached hereto as Exhibit "D").

37.     This purported sale/transfer of her alleged membership interests in any entity is a clear violation of the Prejudgment Lien's prohibition on "transferring any assets to any person or entity without the consent of VFS or further order" of Judge Kapnick. See Ex. C.

**Relief Requested by VFS**

38.     VFS respectfully requests that this Honorable Court enforce the Injunction and enter an immediate Order that Debtor FM Aviation II, LLC and any of its responsible managing agents, officers, directors, or employees, and any other person or firm having knowledge of such Order, are (a) enjoined and restrained from using the Aircrafts; (b) ordered to immediately disclose the precise location of the Aircrafts to VFS or to agents designated by VFS in order for

VFS to reclaim the same; (c) enjoined from restricting the access of VFS to the Aircrafts; and (d) ordered to immediately surrender the Aircrafts in their possession to VFS, and forthwith take all actions necessary to allow VFS to obtain access to and possession of the Aircrafts, which VFS has taken operational control of prior to the filing of the Chapter 11 Petition.

FURTHER DECLARANT SAYETH NOT.

Beth Bonell

## Certificate of Service

I certify that a copy of the foregoing has been furnished by mail to (i) FM Aviation II, LLC, 3040 Gulf to Bay Blvd, Clearwater, Florida 33759, (ii) FM Aviation II, LLC, c/o Langfred W. White, Esq., Law Offices of Langfred W. White, P.A., 25400 U.S. Highway 19 North, Suite 160, Clearwater, FL 33763, (iii) Office of the United States Trustee, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, Florida 33602 and (iv) those parties on the attached Local Rule 1007(d) parties-in-interest list, this 18th day of October, 2010.

_s/ Allan E. Wulbern_
Attorney

Label Matrix for local noticing
113A-8
Case 8:10-bk-24832-CED
Middle District of Florida
Tampa
Mon Oct 18 18:48:41 EDT 2010

FM Aviation II,  LLC
3040 Gulf to Bay Blvd
Clearwater, FL 33759-4359

United States Bankruptcy Court
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Suite 555
Tampa, FL 33602-3849

Department of Labor and Security
Hartman Building Suite 307
2012 Capital Circle Southeast
Tallahassee FL 32399 0648

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Gulfstream
P.O. Box 730349
Dallas, TX 75373-0349

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Office of US Attorney
Attn Civil Process Clerk
400 North Tampa St Suite 3200
Tampa FL 33602-4774

Paradigm Jet Management
800 Ellis Road #563
Muskegon, MI 49441-5622

United States Trustee - TPA
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

VFS Financing, Inc.
c/o Joseph J. Tuso, Esquire
1650 Market Street
Philadelphia, PA 19103-7301

World Fuel Services
2458 Payshere Circle
Chicago, IL 60674-0001

Langfred W White
Law Offices of Langfred W. White, PA
25400 U.S. Highway 19 North
Suite 160
Clearwater, FL 33763-2151


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

End of Label Matrix
Mailable recipients     12
Bypassed recipients      0
Total                   12