THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

                                      Chapter: 11

**FM Aviation II, LLC**,                Case No: **8:10-bk-24832-CED**
      Debtor.
_____/

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a), 361,363,541 AND 552 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

     **COMES NOW** FM Aviation II, LLC (the "Debtor"), by and through its undersigned attorney, files this Emergency Motion for Entry of Interim and Final Orders Authorizing use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Ru1es of Bankruptcy Procedure (the "Motion") and requests the entry of interim and final orders approving the Debtor's use of cash collateral. In support of the Motion, the Debtor respectfully represents as follows:

---

**SUMMARY OF RELIEF REOUESTED**

The Debtor seeks authority to use cash collateral to fund its operating expenses and the costs of administering this Chapter 11 case and to provide replacement liens as described below as adequate protection for the interests in the cash collateral. The Debtor believes that the creditor listed herein has or may assert a valid and perfected security interest in the Cash Collateral. As adequate protection, the Debtor proposes to grant to the secured creditor a replacement lien to the same extent, validity, and priority as the security interest held by the secured creditor as of the Petition Date.

---

**Jurisdiction and Venue**

    1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157

and 1334.

2. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 361 and 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

4. On or about November 23, 2009, the Debtor executed two separate notes and security agreements in favor of VFS Financing, Inc. ("VFS"), by which Debtor acquired and granted security interests in two business class jet aircraft, including a Gulfstream G-IV, Registration No. N2SA, and a second Gulfstream G-IV, Registration number N3SA. One Note was in the face amount of $9,300,000.00 and the other in the face amount of $8,200,000.00. The security Agreements each provide for a security interest in the respective "...aircraft and other property described below and in all additions and accessions thereto and substitutions therefore, now or hereafter owned, all unearned insurance premiums and insurance proceeds relating to such property, and 'associated rights' (as defined by the Cape Town Convention) conferred by this Agreement and the Debt Documents and the proceeds of all the foregoing..." VFS therefore contends it has an interest in the Debtor's cash collateral within the meaning of 11 U.S.C. § 363(a) (the" Cash Collateral"). The Debtor does not believe any otehr creditor has or may claim and interest in Cash Collateral. To the extent that any other creditor is determined to have an interest in Cash Collateral, the Debtor request that the relief requested herein also apply to the additional secured creditor(s). The Debtor reserves all rights, claims, and defenses with respect to VFS and any other claimants.

5. The Debtor intends to use the Cash Collateral in the continued operation of its

business.

6. Accordingly, the Debtor seeks the entry of an interim order authorizing the use of Cash Collateral (the "Interim Order") to avoid immediate and irreparable harm to the estate pending a final hearing and the entry of a final order. The form of the proposed order is attached as Exhibit "A." A summary of the Interim Order is provided in the following paragraph for the convenience of the Court and other parties in interest. To the extent there are conflicts between this summary and the Interim Order attached hereto as Exhibit "A", the terms of the Interim Order shall govern. Capitalized terms used in the summary but not otherwise defined herein shall have the meaning(s) set forth in the Interim Order.

7. The significant provisions of the Interim Order, are as follows:

(a) Interim Relief. The Order shall be granted on an interim basis, pending a final hearing on the Motion.

(b) Adequate Protection. The following shall constitute good and sufficient adequate protection to VFS for the Debtor's use of the Cash Collateral:

i. Adequate Protection Liens. The Debtor shall provide VFS with replacement liens identical in extent, validity and priority as such liens existed on the Petition Date; and

ii. Reporting Requirements. The Debtor shall provide on a weekly basis profit and loss statements on a cash basis to counsel for VFS.

**Background**

8. On October 14, 2010, (the "Petition Date"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code").

9. The Debtor continues to operate its business and manage its assets as Debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

11. No trustee or examiner has been appointed in this case and no official committee have yet been appointed pursuant to Section 1102 of the Bankruptcy Code.

### A. Description of Debtor's Business

12. The Debtor is engaged in the business of chartering two business class jet aircraft, specifically a Gulfstream G-IV, Regstration number N2SA, and a Gulfstream G-IV, Regstration number N3SA. Charter aircraft are typically chartered under an arrangement whereby the user of the aircraft pays an agreed rate, typically based on hours of operation, with the Debtor responsible for paying operating costs, but they also may be chartered under an arrangment whereby the user pays a reduced chartering fee but is responsible for expenses such as fuel, landing fees, salaries, and other expenses. One of the Aircraft, N2SA, was operating under the air carrier certificate of Paradigm Jet Management through an Aircraft Managment Agreement. Efforts are underway to secure a similar operating arrangement with another air carrier certificate holder for one or both aircraft, pending a determination whether it is feasible and advantageous for Debtor to acquire its own air carrier certificate.

13. VFS claims the aggregate balance of both notes to be about $18,487,181.77, and VFS claims the orderly liquidation value of the aircraft totals about $12.4 million.

14. Debtor is one of a number of business entities owned directly or indirectly by

Frank M. Mongelluzzi. The aircraft business of the Debtor represents a relatively small percentage of the overall business enterprises owned, directly or indirectly, by Mr. Mongelluzzi. However, a defiency claim against the Debtor would eliminate its ability to continue in business, would seriously damage other affiliates of the Debtor, and would render it impossible for Debtor to pay any distribution to any unsecured creditor in this case.

### B. Reasons for Filing Chapter 11

15. The Debtor, for the most part, was current on its regular operating expenses, using revenue from operation of the aircraft and funds from Debtor's owner and affiliates to do so. However, the Debtor's owner, Frank Mongelluzzi, experienced significant financial difficulties in other businesses he owned, and that lead in turn to Mr. Mongelluzzi's inability to provide funds sufficient to pay payments to the secured creditor of this Debtor. Those financial difficulties also preclude affiliates from advancing additional funds to this Debtor.

16. Heretofore the Debtor has engaged in efforts to market the aircraft, either for an amount sufficient to pay the secured creditor in full, or in an amount sufficient to pursuade the secured creditor to allow a "short sale" of the aircraft. In addition, the Debtor has sought possible sources of replacement financing, in order to pay this lender. Unfortunately, the global economic crisis which now envelops the country has made the refinancing or sale of business class jet aircraft very difficult. Some lenders may be under pressure to reduce their exposure to loans of this type and find it difficult to extend loans, whether for purchase of such aircraft or to refinance existing loans. Consequently, buyers who need financing to acquire the aircraft are unable to obtain loans to fund the purchase. Buyers who have cash or who have financing available want significant discounts from true value that would, in this case, generate a very

substantial deficiency even if VFS were to agree to the sale. A sizable deficiency would wipe out the significant hard-dollar investments of the Debtor's principal in these aircraft and would substantially impair the viability of Debtor's affiliates.

17. VFS initiated efforts prepetition to repossess the aircraft, and obtained a "grounding order" from the Supreme Court of New York County, New York. VFS undertook to locate and take physical possession of the aircraft.

18. The declarations of default and the filing of repossession actions by VFS, coupled with the need to provide a vehicle to pay the debt owed to the unsecured creditors and create and continue revenue generating activities, left the Debtor with no choice but to file a chapter 11 petition in an effort to preserve the value of the business and assets. The creditor's aggressive efforts to repossess and sell the aircraft, which would be expected to yield substantially less than the amount owed to VFS Financing, Inc., would deny the Debtor any meaningful opportunity to pay any unsecured creditor. Consequently, Chapter 11 became the best legal vehicle to permit Debtor to reorganize its affairs and fairly restructure its debts. In this Chapter 11 case, Debtor's plan of reorganization will seek to restructure the debt owed to VFS Financing, Inc, by extending the maturity, eliminating technical, non-monetary defaults, and modifying certain loan covenants.

19. Subsequent to the filing of the petition, and with knowledge of the bankruptcy filing, VFS attempted to take physical possession of the aircraft, induced Paradigm Jet Management to revoke its agreement to allow operation of N2SA under its air carrier certificate, and has attempted to continue or assert control over Debtor's use of both the aircraft, which is impeding Debtor's efforts to generate revenue and restructure its affairs.

20. The Debtor will shortly be filing a motion for sanctions against VFS for its willful

violation of the automatic stay. The Debtor also expects to file a motion seeking authority to obtain debtor-in-possession financing from one or more affiliates of Debtor, including affiliates and insiders who are guarantors of the Debtor's indebtedness to VFS.

21. The proceeds from operations, coupled with the funds contributed by the Guarantors, should enable the Debtor to successfully restructure their indebtedness and reorganize their businesses for the benefit of their creditors and employees.

**Summary of Prepetition Secured Indebtedness**

22. As of the date of the Petition, VFS was owed, according to its Emergency Motion, approximately $18,519,694.30 in the aggregate. According to its Emergency Motion, VFS believes the aircraft are worth approximately $12,399,077 in orderly liquidation. The amount listed above for the debt is the amount claimed by this creditor. Debtor reserve all rights with respect to contesting the validity and amount of VFS's claims.

**Legal Authority for the Relief Requested**

23. VFS has asserted liens on the revenue realized from charter of the aircraft identified above, and has asserted that the revenue is Cash Collateral within the meaning of Section 363(a) of the Bankruptcy Code. The Debtor reserves its rights to contest the validity and priority of VFS' liens. The Debtor files this Motion and seeks entry of an order authorizing the use of Cash Collateral generally and for purposes which include the following:

(a) care, maintenance, and preservation of the Debtor's assets, and more specifically for maintenance and insurance on the aircraft subject to VFS's security interest;

(b) payment of necessary payroll, rent, suppliers, utilities, and other business expenses;

(c) other payments necessary to sustain continued business operations; and

(d) costs of administration in this Chapter 11 case; and

24. There is insufficient time for a final evidentiary hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, to be held before the Debtor must arguably use Cash Collateral. If this Motion is not considered on an expedited basis and if the Debtor is denied the ability to immediately use Cash Collateral, there will be direct and inunediate harm to the continuing operation of the Debtor's business. In order to continue the business activity in an effort to achieve successful reorganization, the Debtor needs to use Cash Collateral in the ordinary course of its business operations. The inability of the Debtor to meet its ordinary business expenses will require the Debtor to discontinue normal operations, which will in turn result in irreparable injury to the Debtor and its chances for reorganization. Any such discontinuation would also adversely impact upon the value of the secured party's collateral. Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure authorizes this Court to hold an immediate preliminary hearing on this Motion.

25. "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize the Debtor to use Cash Collateral as long as the applicable secured creditors consent or are adequately protected. *See, e.g., In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also In re McCormick*, 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (to use the cash collateral of a secured creditor, the debtor must have the consent of the secured creditor or must establish to the Court that the secured creditor's interest in the cash collateral is

adequately protected).

26. In exchange for the Debtor's ability to use Cash Collateral in the operation of its business, the Debtor proposes to grant to VFS, as adequate protection, a replacement lien equal in extent, validity, and priority to the lien held by the Lender as of the Petition Date. The Debtor assert that any interests of Lenders will be adequately protected by replacement liens.

27. If allowed to use Cash Collateral, the Debtor believes that it can stabilize its business operations and maintain going concern value. Otherwise, the Debtor's business operations will cease, its assets will have only liquidation value, and there will be no distribution to unsecured creditors.

**Notice**

28. Notice of this Motion has been given: (i) by the Court's CM/ECF system to the U.S. Trustee, and (ii) by United States first class mail to all known secured creditors of the Debtor, the Local Rule 1007 Matrix, and certain other parties listed on the attached Certificate of Service. The Debtor submits that, given the emergency nature of the relief requested herein, no other or further notice need be given.

**Basis for Emergency Relief**

29. The facts previously set out herein clearly justify an immediate hearing on this Motion. If the Debtor cannot utilize Cash Collateral, the Debtor will be unable to pay operating expenses necessary to continue the operation of the Debtor's business and will be irreparably harmed. The Debtor has narrowly tailored the relief requested on an emergency basis in order to allow it to survive pending a final Cash Collateral hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure.

**WHEREFORE**, the Debtor respectfully requests that this Court: (1) enter the Interim Order granting the instant Motion and authorizing the interim use of Cash Collateral, the proposed form of which is attached as Exhibit A; (2) schedule a preliminary hearing on the Motion at the earliest possible time; (3) schedule a final cash collateral hearing in accordance with Bankruptcy Rule 4001(b )(2); (4) authorize the Debtor to use the cash collateral in the operation of its business; and (5) grant such other and further relief as may be just and proper.

DATED: October 22, 2010

/s/ Langfred W. White
Langfred W. White, Esquire
The Law Offices of Langfred W. White, P.A.
25400 U.S. Highway 19 North, Suite 160
Clearwater, FL 33763
(727) 797-5599 Phone
(727) 797-5695 Fax
lan@lwwhiteattorney.com
FBN# 326151
*Attorney for Debtor*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the foregoing Debtor' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Lien Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure has been furnished on this 22nd day of October, 2010, by either the Court's CM/ECF Noticing System, by E-Mail or by U.S. Mail to:

ByCM/ECF:

Office of the United States Trustee

By E-Mail:
Joseph J. Tuso, Esquire, jtuso@reedsmith.com, Attorney for VFS Financing, Inc.
Allan E. Wulbern, Esquire, awulbern@smithhulsey.com, Attorney for VFS Financing, Inc.

By U.S. Mail on October 23, 2010:
All remaining creditors

                                                                                                   <u>/s/ Langfred W. White</u>

EXHIBIT "A"

# THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

In Re:

                                                    Chapter: 11

**FM Aviation II, LLC**,              Case No: **8:10-bk-24832-CED**
      Debtor.
_____/

**INTERIM ORDER GRANTING Debtor' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

      **THIS CASE** came on for hearing on October \_\_ , 2010, at \_\_\_\_ p.m. upon the Debtor' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Motion"). The Motion seeks the entry of interim and final orders authorizing the use of "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code. The Court, having reviewed the Motion and having heard the argument and proffers of counsel, finds that the Motion should be granted to prevent immediate and irreparable harm to the Debtor's business. Accordingly, for the reasons stated orally and recorded in open Court, which shall constitute the decision of the Court, and unless otherwise defined herein capitalized terms having the same meaning ascribed to them in the Motion, it is

**ORDERED** that:

1. The Motion is granted on an interim basis pending a final hearing to be conducted by the Court on _____, 2010 at _____ (the "Final Hearing Date").

2. The Debtor are authorized to use Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) including, without limitation, cash, deposit accounts, accounts receivable, and rental revenue, through and including the Final Hearing Date.

3. Beginning the week of October ___, 2010 - October ___, 2010, the Debtor shall provide on a weekly basis profit and loss statements on a cash basis to counsel for the Lender by email by 5:00 p.m. (EST) on Friday of the following week.

4. The Lender is granted, as adequate protection, post-petition replacement liens against the Debtor' Cash Collateral to the same extent, validity, and priority as existed as of the Petition Date.

5. This Order is not and shall not be construed as determinative as to whether or not any creditor has a valid lien on any property of the Debtor or its estate. This Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

6. This Order is without prejudice to the Debtor's right to challenge the extent, validity, or priority of any lien or claim of any creditor, is likewise without prejudice to the right of any creditor to seek additional relief concerning Cash Collateral by subsequent motion, and nothing contained in this Order shall be deemed to constitute a waiver of any party's rights.

7. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

**DONE AND ORDERED** in Chambers at Tampa, Florida, on _____ .

_____
Caryl E. Delano
United States Bankruptcy Judge

Copies to be provided via CM/ECF service.